**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY, LLC,<br><br>Plaintiff,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 02-CV-1622<br><br>Judge Lawrence J. Block |

**AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

COMES NOW Plaintiff, Blueport Company, LLC ("Blueport"), and for its Amended Complaint states as follows:

PARTIES

1. Blueport is a limited liability corporation organized in the State of Idaho. Blueport is the true, sole, and only owner of its copyrighted work, a computer program, entitled AUMD and AUMD Admin (collectively, the "manpower data program"). Blueport duly provided notice of copyright. Blueport's copyrighted work is registered with the Library of Congress, Registration No. TX 5-159-682, effective date March 9, 2000, entitled "UMD Admin Program V.2.0A and Master Program V.2.1D", and Supplemental Registration No. TX 6-064-419, entitltled "UMD Admin Program V.2.0A and Master Program V 2.1D". A true and correct copy of Registration No. Tx 5-159-682 is attached hereto as **Exhibit 1** and incorporated by reference. A true and correct copy of Supplemental Registration No. TX 6-064-419 is attached hereto as **Exhibit 6** and incorporated by reference. Registration is prima facie evidence of the validity, ownership, and originality of Blueport's copyrighted work.

2. Defendant, the United States, has consented to be sued and is sued, by and through the agency of the United States Air Force.

JURISDICTION

3. This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and this Court maintains jurisdiction pursuant to 28 U.S.C. § 1498(b). This action also arises under the Digital Millennium Copyright Act of 1998.

4. All conditions precedent to bringing and proceeding with the claim set forth in this Complaint have occurred.

FACTUAL BACKGROUND

5. On or about May 28, 1998, Mr. Davenport, then a T.Sergeant in the USAF, completed the development of the AUMD program. The AUMD program addressed the inadequacies associated with the USAF's ADHOC program by providing a more powerful, efficient, and user-friendly software system to support the USAF's Manpower Data Systems operations.

6. The programs are used to select a list of personnel from a database based upon specified parameters. The programs are not limited to use by the USAF but could be used in any application requiring selecting members from a database based upon specified parameters. The programs are application specific.

7. Mr. Davenport used Access 97 to develop the programs. Both programs use "point and click" screens so the user is not required to have knowledge of Access. The AUMD Admin program accesses an Oracle Database containing all the data for the Air Force personnel. The AUMD Admin program converts the data in the Oracle

Database into several tables that are used by the AUMD (master) program. The AUMD program then accesses these tables to generate the reports.

8. The AUMD Admin program has about 250 pages of source code. The compiled object code is about 1.1 megabytes. The AUMD master program has about 500 pages of source code and the compiled object code is about 1.8 megabytes. Both programs can be compiled in either Access97 or Access2000, with slight differences in the syntax.

9. Mr. Davenport conceived the idea of using Access97 to write the AUMD task-specific program around May 15, 1998. Prior to that time, sometime around July of 1996, Mr. Davenport purchased, with his own funds, a copy of the Microsoft Access 2 and started learning to use that program on his own computer at his personal residence. Shortly after the release of Access97, Mr. Davenport purchased an upgrade copy, again with his own funds, for personal use and continued to develop his skills with this program. Within two weeks of the time Mr. Davenport started writing the programs, he had both the AUMD Admin and the AUMD master programs developed to a point that he started using them at work. From that time he continued to make changes and modifications to the programs. For security to protect his, now Blueport's property, he incorporated an automatic expiration date in the programs. He also included a statement of ownership. All modifications and revisions of the manpower data program were accomplished by Mr. Davenport at his personal residence, on his own time, on his own computer, using his own software.

10. The AUMD program was not produced as a part of Mr. Davenport's recognized employment duties. Rather, at the time of the AUMD program's

development, Mr. Davenport worked as a Manpower Data Systems Manager, Manpower Career Field (3U), with a specialty code of AFSC V3U071. As a Manpower Data Systems Manager, Mr. Davenport oversaw and maintained the Manpower Data Systems by ensuring the accuracy of both the input and output data operations associated therewith. Davenport's duties ultimately resulted in the distribution of interface data which reflected personnel requirements for assignment purposes and combat readiness throughout the Pacific Air Force (PACAF) theater. Mr. Davenport was neither assigned to nor expected to develop any computer program in relations to his responsibilities. Because the AUMD program was in no way associated with Mr. Davenport's responsibilities, its development cannot be construed to have been within the scope of Mr. Davenport's employment.

11. In June 1998, Mr. Davenport sent a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force base. Mr. Luckie was not within Mr. Davenport's chain-of-command; rather, M. Sgt. Luckie only offered constructive feedback as to the AUMD program's anticipated application and did not assist Mr. Davenport in the actual development of the AUMD program. Apparently impressed with the capabilities of the AUMD program, M.Sgt. Luckie's superior directed him to disseminate the AUMD program to other Manpower Data Systems offices. Given its capacity to efficiently and accurately compile personnel information, Mr. Davenport's AUMD program was soon well received within Manpower Data Systems circles. In September 1998, Mr. Davenport was asked to demonstrate his AUMD program to the managers of the Manpower Data Systems Community at Randolph Air Force Base, San Antonio, Texas. The response was overwhelmingly positive. Use of the AUMD program increased

substantially following the presentation as Mr. Davenport was directed to forward the AUMD program to Air Force personnel nationwide. Importantly, at both the Manpower Conference in September, as well as with each subsequent distribution of the software, Mr. Davenport was recognized as the author and owner of the AUMD program.

12. In October, 1999, Air Force Manpower and Innovation Agency (AFMIA) personnel approached Mr. Davenport and inquired into the possibility of submitting an AF Form 1000 IDEA Application on the AUMD program's source code. Mr. Davenport declined, despite a potential offer of $25,000 in exchange for the submission. Mr. Davenport likewise rejected the suggestions of Mr. Glendon Hendricks, Chief of AFMIA's Information Systems Division. Mr. Hendricks related the USAF's continued need for the AUMD program following Mr. Davenport's anticipated retirement and suggested that Mr. Davenport disclose the software's source code accordingly. Mr. Davenport, however, expressed his interest in maintaining control over the AUMD program and indicated that he would not release its source code to the government.

13. In January 2000, Mr. Davenport learned that the USAF had issued a Request for Proposal (RFP) which requested the government contractors to "recreate" a duplicate of the AUMD program such that it could be "seamlessly substituted" for the AUMD program. Toward this end, each of the responding contractors were given Mr. Davenport's name, phone number, e-mail address, and a copy of the AUMD program, Version 2.1.f. At no time did Mr. Davenport consent to the USAF's efforts to duplicate the AUMD program. Further, Mr. Davenport was never contacted by any contractor.

14. On March 6, 2000, Blueport acquired the copyrights and all other common law intellectual property rights to the AUMD program. By registration on March 9, 2000,

Mr. Davenport/Blueport made a public record of its copyright claim in the AUMD program, Version 2.1d. Prior to this time, each version of the AUMD program reflected ownership in Mr. Davenport's name only. With the acquisition, Blueport became the owner of the AUMD program and the holder of the intellectual property rights accompanying the software. Version 2.1g of the AUMD program recognizes this change in ownership with the statement, "[A]uthored by Mark Davenport and is owned by Blueport Company, LLC. Copyright 1999/2000 All Rights Reserved."

15. As the owner of the AUMD program, Blueport initiated correspondence with the USAF regarding the potential licensing of the AUMD program. Blueport's efforts toward seeking a licensing agreement with the USAF were never reciprocated.

16. Within each version of the AUMD program, Mr. Davenport included an automatic expiration function such that the AUMD program would stop operating after a particular, programmed date. The version supplied to the prospective government contractors in the RFP, Version 2.1f, was no exception; Version 2.1f of the AUMD program contained an expiration date of May 15, 2000. With this in mind, in March of 2000, Charles Stubblefield, attorney for the USAF, informed Blueport that the USAF owns the programs and that it was going to prefer criminal complaint to the FBI for having the automatic expiration function. Blueport correctly took this to be an improper and unethical threat in order to gain an extension. Similarly, on April 17, 2000, Colonel Richard Zeimet, the Chief of Manpower and Organization at PACAF, requested that Mr. Davenport extend the May 15, 2000 expiration date function encrypted into Version 2.1f of the AUMD program and reveal the AUMD program's source code. Mr. Davenport was told that if he refused to follow Colonel Zeimet's request, he would be given a direct

order to extend the AUMD program's expiration date, such that a refusal would have resulted in the initiation of court-martial proceedings against him. Mr. Davenport understood that Colonel Zeimet requested the extension in the AUMD program's expiration date so that the contractors responding to the AFMIA's RFP would have adequate time to develop a replacement AUMD program-equivalent software. Under this duress, Blueport allowed an extension of the automatic expiration from May 15, 2000 to June 30, 2000 to avoid a potential court martial action against Mr. Davenport, and to provide time to negotiate a license with the USAF.

17. The AUMD master program changed the way the Air Force operates with regards to its manpower resource requirement reports. In the past, any request for manpower resource data was sent to the Manpower Management group. The 1,000 to 1,200 people in the Manpower Career Field (AFSC 3U0xx) generated the required manpower resource reports, and then sent the reports to the requesting user. The AUMD master program, with its "point and click" screens, is very easy to use. Anyone with PC experience can learn to operate the program in a short amount of time. As a result, the manpower resource reports function is now distributed throughout the Air Force with the end user generating the reports themselves.

18. The number of people that use the AUMD Admin program is small. One user can supply the tables required for an entire base. The number of people that use the AUMD master program might be in the tens of thousands. Blueport is informed and believes and on that basis alleges that several MAJCOMs have posted the AUMD master program on their local WEB page and have instructed their personnel to

download the AUMD program and generate their own manpower resource reports. Some MAJCOMs have over 100,000 personnel.

19. Early in 2000, AFMIA let a contract to duplicate the AUMD programs. The Request for Proposal states:

> "The service provider shall recreate the existing system so that the Air Force manpower community can seamlessly substitute MARS for the existing system. MARS shall have exactly the same user interface and function as the existing system and shall provide responses to user inputs within the same time constraints as the existing system."

The contract was let. The contract number was 'GSA CONTRACT GS-35F-4461G', issued to SAIF Corporation ("SAIF"). SAIF then submitted to AFMIA the Software Requirements Specifications for the two programs. All the "Screens" shown in Software Requirements Specifications were taken directly from Plaintiff's AUMD programs.

20. Blueport is informed and believes and on that basis alleges that SAIF was not able to finish the contract within expected timelines, so the USAF engaged, without the permission of Blueport, in a series of improper acts to garner additional time for SAIF while continuing to use Blueport's program, including hacking into Blueport's program to change the automatic expiration functions and posting Blueport's program on the military website.

21. On May 15, 2000, AFMIA posted on their web site a hacked version of Blueport's AUMD v 2.1e (Access97). On May 18, 2000, AFMIA removed the hacked version of AUMD v 2.1e and replaced it with a hacked version of AUMD v 2.1g (Access97). Also on May 18, 2000, AFMIA posted a hacked version of AUMD v 2.1g (Access2000). AFMIA's web page was available to the public and any program posted could be, and were, downloaded. Sometime before February of 2001, AFMIA moved

these programs to their military web site. On February 05, 2001, AFMIA again hacked into the AUMD v 2.1g (Access97 & Access2000) and extended the expiration date to August 15, 2001. At that time AFMIA posted on their website, http://www.afmia.randolph.af.mil/ the AUMD program with the new, hacker created, expiration date of August 15, 2001. AFMIA had hacked into Blueport's AUMD programs on 5 different occasions. Blueport is informed and believes and on that basis alleges that its program was downloaded between 50,000 to 150,000 times considering the 5 different 'hack jobs' and the number of people that would have had the ability to download the program at each time.

22. Plaintiff and its predecessor(s) have never authorized any use of its copyrighted work by the United States Government.

23. On May 23, 2001, Blueport submitted a "copyright infringement claim" for infringement of the copyright to the USAF by submission to the Air Force Legal Service Agency (AFLSA), Commercial Litigation Division. A true and correct copy of the claim submitted is attached hereto as **Exhibit 2** and incorporated by reference. Accompanying that claim were the affidavits of Mr. Davenport and Mr. Gunter, **Exhibits 3 and 4 hereto** respectively, and incorporated herein by reference.

24. On January 22, 2002, the Air Force Legal Service Agency (AFLSA) denied the administrative claim for copyright infringement that had been filed by Blueport. A true and correct copy of that January 22, 2002 denial is attached hereto as **Exhibit 5** and incorporated by reference.

FIRST CLAIM FOR RELIEF

COPYRIGHT INFRINGEMENT

25. Plaintiff realleges the paragraphs in this complaint as if fully set forth herein.

26. Blueport is informed and believes and on that basis alleges that Defendant infringed Plaintiff's manpower data program:

(a) by its foregoing conduct;

(b) by breaking into the running copy of that program and changing the compiled code to continue the expiration date;

(c) by removing the "copyright designation", from the "about page" of the manpower data program; by distributing the program;

(d) by posting the manpower data program over a network after improperly changing, without authority, the automatic expiration date;

(e) by duplicating the program by having it available for download; by assisting, on information and belief, the download of between 50,000 and 150,000 copies of the program;

(f) by improperly obtain, under threat and by duress, an extension of the automatic expiration in the AUMD program and reveal the source code to allow improper and illicit copying;

(g) by hiring outside contractors, through GSA Contract GS-35F-4461G, to essentially duplicate the sequence, structure, and organization, of the manpower data program, stating, in the request for proposals: "The service provider shall recreate the existing system so that the Air Force manpower community can seamlessly substitute MARS for the existing system;" and

(h) by copying, duplicating, downloading, and publishing the Blueport's copyrighted work.

27. Blueport is informed and believes and on that basis alleges that these acts of infringement were without the authority or consent of Plaintiff, and/or, in the event any limited consent was given for any one specific act, were the result of threats and duress.

28. Blueport is informed and believes and on that basis alleges that the Defendant knowingly and willfully directly copied, or directed others to directly copy, Blueport's copyrighted work and that Defendant copied, or directed others to copy, Blueport's copyrighted work for the specific purposes of infringing Blueport's copyrights and utilizing illegal and unauthorized copies of Blueport's work.

29. Blueport is informed and believes and on that basis alleges that by its aforesaid conduct Defendant willfully infringed Blueport's copyrighted works; that Defendant's actions willfully and for profit violated exclusive rights of the Copyright Laws of the United States; that Blueport owned valid copyright on works which Defendant copied in acts of improper appropriation.

30. Plaintiff is informed and believes and on that basis alleges that it has lost and will continue to lose substantial revenues from the Defendant's use of its copyrighted work and will continue to sustain damage as the result of Defendant's wrongful conduct.

31. By its actions alleged above, Defendant infringed and will continue to infringe Blueport's copyright.

32. Accordingly, Defendant is liable to Blueport for statutory, and or actual damages and future damages that it has sustained or will sustain, including Defendant's profits and any gains and/or advantages obtained by Defendant, at the election of Blueport, and for attorneys fees and costs and interest, and Defendant should be

enjoined from its infringing actions including the injunction from carrying on, enforcing, or performing any contract which is the vehicle for its infringing actions.

SECOND CLAIM FOR RELIEF

VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT PROTECTION ACT

33. Plaintiff realleges the paragraphs in this complaint as if fully set forth herein.

34. Plaintiff is informed and believes and on that basis alleges that Defendant violated the Digital Millennium Copyright Protection Act of 1998 by improperly, without voluntary consent of Plaintiff and its predecessors in interest and/or through use of improper threats and duress, circumventing the technological measures put in place by Blueport and its successors in interest to prevent access and/or copying and/or alteration of its copyrighted work.

35. Accordingly, Defendant is liable to Blueport for statutory, and or actual damages, including Defendant's profits, at the election of Blueport, and for attorneys fees and costs and interest, and Defendant should be enjoined from its violative actions including the injunction from carrying on, enforcing, or performing any contract which is the vehicle for its violative actions.

DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1) That the Court find that Defendant infringed Plaintiff's copyright(s);

(2) That Defendant is liable under United States copyright laws to Plaintiff for statutory, and or actual damages and disgorgement of Defendant's profits, at the election of Plaintiff;

(3) An award of Plaintiff's actual, general and specific, damages against Defendant in an amount to be determined at trial;

(4) For Plaintiff and against Defendant for statutory damages based upon Defendant's acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 et seq.;

(5) For Plaintiff and against Defendant for statutory damages based upon Defendant' violation of the Digital Millennium Copyright Act of 1998;

(6) That Defendant be required to account for all gains and advantages derived from its acts of infringement and for its other violations of law, and reduce all such gains and advantages to money judgment in favor of Plaintiff;

(7) Enjoin Defendant from infringing, taking, denying, and/or diminishing Plaintiff's copyrighted matter, including an injunction from soliciting, carrying on, enforcing, or performing any contract which is the vehicle for its infringing actions;

(8) An award of exemplary and statutory against Defendant;

(9) An award of Plaintiff's reasonable attorneys fees, including expert fees, and costs against Defendant;

(10) An award of pre- and post-judgment interest;

(11) That Plaintiff have judgment against Defendant for Plaintiff's costs and attorneys fees pursuant to the Copyright laws and the Equal Access to Justice Act; and

(12) That the Court grant such other, further, and different relief as the Court deems proper under the circumstances.

DATED THIS March 31, 2005,

Respectfully submitted,

KURT M. RYLANDER TRIAL AND
PATENT ATTORNEY AT LAW PC

/s/ Kurt M. Rylander
KURT M. RYLANDER
Attorney at Law

1014 Franklin Street, Suite 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com

CERTIFICATE OF ELECTRONIC SERVICE

I HEREBY CERTIFY That I served the document to which this Certificate is attached, and the attachments hereto, on the date signed below on counsel for Defendant, Scott Bolden, U.S. Department of Justice, by e-mail through the electronic filing procedures of the U.S. Court of Federal Claims, to scott.bolden@usdoj.gov.

DATED THIS March 31, 2005

/s/ Kurt M. Rylander
KURT M. RYLANDER, WSBA 27819
(360) 750-9931
Of Attorneys for Plaintiff