STOEL RIVES LLP

ATTORNEYS

101 SOUTH CAPTIOL BOULEVARD
SUITE 1900
BOISE, IDAHO 83702-5958
Phone (208) 389-9000 Fax (208) 389-9040
Internet: www.stoel.com

May 23, 2001

THOMAS A. BANDUCCI
*Direct Dial*
(208) 387-4222
email tabanducci@stoel.com

**Via U.S. Mail**

Air Force Legal Services Agency (AFLSA/JACN)
Commercial Litigation Division
c/o Mr. John Brocki
1501 Wilson Blvd.
Suite 610
Arlington, VA 22209

*Re: Copyright Infringement Claim*

Mr. Brocki:

Pursuant to 48 C.F.R. § 227.7004 (2001), the following represents a copyright infringement claim on behalf of Blueport Company, LLC (Blueport) against the United States of America under 17 U.S.C. §§ 101-1101 (2001) and 28 U.S.C. § 1498(b) (2001). In support of said claim, Blueport attaches the Affidavits of Mr. Mark Davenport and Mr. Robert Gunter, respectively.

## I. SUMMARY OF ARGUMENT

Blueport owns the copyright in the Access Unit Manpower Document (AUMD) program. Without any license, implied or otherwise, the United States Air Force (USAF) infringed and continues to infringe upon Blueport's interest in the AUMD program. As a consequence, Blueport brings this copyright infringement action against the United States of America to recover its reasonable and entire compensation, including applicable statutory damages, as provided for under 14 U.S.C. § 1498(b).

## II. FACTUAL BACKGROUND

On or about May 28, 1998, Mr. Davenport completed the development of the AUMD program. (See Affidavit of Mark Davenport ("Davenport Aff.") at ¶ 6.) The AUMD program addressed the inadequacies associated with the ADHOC program by providing a more powerful,

efficient, and user-friendly software system to support the USAF's Manpower Data Systems operations. (Id.) Reduced to its essence, the AUMD program was capable of entirely replacing the inferior ADHOC program with its more sophisticated and proficient operations. (Id.)

The AUMD program was not produced as a part of Mr. Davenport's recognized employment duties. Rather, at the time of the AUMD program's development, Mr. Davenport worked as a Manpower Data Systems Manager. (Id. at ¶ 5.) As a Manpower Data Systems Manager, Mr. Davenport oversaw and maintained the Manpower Data Systems by ensuring the accuracy of both the input and output data operations associated therewith. (Id. at ¶¶ 4 & 5.) Mr. Davenport's duties ultimately resulted in the distribution of interface data which reflected personnel requirements for assignment purposes and combat readiness throughout the Pacific Air Force (PACAF) theater. (Id.) Mr. Davenport, therefore, was neither assigned to nor expected to develop any computer program in relation to his responsibilities. (Id. at ¶¶ 7 & 11.) Such obligations were/are more appropriately assigned to the USAF's Communications-Computer Systems career field, CEM Code 3C0XX. (See Ex. "A" to Davenport Aff. at ¶ 8.) Because the AUMD program was in no way associated with Mr. Davenport's responsibilities, its development cannot be construed to have been within the scope of Mr. Davenport's employment.

In June 1998, Mr. Davenport sent a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force Base. (See Davenport Aff. at ¶ 9.) Mr. Luckie is not within Mr. Davenport's chain of command; rather, M.Sgt. Luckie only offered constructive feedback as to the AUMD program's anticipated application and did not assist Mr. Davenport in the actual development of the AUMD program. (Id.) Apparently impressed with the capabilities of the AUMD program, M.Sgt. Luckie's superior directed him to disseminate the AUMD program to other Manpower Data Systems offices. Given its capacity to efficiently and accurately compile personnel information, Mr. Davenport's AUMD program was soon well-received within Manpower Data Systems circles. In September 1998, Mr. Davenport was asked to demonstrate his AUMD program to the managers of the Manpower Data Systems Community at Randolph Air Force Base, San Antonio, Texas. (Id. at ¶ 12.) The response was overwhelmingly positive. Use of the AUMD program increased substantially following the presentation as Mr. Davenport was directed to forward the AUMD program to Air Force personnel nationwide. (Id.) Importantly, at both the Manpower Conference in September, as well as with each subsequent distribution of the software, Mr. Davenport was recognized as the author and owner of the AUMD program. (Id.)

In October 1999, Air Force Manpower and Innovation Agency (AFMIA) personnel approached Mr. Davenport and inquired into the possibility of submitting an AF Form 1000 IDEA Application on the AUMD program's source code. (Id. at ¶ 13.) Mr. Davenport declined, despite a potential offer of $25,000.00 in exchange for the submission. (Id.) Mr. Davenport likewise rejected the suggestions of Mr. Glendon Hendricks, Chief of AFMIA's Information



PLAINTIFF'S EXHIBIT
2-000e2 of 14

Systems Division. Mr. Hendricks relayed the USAF's continued need for the AUMD program following Mr. Davenport's anticipated retirement and suggested that Mr. Davenport disclose the software's source code accordingly. (Id.) Mr. Davenport, however, expressed his interest in maintaining control over the AUMD program and indicated that he would not release its source code to the government. (Id.) As a result, in January 2000, Mr. Davenport learned that the USAF had issued a Request for Proposal (RFP) which requested government contractors to "recreate" a duplicate of the AUMD program such that it could be "seamlessly substituted" for the AUMD program. (See Ex. "B" to Davenport Aff. at ¶ 14.) Toward this end, each of the responding contractors were given Mr. Davenport's name, phone number, e-mail address, and a copy of the AUMD program, Version 2.1f. (Id.) At no time did Mr. Davenport consent to the USAF's efforts to duplicate the AUMD program. (Id.) Further, Mr. Davenport was never contacted by any contractor. (Id.)

On March 6, 2000, Blueport acquired the copyrights and all other common law intellectual property rights to the AUMD program. (See Ex. "A" to Affidavit of Robert Gunter ("Gunter Aff.") at ¶ 6.) By registration on March 9, 2000, Mr. Davenport/Blueport made a public record of its copyright claim in the AUMD program, Version 2.1d. (See Ex. "B" to Gunter Aff. at ¶ 7.) Prior to this time, each version of the AUMD program reflected ownership in Mr. Davenport's name only. (Id.) With the acquisition, Blueport became the owner of the AUMD program and the holder of the intellectual property rights accompanying the software. Version 2.1g of the AUMD program recognizes this change in ownership with the statement, "[A]uthored by Mark Davenport and is owned by Blueport Company, LLC. Copyright 1999/2000 All Rights Reserved." As the owner of the AUMD program, Blueport initiated correspondence with the USAF regarding the potential licensing of the AUMD program. ( See Ex. "C" to Gunter Aff. at ¶ 8.) Blueport's efforts toward seeking a licensing agreement with the USAF were never reciprocated. (Id.)

Within each version of the AUMD program, Mr. Davenport included an automatic expiration function such that the AUMD program would stop operating after a particular, programmed date. (See Davenport Aff. at ¶ 15.) The version supplied to the prospective government contractors in the RFP, Version 2.1f, was no exception; Version 2.1f of the AUMD program contained an expiration date of May 15, 2000. (Id.) With this in mind, on April 17, 2000, Colonel Richard Zeimet, the Chief of Manpower and Organization at PACAF, requested that Mr. Davenport extend the May 15, 2000 expiration date function encrypted into Version 2.1f of the AUMD program and reveal the AUMD program's source code. (Id. at ¶ 16.) Mr. Davenport was told that if he refused to follow Colonel Zeimet's request, he would be given a direct order to extend the AUMD program's expiration date, such that a refusal would have resulted in the initiation of court-martial proceedings against him. (Id.) Mr. Davenport understood that Colonel Zeimet requested the extension in the AUMD program's expiration date so that the contractors responding to the AFMIA's RFP would have adequate time to develop a



PLAINTIFF'S EXHIBIT 2 - page 3 of 14

replacement AUMD program-equivalent software. (Id.) Given this, on May 11, 2000, Blueport authorized Mr. Davenport to supply a new version of the AUMD program to the USAF. (See Gunter Aff. at ¶ 9.) On May 12, 2000, Mr. Davenport delivered an updated version of the AUMD program, Version 2.1g, which was programmed to expire on June 30, 2000. (See Davenport Aff. at ¶ 17.)

Regardless of Blueport's supplying Version 2.1g of the AUMD program with the above-mentioned expiration date extension, the USAF, without Blueport's authorization, proceeded to extend the expiration date of the AUMD program. In May 2000, Mr. Davenport discovered that the USAF had "hacked" into a previous version of the AUMD program, Version 2.1e, and instituted a new expiration date of February 15, 2001. (Id. at ¶ 18.) Furthermore, contrary to the pre-existing AUMD program versions, the "About" screen within the altered Version 2.1e had been unilaterally altered to indicate that AFMIA is the owner of the copyright in the AUMD program. (Id.) Additionally, AFMIA published this unauthorized version of the AUMD program on the world-wide-web network on May 15, 2000. (Id.) Prior to this time, publication of the AUMD program was limited to the USAF's network. (Id.)

On May 17, 2000 Mr. Hendricks notified Mr. Davenport that AFMIA would not distribute Version 2.1g of the AUMD program that Blueport had previously authorized Mr. Davenport to deliver to the USAF five days prior. (Id. at ¶ 19.) Subsequently, on May 18, 2000, AFMIA replaced the "hacked" Version 2.1e of the AUMD program on their internet web address with an altered Version 2.1g of the AUMD program -- the very program that Mr. Hendricks returned to Mr. Davenport the day before. (Id.) AFMIA had evidently "hacked" into Version 2.1g of the AUMD program and again extended the expiration date from June 30, 2000 to February 15, 2001. (Id.) As to Versions 2.1e and 2.1g of the AUMD program, the respective copyright statement expressing ownership in Mr. Davenport's and Blueport's name had been removed.

Due to an apparent inability to timely duplicate the characteristics of the AUMD program by February 15, 2001, the USAF, without the consent of Blueport, recently extended its expiration date once again. (See Gunter Aff. at ¶ 10.) This revised version of the AUMD program, Version 2.1h, is simply a "hacked" copy of the previously "hacked" Version 2.1g with a revised expiration date of August 15, 2001. (Id.) Version 2.1h still incorrectly indicates that AFMIA is the copyright owner in the AUMD Program. (Id.)

As the current owner of the copyright in the AUMD program, Blueport now seeks to recover for the infringing conduct of the USAF. In doing so, Blueport brings this administrative claim for compensation relating to the USAF's liability arising under 17 U.S.C. §§ 101-1101 and 28 U.S.C. § 1498(b).



PLAINTIFF'S EXHIBIT
2-page 4 of 14

## III. LEGAL ANALYSIS

Where a copyright is infringed by the federal government, the copyright owner may bring an action against the United States of America for the recovery of its reasonable and entire compensation for such infringement. 28 U.S.C. § 1498(b).[1] Such an action is permissible so long as (1) the government employee associated with the copyrighted material was not in a position to order, influence, or induce the use of the copyrighted work; (2) the copyrighted work was not prepared by a federal employee in conjunction with that employee's official functions; and (3) the copyrighted work was not prepared using government time, materials or facilities. *Id.*; *see also*, Air Force Instruction 51-303(3.1-3.3) (1998).

Each of the above-referenced requirements is met in this instance. First, Mr. Davenport, as the author and original owner of the AUMD program, was never in a position to order or influence the use of the AUMD program; his position within the USAF prohibited such authority. Second, the AUMD program was not developed as a part of Mr. Davenport's official functions; Mr. Davenport was employed to maintain and distribute interface data to each of the nine PACAF bases making up his clientele, not to develop a computer program to replace the existing ADHOC software. Finally, Mr. Davenport did not utilize government time, materials, or facilities in the production of the AUMD program. On the contrary, Mr. Davenport, on his own time and at his own expense, used his own software, his own computer, and his own expertise to develop the AUMD program. Because the provisos impeding the application of 28 U.S.C. § 1498(b) do not apply here, Blueport, as the current owner of the AUMD program and its copyright, may proceed with its infringement action against the federal government.

### A. Blueport Owns the AUMD Program and its Copyright

The application of 28 U.S.C. § 1498(b) presupposes ownership in the allegedly infringed copyright. Toward this end, the Copyright Act of 1976 provides that copyright ownership vests initially in the author of a copyrightable work. 17 U.S.C. § 201(a). Generally, the author is the party who actually creates the work. 17 U.S.C. § 102. However, if a work is one that is "made for hire," the employer for whom the work was prepared is considered the author and owns the copyright, unless the parties have expressly agreed otherwise.[2] 17 U.S.C. § 201(b). Here, Mr.

---

[1] This includes the filing of an administrative claim against the federal government. *See* 48 C.F.R. 227.7004; *see also*, Air Force Instruction 51-303(2.1) (1998).

[2] Although the federal government cannot own copyrights to work created by its employees under 17 U.S.C. § 105, the application of the "work made for hire" doctrine is nonetheless integral in understanding the ownership of the AUMD program copyright in this



PLAINTIFF'S EXHIBIT
2-page 5 of 14

Davenport was never hired to develop the AUMD program. As a result, Mr. Davenport is properly recognized as the author and, hence, the original owner of the AUMD program. Because Mr. Davenport subsequently assigned his interest in the AUMD program to Blueport, Blueport is now the proper owner of the AUMD program and its copyright.

The Copyright Act of 1976 defines a "work made for hire" as "one prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. As interpreted by the courts, the term "scope of employment" is assigned its common-law agency meaning, as set forth in Restatement (Second) of Agency 228. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166 (1989) (instructing that common-law agency principles govern resolution of "scope of employment" query). Thus, an employee's conduct is within the scope of his employment if (1) it is of the kind of work he is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer. *See id.* This test is conjunctive, therefore all three elements must be proved to establish ownership in an employer. *See* Scott K. Zesch, Annotation, *Application of "Works for Hire" Doctrine Under Copyright Act of 1976*, 132 A.L.R. Fed. 301 (1996). The application of the test reveals that Mr. Davenport's development of the AUMD program was not a "work made for hire." Consequently, ownership in the AUMD program remained with Mr. Davenport and was successfully assigned to Blueport along with the copyright to the same.

The development of the AUMD program is not consistent with the type of work Mr. Davenport was employed to perform. Mr. Davenport was responsible only for the management and accuracy of manpower information submitted to the nine PACAF bases. He was never employed, directed, requested, encouraged, or expected to develop any method for collecting and processing information similar to that already provided for by the ADHOC program. Moreover, the development of the AUMD program did not take place on federal government time or through the use of federal government materials. In support of these contentions, Lieutenant Colonel William Manning, Chief of PACAF's Programs and Organization Branch, acknowledges that the AUMD program was not a "work made for hire," stating:

> SSgt. Davenport created this program and wrote the code on his own time, after duty, at his own expense, on his own personal computer at his residence. This program was developed over many hours and at significant expense to SSgt.

---

instance. The "work made for hire" doctrine in such a context, places the copyrightable material in the public domain where the federal government would have access to such material. Therefore, where a particular work is the product of a "work made for hire," the material becomes part of the public domain. Conversely, where a particular work is not the product of a "work made for hire," the copyright in the material remains with the author.



PLAINTIFF'S EXHIBIT
tabbles
2-page 6 of 14

> Davenport .... I understand and respect SSgt. Davenport's [sic] as the person who created, and **fully developed this program on his own time and at his own expense. I can attest that during my tenure, he was never ordered or tasked in any way to develop this program.**

(See Ex. "C" to Davenport Aff. at ¶ 7 (emphasis added)) Mr. Anthony Dant, Director of Plans for PACAF's Manpower and Organization Division and a former supervisor of Mr. Davenport, similarly endorses the notion that the AUMD program was not a "work made for hire," stating:

> During this period of supervision I did not direct Mark Davenport to create the software program in question, or any other software programs that could be used in the performance of our official duties. **To my knowledge no one within the HG PACAF/XPM community directed him to create this program** .... During the entire three year period of working in close proximity of Mark Davenport I **never saw him working on the program in question at his duty location.** To **my knowledge, he created the program while off duty at his private residence.**

(See Ex. "D" to Davenport Aff. at ¶ 7 (emphasis added)) Mr. Davenport's development of the AUMD program clearly was not a function of his assigned duties within the USAF. It is equally apparent that Mr. Davenport's development of the AUMD software did not take place on government time or through the use of government materials. Consequently, the AUMD program was not a "work made for hire."

Because the AUMD program was not a "work made for hire," ownership in the software properly belonged to Mr. Davenport at all times leading up to the assignment of the same to Blueport. As the current owner of the AUMD program and the holder of its corresponding copyright, Blueport relies upon 28 U.S.C. § 1498(b) to now recover its damages associated with the federal government's infringement practices.

B. <u>Blueport's Infringement Claim Is Permitted Under 28 U.S.C. 1498(b)</u>

As previously outlined, a copyright owner's claim may proceed so long as the limitations within 28 U.S.C. § 1498(b) do not exist. In particular, Blueport cannot maintain a cause of action against the federal government if (1) Mr. Davenport was in a position to order or influence the use of the AUMD program; (2) the AUMD program was prepared as a part of Mr. Davenport's official functions; or (3) government time, materials, or facilities were used in making the AUMD program. 28 U.S.C. § 1498(b). These conditions do not apply here.



PLAINTIFF'S EXHIBIT
2-page 7 of 14

First, Mr. Davenport was never in a position to order or influence the use of the AUMD program. As a Manpower Data Systems Manager, Mr. Davenport did not possess the authority to command, order, influence, or otherwise induce the use of the AUMD program. The success of the AUMD program resulted not from Mr. Davenport's individual marketing of the software, but rather through word-of-mouth and positive feedback from the network of former ADHOC program users. This, in conjunction, with the USAF's direction to distribute the AUMD program to military personnel nationwide, led to the AUMD program's positive reception and accompanying value. Blueport's copyright infringement claim, therefore, cannot be excepted on such a basis.

Second, the AUMD program was neither prepared nor updated as a part of Mr. Davenport's express or implied official functions as has already been established.[3] Furthermore, Mr. Davenport did not undertake any general research or teaching obligations which may be construed to somehow include the development and application of the AUMD program. Instead, Mr. Davenport was assigned and expected to manage manpower allocation data and to forward the requested information throughout the PACAF theater. The development of any computer program, including the AUMD program, was never expected from Mr. Davenport or a Manpower Data Systems Manager position. Rather, such tasks are more appropriately assigned to and expected of the Computer Systems Manager, CEM Code 3C0XX. *See e.g., Quinn v. City of Detroit*, 988 F. Supp. 1044, 1051 (1997) (holding computer program was not created as part of employment duties where job description did not require its development and employer already had its own separate computer programming department to develop particular software at issue). The cited "duties and responsibilities" associated with this later employ conveniently address the production of electronic software, as they include "directing computer system activities responsible for system analysis and design, programming, operations and maintenance, security systems management, technical support, and resource management." CEM Code 3C0XX.[4]

---

[3] The analysis for determining whether copyrighted material was "prepared as part of the official functions of the employee" as outlined in 28 U.S.C. § 1498(b), is identical to the "scope of employment" query within the "work made for hire" doctrine. *See* 3 *Nimmer on Copyrights* § 12.01[E][1] (2000) ("[A] U.S. Government employee, acting within the scope of his employment, cannot recover for copyright infringement of the subject work."); *see also* H.R. Rep. No. 1476, 94th Cong., 2nd Sess. (1976) ("Although the wording of the definition of "work of the United States Government" differs somewhat from that of the definition of "work made for hire," the concepts are intended to be construed in the same way.")

[4] Interestingly, Mr. Davenport, in his capacity as a Manpower Data Systems Manager, requested computer programming training from the USAF to assist in his job performance. The USAF, however, failed to comply with Mr. Davenport's request, claiming that such expertise



PLAINTIFF'S EXHIBIT 2 - page 8 of 14

Because the development of the AUMD program, therefore, was not a part of Mr. Davenport's official functions as a Manpower Data Systems Manager, Blueport's copyright infringement claim cannot be excepted on such a basis.

Lastly, Mr. Davenport developed the AUMD program on his own time, at his own expense, and without the assistance of government equipment, materials, or facilities. Specifically, in arriving at the source code for the AUMD program, Mr. Davenport first purchased his own version of Microsoft Office 97, Professional Edition for use on his own personal computer at his own residence. This software contained, among other applications, Access97 which allowed Mr. Davenport to then input artificial, non-work-related data into the software. The product of this individual and non-sponsored work resulted in the underlying structure of the AUMD program and its subsequent revisions. Because Mr. Davenport did not utilize government resources to help develop the AUMD program, Blueport's copyright infringement claim cannot be excepted on such a basis. *See Roeslin v. District of Columbia*, 921 F. Supp. 793 (1995) (holding computer program developed at home and ultimately used for employment purposes was property of employee and not employer); *see also, Quinn*, supra at 1051 (same).

None of the conditions which would preclude Blueport from pursuing its action against the federal government exists here. Mr. Davenport did not order or influence the use of the AUMD program; he did not develop the AUMD program as a part of his official functions as a Manpower Data Systems Manager; and he did not use the federal government's resources in developing the AUMD program. Blueport is therefore entitled to pursue its copyright infringement claim against the United States of America under 28 U.S.C. § 1498(b) and to recover its reasonable and entire compensation as damages for such infringement.

C. The USAF Has Infringed and Continues to Infringe on Blueport's Copyright in the AUMD Program

Section 106 of the Copyright Act grants Blueport an enumerated list of "exclusive rights," including the right to reproduce the work in copies, the right to prepare derivative works, the right to distribute copies to the public, the right to perform the work publicly, and the right to display the work publicly. 17 U.S.C. § 106. Unauthorized engagements of these "exclusive rights" are considered an infringement of the copyright against the rights of its owner. Id. at

---

was not needed for Mr. Davenport to perform his assigned duties and obligations. *See e.g., Roeslin v. District of Columbia*, 921 F. Supp. 793 (D.C. 1995) (holding employer's claim that computer program was developed as part of employee's job to be "disingenuous" when employer previously discouraged employee from writing computer program).



PLAINTIFF'S EXHIBIT 2-page 9 of 14

§ 501. Here, it is apparent that the USAF has infringed and continues to infringe upon Blueport's copyright in the AUMD program. The USAF has reproduced, created alternative versions of, and distributed the AUMD program without the permission of its owner, Blueport. Further, the USAF's refusal to enter into discussions regarding possible licensing agreements,[5] in addition to its persistent desire to reverse-engineer the AUMD program through government contracts, demonstrates the USAF's intention to continue its infringing practices.

An owner's exclusive right of reproduction is violated when copies of the work are made without the owner's consent. Id. at § 106(1). A "copy" is defined as a "material object ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." Id. at § 101. Computer RAM is sufficiently "fixed" to satisfy the definition of a "copy." *See MAI Sys. Corp. v. Peak Computer Inc.*, 991 F.2d 511 (9th Cir. 1993). Thus, by making available altered versions of the AUMD program to the public, such that anyone, including federal employees could load these AUMD program versions merely by turning on their respective computers, the USAF has impermissibly copied, and continues to copy, the AUMD program. *Id.* at 517; *see also*, *Roeslin*, supra at 799 ("[E]very time [defendant's employee] used the [computer software] ... the [defendant] infringed plaintiff's copyright.") This act constitutes an infringement of Blueport's reproduction rights to the AUMD program.

An owner's exclusive right to develop works "inspired by" or "based on" his copyrighted material is violated when a work incorporates significant characteristics of that author's pre-existing copyrighted work. 17 U.S.C. § 106(2); *see also*, 2 *Nimmer on Copyrights* § 8.09[A] (2000). Here, the USAF's RFP requested government contractors to "recreate" a duplicate of the AUMD program such that the reproduced version would, in essence, mirror that of the existing AUMD program. To help accomplish this task, the USAF provided each of the prospective government contractors with the AUMD program, Version 2.1f, in addition to Mr. Davenport's name, phone number, and e-mail address. Either the successful government contractor,

---

[5] Following the assignment of the AUMD program, Blueport, through its President, Mr. Gunter, contacted AFMIA in an effort to discuss possible licensing opportunities with the USAF. In his facsimile of March 6, 2000, Mr. Gunter referenced the change in the AUMD program's ownership while recognizing the benefits associated with the USAF's previous use of the same. (See Ex. "C" to Gunter Aff. at ¶ 8.) Furthermore, Mr. Gunter expressed his interest in negotiating a licensing agreement with the USAF for the use of the AUMD program. (Id.) Despite Mr. Gunter's efforts in these regards, the USAF neither responded to nor acknowledged Blueport's desire to enter into a licensing agreement specific to the AUMD program. (Id.) Rather, the USAF continued with its attempt to unilaterally reproduce the AUMD program through its solicitation of government contractors.



PLAINTIFF'S EXHIBIT
2-page 10 of 14

following the USAF's express direction, or internal USAF programmers, proceeded to "hack" into the AUMD program and modified its source code. This is evident by the USAF's unilateral extensions of the expiration dates within the AUMD program, as well as its indication that the AUMD program was copyrighted in the name of AFMIA, not Mr. Davenport or Blueport. These subsequent versions of the AUMD program constitute "derivative works" of the original copyrighted AUMD program such that their creation not only infringes Blueport's "derivative works" right, but also its reproduction and distribution rights. *See* H.R. Rep. No. 1476, 94th Cong., 2nd Sess. (1976) ("A single act of infringement may violate all of these rights at once ....")

An owner's exclusive right to publically distribute copies of his copyrighted work is understandably violated when somebody/something else performs the distribution. 17 U.S.C. § 106(3). By making the AUMD program available to the public via the world-wide-web without Blueport's consent, the USAF has impermissibly distributed the AUMD program. *See e.g., Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) (holding that placement of protected works "on-line" violated copyright owner's exclusive right to publically distribute copyrighted material). This act constitutes an infringement of Blueport's distribution rights to the AUMD program.

The USAF does not have a license, either express or implied, to use the AUMD program in manners consistent with the practices listed above. To be sure, Air Force Instruction 51-303 specifically limits the USAF's use of a private copyright to only those rights that are "actually needed." Air Force Instruction 51-303(10.2.1). The above-mentioned practices go beyond any rights that are "actually needed," and indicate a blatant disregard for Blueport's ownership in the AUMD program's copyright. Furthermore, the USAF neglected to pursue licensing discussions with Mr. Gunter. Its failure in this regard, coupled with its outright refusal to recognize Blueport as the copyright owner of the AUMD program, cannot somehow preclude Blueport from now recovering for the USAF's infringement practices.

D. <u>As a Consequence of the Federal Government's Infringements, Blueport Seeks to Recover its Reasonable and Entire Compensation as Damages, Including Minimum Statutory Damages</u>

An unauthorized use of copyrighted work not otherwise sanctioned by copyright laws, typically allows the copyright owner to invoke the remedial measures outlined in the Copyright Act of 1976. The measures provided within the Copyright Act of 1976, however, do not readily apply to situations such as this -- where the federal government infringes upon a copyright. Under such circumstances, 28 U.S.C. § 1498(b) allows for the recovery of a copyright owner's reasonable and entire compensation as damages for such an infringement.

In pertinent part, 28 U.S.C. § 1498(b) reads:

PLAINTIFF'S EXHIBIT
2-page 11 of 14

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States ... the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States ... **for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code.**

28 U.S.C. § 1498(b) (emphasis added). "Reasonable compensation," as used in 28 U.S.C. § 1498(b) is accomplished when viewing the federal government's unauthorized use of a copyrighted material as a taking of property under the Fifth Amendment to the United States Constitution.[6] The Supreme Court has observed that just compensation "means the full and perfect equivalent in money of the property taken" and that the objective of this payment is to place the property owner "in as good [a] position pecuniarily as he would have occupied if his property had not been taken." *United States v. Miller*, 317 U.S. 369, 373 (1943).

Although it is currently unclear how many copies of the AUMD program have been distributed without either Mr. Davenport's or Blueport's authorization, Blueport understands that number to be in the thousands.[7] Additionally, when likened to comparable software applications, licensing fees for the AUMD program would range between $750.00 and $1,200.00. Even with

---

[6] Both the legislative and judicial interpretations of 28 U.S.C. 1498(b) reveal that its theoretical basis derives from the Fifth Amendment's just compensation clause. Indeed, the House Report on the amendment to allow actions for copyright infringement against the federal government provides:

> When the Government deliberately publishes a copyrighted article without obtaining the prior consent of the copyright proprietor, the general assumption would be that the holder, pursuant to the principles of "just compensation" under the [F]ifth [A]mendment of our Constitution, should be entitled to an action against the Government for infringement.

H.R. Rep. No. 624, 86th Cong., 1st Sess. (1959).

[7] When taking into consideration only the personnel within Manpower Management and a conservative percentage of those within the USAF's major command units who were instructed to download each version of the AUMD program to generate their own manpower reports, the estimation of unauthorized copies of the AUMD program necessarily approaches a figure in the tens of thousands.



PLAINTIFF'S EXHIBIT
2-page 12 of 14

the understanding that deep discounts exist in relation to a high volume of users, the current use of the AUMD program, coupled with its corresponding licensing fee, nonetheless reflects a value to Blueport on the order of several million dollars.[8]

In addition to the "just compensation" due under a takings analysis, a close reading of 28 U.S.C. § 1498(b) further authorizes the recovery of the minimum statutory damages as set forth in 17 U.S.C. § 504(c). In pertinent part, 17 U.S.C. § 504(c) reads:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more that $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

Thus, as a result of the USAF's infringing conduct upon Blueport's copyright ownership interest in the AUMD program, Blueport is entitled to both its reasonable and entire compensation through a Fifth Amendment takings analysis, in addition to its statutory damages available under 28 U.S.C. § 1498(b).

## IV. CONCLUSION

Mr. Davenport developed the AUMD program on his own time, at his own expense, and through the use of his own materials and individual efforts. Mr. Davenport, therefore, was the author of the AUMD program and, by a parity of reasoning, its owner. Upon assigning his

---

[8] The actual number of users will have to be established through formal discovery.



PLAINTIFF'S EXHIBIT
2-page 13 of 14

ownership in the AUMD program to Blueport, Blueport assumed the rights and obligations associated therewith. Blueport may maintain a cause of action against the federal government pursuant to 28 U.S.C. § 1498(b) because Mr. Davenport never induced the use of the AUMD program, did not develop the AUMD program as part of his official functions, and did not use the federal government's resources to develop the same. The USAF, through its infringing conduct, has violated federal copyright laws and its own specific Air Force Instructions. Based upon the foregoing, Blueport, as the current owner of the AUMD program, is now entitled to its reasonable and entire compensation, including statutory damages, for the federal government's infringing practices.

Very truly yours,

Thomas A. Banducci

TAB:djg
Enclosures



PLAINTIFF'S EXHIBIT
2-page 14 of 14