DEPARTMENT OF THE AIR FORCE
AIR FORCE LEGAL SERVICES AGENCY (AFLSA)

RECEIVED
JAN 26 2002

JAN 22 2002
STOEL RIVES LLP

11 January 2002

AFLSA/JACN
1501 Wilson Boulevard
Suite 606
Arlington, VA 22209

Mr. Thomas A. Banducci
Stoel Rives LLP
101 South Capitol Boulevard
Boise, Idaho 83702-5958

Dear Mr. Banducci

Reference is made to your letter dated, 23 May 2001, which made an administrative claim for compensation for the alleged infringement of a copyright in the "Access Unit Manpower Document" (AUMD) program. The administrative claim alleges that the AUMD program was prepared by Mr. Mark Davenport, a former U.S. Air Force Technical Sergeant, and that the Blueport Company has "acquired the copyrights and all other common law property rights to the AUMD program."

Guidance for the resolution of allegations of copyright infringement against the Government is provided in 28 U.S.C. 1498(b). This statute provides, in part, as follows:

> [A] Government employee shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government. *Provided, however*, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used ....

As an attachment to his affidavit, which was included in your letter of 23 May 2001, Mr. Davenport provided a copy of his job description while he was on active duty with the Air Force. Paragraph 1, "Specialty Summary," of that job description provides in pertinent part: "Activities include system analysis and design, programming, systems operation and maintenance, resource management and security management." Paragraph 2, "Duties and Responsibilities," includes in part: "Directs C-CS activities responsible for system analysis and design, programming, operations and maintenance, security, systems management, technical support, and resource

PLAINTIFF'S EXHIBIT
5 page 1 of 4

T-B
DJG

management." Paragraph 2 also includes the following responsibility: "Organizes software development teams that use software methodologies." Paragraph 3, "Specialty Qualifications," provides that "Knowledge is mandatory of...software methodology...Also, experience is mandatory in ... software development ...." It is clear from Mr. Davenport's job description that computer programming was part of his official duties and, in accordance with 28 U.S.C. § 1498(b), Mr. Davenport has no right of action against the Government. Further, 17 U.S.C. § 105 provides that "[c]opyright protection under this title is not available for any work of the United States Government," and 17 U.S.C. § 101 provides that "a work of the United States Government is a work prepared by an officer or employee of the United States Government as part of that person's official duties." Accordingly, we have concluded that Mr. Davenport was not entitled to copyright protection for the AUMD program. Therefore, Mr. Davenport was not in a position to confer any rights whatsoever to a third party for the AUMD program.

In the case of *Miller v. CP Chems., Inc.*, 808 F. Supp. 1238 (D.S.C. 1992), the court considered the issue of a work for hire in a dispute over the ownership to certain rights in computer programs. The plaintiff was hired as a laboratory supervisor and assumed overall responsibility for the operation of a quality control laboratory. The plaintiff became concerned about the efficiency of performing manual calculations, and wrote a computer program to perform that function. The computer program simplified his duties, and reduced the chance of error. The plaintiff worked primarily, if not entirely, on the computer programs at his home on his own time and for no additional pay. The court found that the plaintiff "was not hired primarily for the development of computer programs. However, as a supervisor of the quality control laboratory, he was responsible for the organization and updating of the laboratory. Thus, the development of the computer programs was at least incidental to his job responsibilities because it was 'within the ultimate objective of the principal and an act which it is not unlikely that such a servant might do.'" 808 F. Supp. at 1243. Moreover, the court found:

> There is no question but that the development of the computer programs was actuated, at least in part, by a purpose to serve the master. The initial program was created to simplify Miller's job and to eliminate errors, which was for the benefit of both Miller and CP. Officials at CP expressly asked Miller to continue to develop computer programs that dealt with other products of CP. Finally, each computer program dealt specifically with a product manufactured by CP. The ultimate purpose of the development of the computer programs was to benefit CP by maximizing the efficiency of the operation of the quality control lab.

Id. Based on these findings, the court concluded that "the development of the computer programs by Miller was within the scope of his employment." 808 F. Supp. at 1244.

The facts of Blueport Company's administrative claim are consistent with the fact pattern of the *Miller* case. According to Exhibit A of your above-referenced letter, Mr. Davenport was assigned to manage communications-computer systems (C-CS) operations and software activities, and to direct C-CS activities responsible for system analysis and design, programming, et al. As provided in his affidavit, Mr. Davenport perceived deficiencies in a certain computer program, and developed the AUMD to address the deficiencies. The alleged improvements of the AUMD in terms of efficiency and user friendliness would be a benefit to the Government, as well as a

PLAINTIFF'S EXHIBIT 5-page 2 of 4

simplification of Mr. Davenport's job. Additionally, the development of the AUMD was done at least in part to "serve the master," just as in the *Miller* case. Based on *Miller*, we therefore conclude that the development of the AUMD by Mr. Davenport was within the scope of his employment, a cause of action for copyright infringement is precluded by 28 U.S.C. § 1498(b), and copyright protection is not available under 35 U.S.C. § 105.

We also note that 28 U.S.C. § 1498(b) denies a right of action to a Government employee against the Government for copyright infringement where the employee "was in a position to order, influence, or induce use of the copyrighted work by the Government...." It is noteworthy that the statute does not require that the employee actually order, influence, or induce the use of the copyrighted work, but only that the employee be in a position to do so. It is not clear how the AUMD program was made available to the Air Force. In your letter dated 23 May 2001, you provide that "Mr. Davenport sent a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force Base." However, in his affidavit attached to your letter, Mr. Davenport provides that he "delivered a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force Base." The reason for Mr. Davenport to send or deliver the program to MSgt Luckie would be to induce the use of the program. Further, in his affidavit, Mr. Davenport provides that he "was asked to demonstrate the AUMD program to the managers at Manpower Data Systems at Randolph Air Force Base, San Antonio, Texas." Again, the reason to have Mr. Davenport demonstrate the program is because he was in a position to influence or induce the use of the program. This conclusion is bolstered by the contents of Mr. Davenport's job description, Exhibit "A" to your above-referenced letter. The following are several duties from that job description:

> Manages communications-computer systems (C-CS) operations and software activities.
>
> Designs and develops organizational structures, and determines equipment, training, and supplies required....
>
> Interacts with customers to promote customer satisfaction.
>
> Directs C-CS activities responsible for system analysis and design, programming....
>
> Organizes software development teams that use software methodologies.
>
> Organizes and participates in C-CS implementation and conversion.

Additionally, in Mr. Davenport's Enlisted Performance Report (EPR) for the periods of 11 April 1998 to 10 April 1999 and 11 April 1999 to 10 April 2000, his "Key Duties, Tasks, And Responsibilities" include: "Manages the command manpower database"; "Reviews all manpower changes and identifies adjustments necessary to ensure PACAF combat readiness"; and "Provides resource information to customers across the Air Force including HQ USAF, PACAF, and other MAJCOMs." Further, the "Rater's Comments" and "Indorser's Comments" provided in the above EPR's contain strong language indicating that Mr. Davenport was very influential in the Air Force personnel arena. The specific comments are not included here due to Privacy Act considerations

PLAINTIFF'S EXHIBIT
tabbies
5-page 3 of 4

Mr. Davenport's duties were not passive. He was in a position to at least influence or induce the use of the AUMD program. Accordingly, 28 U.S.C. § 1498(b) precludes a right of action against the Government for copyright infringement of the AUMD program.

28 U.S.C. § 1498 also denies a right of action to a Government employee against the Government for copyright infringement for a work "in the preparation of which Government time, material, or facilities are used...." We understand that Mr. Davenport had access to the Manpower Data Systems (MDS) Central database, and used extracts from that database for the AUMD. Without that Government data, completion of the AUMD would not have been possible. We further understand that Mr. Davenport received suggestions and recommendations from Government employees concerning the AUMD, and incorporated those suggestions and recommendations in various versions of the AUMD. In paragraph 9 of Mr. Davenport's affidavit attached to your letter of 23 May 2001, Mr. Davenport acknowledges one such occurrence. Accordingly, 28 U.S.C. § 1498(b) precludes a right of action against the Government for copyright infringement of the AUMD program because of Mr. Davenport's use of Government data and information.

Even if we were to assume, arguendo, that copyright protection existed for the AUMD program, we have concluded that, at a minimum, the Government would have a non-exclusive license in the AUMD program. In *MacLean Associates, Inc. v. WM. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3rd Cir. 1991), the court cited *Nimmer on Copyright*, which states that "[a] non-exclusive license may be granted orally, or may even be implied from conduct" and further that "[d]elivery of a copy of the creation 'is one factor that may be relied upon in determining that an implied license has been granted.'" See also *Victor Herbert, M.D., J.D. v. United States*, 36 Fed. Cl. 299, LEXIS 146, 1996. In the present situation, Mr. Davenport provided a copy of the AUMD to the Air Force and actively promoted its use. Further, all the arguments, presented above, that support a finding that Mr. Davenport's work was a work-for-hire also add to the argument that the Government would have, at the very least, a non-exclusive license in the AUMD program.

Based on the above, I am authorized by The Judge Advocate General to inform you that the Blueport Company claim for compensation, for damages allegedly caused by or arising from the alleged infringement of a copyright for the AUMD program by the Department of the Air Force, is hereby denied.

Sincerely

FRANCIS J. LAMIR, Colonel, USAF
Chief, Commercial Litigation Division

PLAINTIFF'S EXHIBIT
5 page 4 of 4