**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY LLC,<br><br>Plaintiff,<br>-v-<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 02-1622C<br><br>Judge Lawrence J. Block |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**

The Court should deny Defendant's motion for partial summary judgment on its affirmative defense of sovereign immunity. Plaintiff, Blueport Company, LLC ("Blueport"), alleges, among other things, in its complaint that the deliberate actions of government officers and/or agents acting in official capacities violated Blueport's rights under the Digital Millennium Copyright Act (DMCA) 17 U.S.C. §§ 1201-1205, entitling Blueport to statutory damages, actual damages, and injunctive relief. Defendant argues that the Government did not waive sovereign immunity relating to DMCA claims and therefore the Court lacks subject matter jurisdiction over those claims. Defendant's motion should be denied. The DMCA provides a clear waiver of sovereign immunity for damages claims against the United States, and proper jurisdiction lies in the Court of Federal Claims for damages claims against the United States.

<u>STATEMENT OF THE CASE</u>

Blueport filed this complaint November 18, 2002, alleging infringement of certain software copyrights under 28 U.S.C. § 1498(b) and violations of the DMCA by the United States Air Force. See *Pl. Am. Complaint ¶¶ 25-35*. Blueport seeks damages,

restitution, disgorgement of profits, attorney's fees, and injunctive relief. Blueport is the assignee of Mr. Davenport, the original author of the works. *Id. at ¶ 14*. In May of 1998, Mr. Davenport, then a Technical Sergeant in the U.S. Air Force (paygrade E5), completed the development of the two programs at issue in this case, collectively referred to as "AUMD." *Id. at ¶ 5*. The AUMD programs addressed the substantial inadequacies of the then-current ADHOC software used by Air Force personnel managing manpower issues, both in the personnel field and in various field commands throughout the world. *Id. at ¶¶ 5-6*. Although used exclusively by the Air Force, the programs could be used in any application requiring selecting personnel or job functions from a database based up specified parameters. *Id. at ¶¶ 5-6*. The substantial improvements of AUMD over Air Force software made it very popular with users in the Air Force as it was passed around informally to members of various commands. *Id. at ¶ 11*. Mr. Davenport assigned all rights to Blueport, and registered the AUMD software copyrights and assignment on March 9, 2000. *Id. at ¶ 14*. When Blueport attempted to negotiate a license agreement with the Air Force, the Air Force refused and disputed the validity of Blueport's copyright in the software. *Id. at ¶ 15*.

Each copy of AUMD software included a startup page which identified Mr. Davenport, and later Blueport, as the author and copyright owner and incorporated an expiration date in the compiled code which prevented operation of that version of the software beyond the expiration date. *Id. at ¶¶ 14-16*. After negotiations broke down over licensing the Air Force hired SAIC, a government contractor, to duplicate the AUMD software. The Air Force provided copies of the AUMD software code to SAIC, and SAIC used this code to produce software that is substantially identical in relevant

respects to the original AUMD software. *Id. at ¶¶ 19-20*. The Air Force also instructed SAIC to hack into the AUMD code to change the expiration date, and to alter the copyright management information so that the startup page showed the Air Force as the author and copyright owner. *Id. at ¶¶ 20-21*. The altered versions of AUMD were then posted on Air Force internet and intranet websites, where they were downloaded and used by commands throughout the Air Force, and were available for download by civilians outside the Air Force as well. *Id. at ¶ 19-21*. Neither the alterations to the expiration function, nor the alterations to the copyright management information, nor the posting and distribution of copies of the AUMD software were authorized by Mr. Davenport or Blueport. *Id. at ¶ 22*. Blueport filed an administrative claim to the Air Force for infringement of Blueport's copyrights in the AUMD software, which was denied by the Air Force. *Id. at ¶ 23*. The present suit was subsequently initiated by Blueport.

## ARGUMENT

## I. SUMMARY JUDGMENT STANDARD

The question of whether a waiver of sovereign immunity exists under the DMCA for violations of the DMCA is a case of first impression for this Court. Summary judgment is appropriate only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. RFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All disputed facts must be viewed in a light most favorable to the non-moving party, here Blueport. Id. Whether the United States has waived sovereign immunity to permit a suit for injunctive relief or damages is a question of law. Marathon Oil Co. v. United States, 374 F.3d 1123, 1126 (Fed. Cir. 2004), cert. denied 125 S.Ct 2246 (Mem.), 161 L.Ed.2d 1057 (2005). For purposes of this summary

judgment motion, the following facts must be assumed by the Court: (1) Blueport is the sole owner of a valid copyright in the AUMD software; (2) the AUMD software contained technological measures to prevent unlicensed access to and use of the software as defined in 17 U.S.C. § 1201; (3) the AUMD software contained copyright management information as defined 17 U.S.C. § 1202; (4) the Air Force bypassed those technological measures to gain unlicensed access and make unlicensed use of that software; (5) the Air Force intentionally altered the copyright management information contained in the AUMD software to falsify authorship and ownership information, and distributed the software with false copyright management information with the intent to enable, facilitate, and conceal its own infringement; and (6) the Air Force's actions were without permission of Blueport. Assuming these facts as true, Defendant must demonstrate that the United States has not waived sovereign immunity with respect to the relief requested by Blueport.

In the present case, waiver of sovereign immunity is clear in the plain language of the text of the DMCA and this waiver is consistent with the policies underlying the copyright statutes. However, even if the Court accepts Defendant's argument that copyright infringement by the Government is a taking under the 5th Amendment to the Constitution, then summary judgment is inappropriate because Blueport has a valid claim under the 5th Amendment Takings Clause.

## II. THE UNITED STATES WAIVED SOVEREIGN IMMUNITY FOR THE DMCA

### A. The language of the DMCA provides explicit waiver.

The language of the DMCA provides an explicit waiver of sovereign immunity by delineating specific exceptions to liability. Sections 1201(e) and 1202(d) each state in part:

> "This section does not prohibit any lawfully authorized investigative, protective, information security, or intelligence activity of an officer, agent, or employee of the United States... or a person acting pursuant to a contract with the United States."

If the sovereign is completely immune from suit for any and all violations (even for illegal purposes, according to Defendant) then the agents of the sovereign share that immunity when conducting "lawfully authorized" activities (a government, after all, can only act through its human employees or agents). Exceptions for United States employees and contractors, acting pursuant to lawfully authorized activities, would be superfluous unless the United States itself were subject to suit under these sections. Basic cannons of statutory construction require a court to give meaning to all terms in a statute and a construction that renders language superfluous is to be scrupulously avoided. Marathon Oil, 374 F.3d at 1141 (Prost, Circuit Judge, dissenting) (citing Freytag v. C.I.R., 501 U.S. 868, 877 (1991) and Great-West Annuity and Ins. Co. v. Knudson, 534 U.S. 204, 217-18 (2002)). An example might be a United States government agency testing the security of financial institutions by attempting to hack through their security firewalls, but not conducting a search of records. Without § 1201(e), the United States, and the person who hacked through the security, could be subject to civil liability under the DMCA unless the United States was itself immune from civil liability.

The DMCA's language relating to awarding costs in § 1203 provides further support. Section 1203(b)(4) states: "[In an action brought under §§ 1201 or 1202, the court] in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof." Interpreting this language as supporting a waiver simply makes sense - if the United States was not subject to damages for violations of §§ 1201 and 1202, then language exempting the United States from costs would be superfluous. Again, a construction that rendered whole sections of a statute superfluous must be rejected. Marathon Oil, 374 F.3d at 1141. Even under the high standards set by the Supreme Court for finding waiver of sovereign immunity, this language demonstrates the "clear intent" required to establish such a waiver.

Defendant relies heavily on Lane v. Pena, 518 U.S. 187 (1996), but Lane is easily distinguished from the present case. Lane relied upon distinguishing differences in language between the section defining the scope of unlawful activities and the section defining parties from whom money damages could be obtained. The Supreme Court interpreted certain provisions under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. Lane, 518 U.S. at 190-1. Under § 794(a) discrimination was prohibited "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. " Id, 518 U.S. at 191. By contrast, the section granting money damages for violations of § 794(a) excluded Executive agencies: "The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [which includes money damages] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of assistance under [§ 794(a)]." Id. The Court

interpreted the change from "conducted by any Executive agency" in § 794(a) to "Federal provider of assistance" as limiting the general waiver of sovereign immunity. Id. No such distinguishing limitation exists in the present case.

Based on a plain reading of the DMCA provisions, such that each and every provision has meaning and significance, the DMCA must be read as a waiver of sovereign immunity for violations of Sections 1201 and 1202.

B. Defendant's construction places the DMCA in a statutory vacuum, without reference to encompassing copyright law.

Defendant essentially argues that copyright infringement is a property taking, whereas DMCA violations are mere "digital trespass." Therefore, Defendant argues, it would be inconsistent to interpret § 1498(b) as permitting a taking while interpreting the DMCA as prohibiting the trespass leading to the taking. Defendant's argument fails for several reasons. First, Defendant misapprehends the nature of copyright infringement and violations of the DMCA, because both violations lie in tort – i.e. both are a form of trespass. Second, Defendant's argument decouples the DMCA from the exclusive rights protected under copyright law, which is exactly what the Federal Circuit has warned against. Finally, Defendant's analogy to "digital trespass" ignores the fact that the DMCA's scope is not actually limited to digital works.

1. Both infringement and DMCA violations are intentional torts akin to trespass.

Defendant in their brief incorrectly argues that the waiver of sovereign immunity in 28 U.S.C. § 1498(b) amounts to an eminent domain statute intended to compensate victims for a property taking, so that infringement may be

distinguished from mere "digital trespass" under the DMCA. Defendant's argument misconstrues the nature of copyright infringement. Although the language of § 1498(b) is akin to eminent domain language, it is not, in fact, a "takings statute." The gravitas of copyright infringement lies in tort, not property taking as argued by Defendant. "[O]ther circuits have recognized copyright infringement as an intentional tort." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 108 (3d Cir. 2004) (citing Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 931 (7th Cir. 2003)). This makes sense when one considers the nature of copyright infringement – an infringer does not displace the owner of property, but rather infringes on the exclusive rights of the owner. See 17 U.S.C. § 501(a), defining copyright infringement ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 121... is an infringer of the copyright or the right of the author, as the case may be.") Section 1498(b) is therefore a *liability* clause for trespass on the owner's exclusive rights under §§ 106 and 106A of the Copyright Act, like the DMCA. This interpretation is reinforced by the provision in § 1498(b) allowing damages to be based on statutory damages. See 28 U.S.C. § 1498(b), allowing "... reasonable and entire compensation as damages, including minimum statutory damages..." Statutory damages simply would not make sense in a property takings context.

Defendant's argument that finding a waiver in the DMCA would contradict § 1498(b) is therefore mistaken. The true contradiction would be finding that the general waiver of sovereign immunity for trespassing under § 1498(b) was somehow *limited* by language in the DMCA to exclude a subset of that – "digital trespass" – an argument which finds no support in the statutory language. The only language in the DMCA

which provides exceptions to the general waiver are the provisions under §§ 1201(e) and 1202(d) immunizing government agents conducing "lawfully authorized" activities which otherwise violate the DMCA, and the provision of § 1203(b)(4) prohibiting costs against the United States. Properly framing the nature of the violations makes clear, therefore, that the waiver of sovereign immunity for damages expressed under the DMCA is entirely consistent with the waiver expressed in 1498(b).

2. Defendant decouples the DMCA from the rest of the Copyright Act.

Defendant's attempt to decouple the DMCA from protection of the exclusive rights of copyright owners would render the DMCA an irrational exercise of Congressional power. "Congress' exercise of its Copyright Clause authority must be rational." Chamberlain Group, inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1200 (Fed. Circ. 2004), cert. denied 125 S.Ct. 1669, 161 L.Ed.2d 481 (2005), quoting Eldred v. Ashcroft, 537 U.S. 186, 205 n.10 (2003). An interpretation that severs access from protection of copyrights is irrational. Id, 381 F.3d at 1201 ("... the broad policy implications of considering 'access' in a vacuum devoid of 'protection' are both absurd and disastrous.") Chamberlain specifically addressed the folly of using DMCA provisions to impose liability for circumventing technological measures which prevented otherwise legal use of a copyrighted work, but the same logic applies here.

Defendant's argument attempts to decouple the DMCA from protection of copyrighted works. The rights protected by the DMCA are those delineated in §§ 106 and 106A. Chamberlain, 381 F.3d at 1202 ("We conclude that 17 U.S.C. § 1201 prohibits only forms of access that bear a reasonable relationship to the protections that the Copyright Act otherwise affords copyright owners.") Although Defendant argues

essentially that Chamberlain decouples DMCA from infringement by creating a new cause of action, it is actually the opposite. Chamberlain held that the protections afforded by the DMCA apply only where they relate to materials protected under copyright. Id. In other words, DMCA and other sections of the Copyright Act are to be read together, not in isolation.

Congress struck a balance in the DMCA between the interests of copyright owners and content users. Id., 381 F.3d at 1196-7 (citations omitted). The Chamberlain Court rejected an interpretation of the DMCA which detaches it from the exclusive rights of the underlying copyright provisions.

> "Chamberlain urges us to conclude that no necessary connection exists between access and *copyrights*. Congress could not have intended such a broad reading of the DMCA. *Accord* Corley, 271 F.3d at 435 (explaining that Congress passed the DMCA's anti-trafficking provisions to help copyright owners protect their works *from piracy* behind a digital wall)."

Id, 381 F.3d at 1197 (emphasis original).

This "necessary connection" is even more explicitly expressed in the language of § 1202 prohibiting removal or alteration of copyright management information. Section 1202(a) begins: "No person shall knowingly and with the *intent to induce, enable, facilitate, or conceal infringement*..." (emphasis added). Similarly, § 1202(b) states: "No person shall, without the authority of the copyright owner or the law... [intentionally alter or remove CMI] knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an *infringement of any right under this title*." Thus, the plain language of the statute inextricably intertwines acts of infringement with unlawful alterations of CMI. The language of the DMCA, read in the context of the waiver under 28 U.S.C. 1498(b), leads

to only one rational interpretation – that the United States has waived sovereign immunity with respect to claimed violations of a copyright owner's rights under the Copyright Act, including the DMCA.

3. Defendant ignores DMCA § 1202 to limit the DMCA scope to "digital trespass."

Defendant relies heavily on Chamberlain for the proposition that the DMCA is limited to "digital trespass" and therefore not analogous to infringement. Defendant's analogy of the DMCA to mere "digital trespass", and thus divorced from traditional copyright infringement, fails based on a plain reading of the text of § 1202, which covers *all* copyrighted works, not just works in digital format. Section 1202(c) defines "copyright management information" as relating to "copies or phonorecords of a work or performances or displays of a work, *including in digital form*..." (emphasis added). Chamberlain, upon which Defendant heavily relies, did not purport to interpret § 1202 of the DMCA. Therefore, Defendant's reliance on Chamberlain artificially narrows the scope of the DMCA as a whole.

III. BLUEPORT HAS A 5TH AMENDMENT CLAIM UNDER DEFENDANT'S CONSTRUCTION.

Defendant argues that copyright infringement by the Government amounts to a "taking" under the 5th Amendment of the Constitution. *Def. Motion at 5.* If the Court accepts this construction, then Defendant's intentional alteration of copyright management information to facilitate its own intentional infringement, a violation of DMCA § 1202(a) & (b), is also a "taking" under the 5th Amendment. Defendant would therefore not be entitled to judgment as a matter of law.

A. <u>If copyright infringement is a "taking" under the 5th Amendment, then violations of § 1202 must also be considered "takings."</u>

Even if the Court were to accept Defendant's assertion that copyright infringement claims under § 1498(b) amount to "infringement of a property right" akin to a taking (*Def. Motion at 5*), violations of §1202 of the DMCA would also have to be encompassed by the Takings Clause of the 5th Amendment. Taking the facts in the light most favorable to the non-moving party, the Court must assume that Blueport owns a valid copyright in the software and that the Air Force intentionally altered the copyright management information (CMI), without permission of the owner, in order to facilitate and conceal infringement by members of the Air Force and other government agencies, as well as the public at large, and did actually distribute the work with this altered CMI. If merely copying a work of authorship without permission is a taking of property, as argued by Defendant and hinted at in some court opinions, then changing the ownership information and asserting complete ownership of the entire work, as well as all copies and derivatives, constitutes an even more blatant taking of property than mere infringement. In fact, under Defendant's construction of 28 U.S.C. § 1498(b) a violation of DMCA § 1202 would amount to a complete displacement of the rightful owner, entitling Blueport to "just compensation" under the 5th Amendment. U.S. CONST. amend. V ("... nor shall private property be taken for public use without just compensation.") See also, <u>Boyle v. United States</u>, 200 F.3d 1369, 1373 (Fed. Cir. 2000) (The Government must compensate a copyright owner under the 5th Amendment where the Government "destroyed, physically occupied, or [excessively] regulated [the copyright owner's] property, *viz*., his exclusive rights to reproduce and distribute his work and to

prepare derivative works.") Under this interpretation, 28 U.S.C. § 1498(b) is not a waiver of sovereign immunity – as the Government may not claim blanket immunity from the Takings Clause – but rather a mere procedural means of pursuing a claim, and violations of 17 U.S.C. § 1202 may be pursued under a 5th Amendment takings theory.

CONCLUSION

Defendant's summary judgment motion on the basis of sovereign immunity must be denied. The DMCA explicitly waives sovereign immunity for violations of its provisions, with certain specified exceptions. This waiver is consistent with the general waiver of sovereign immunity under 28 U.S.C. § 1498(b), as both copyright infringement and violations of the DMCA lie in tort. Even if the Court accepted Defendant's argument that copyright infringement by the Government is a taking under the 5th Amendment, then violations of the DMCA must also be considered takings by the same logic. Therefore, Plaintiff's claims are not barred by sovereign immunity.

DATED THIS January 23, 2006,

Respectfully submitted,

RYLANDER & ASSOCIATES PC

/s/ Kurt M. Rylander

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY under penalty of perjury of the laws of the Federal Court that on the date signed below I electronically filed the document to which this certificate is attached iwht the Clerk of the Court using the ECF system which will send notification of such filing ot the following e-mail address: scott.bolden@usdoj.gov.

DATED THIS January 23, 2006 /s/ Kurt M. Rylander

KURT M. RYLANDER,
(360) 750-9931
Of Attorneys for Plaintiff

RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com