**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY LLC,<br><br>Plaintiff,<br>-v-<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 02-1622C<br><br>Judge Lawrence J. Block |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**

This Supplemental Brief is submitted in accordance with the Court Order of February 14, 2006, requesting Plaintiff and Defendant to address two specific questions concerning Defendant's Motion for Partial Summary Judgment: (1) Does the DMCA[1] limit jurisdiction to the Federal district courts, 17 U.S.C. § 1203(a)? (2) Is the DMCA a "money-mandating" statute so as come within the express waiver of sovereign immunity of the Tucker Act, 28 U.S.C. § 1491(a)(1)?

I. THE COURT OF FEDERAL CLAIMS MAY EXERCISE CONCURRENT JURISDICTION WITH THE DISTRICT COURTS

The question of whether District Court jurisdiction over DMCA claims is exclusive, even in claims for money damages against the government, is a case of first impression. The DMCA, § 1203(a) states: "Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." Tellingly, the language does not use the term "exclusively" in this DMCA provision. The exclusive rights granted by the copyright laws are vested

[1] Digital Millennium Copyright Act of 1998, Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998) ("DMCA").

exclusively in Federal court jurisdiction, preempting state court jurisdiction entirely – except for issues ancillary to copyrights such as licensing disputes. However, jurisdiction among the federal courts is not exclusive to district courts.

Where a broad grant of jurisdiction to the district courts conflicts with a grant of exclusive jurisdiction to a specific court, the conflict must be resolved by upholding the exclusivity of the specific court's jurisdiction. U.S. v. Universal Fruits and Vegetables Corp., 370 F.3d 829, 836 (8th Cir. 2004) (as amended) (citing Cornet Stores v. Morton, 632 F.2d 96, 98 (9th Cir. 1980)). The Tucker Act, 28 U.S.C. 1491(a), as limited by the Little Tucker Act, 28 U.S.C. 1346(a)(2), provides a specific grant of exclusive jurisdiction to the Court of Federal Claims (CFC) for actions for money damages greater than $10,000 against the United States "...founded upon ... any Act of Congress." Fisher v. U.S., 402 F.3d 1167, 1172 (Fed.Cir. 2005); Simanonok v. Simanonok, 918 F.2d 947, 950 (Fed.Cir. 1990) ("For this court the question is settled-district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000, even though jurisdiction was previously proper in the district court.") The courts have interpreted "any Act of Congress" to include only laws expressly or impliedly mandating money damages against the United States. U.S. v. Mitchell, 463 U.S. 206 (1983). The general grant of jurisdiction to District Courts, without some more specific intent demonstrated by Congress to eliminate Tucker Act jurisdiction in the case of the DMCA, does not override the exclusive grant of jurisdiction the CFC. Earth Island, 28 F.3d 76 (9th Cir. 1994), cert den'd 513 U.S. 999 (1994); Universal Fruits, 370 F.3d at 836; Christopher Village, L.P. v. U.S., 360 F.3d 1319, 1327 (Fed.Cir. 2004); cert. den'd 543 U.S. 1146; rehearing den'd.

In Earth Island the plaintiff challenged implementation of tuna import ban seeking an injunction filed in the District of California. Earth Island, 28 F.3d at 76. The district court granted a preliminary injunction, the Government appealed arguing, in part, that the District Court lacked jurisdiction because the Court of International Trade (CIT) had exclusive jurisdiction over claims against the United States arising from laws imposing embargoes. Id. at 76. The Ninth Circuit rejected plaintiff's argument that jurisdiction over such claims was concurrent where claims did not involve actual trade disputes between U.S. and international partners. Id. at 78. The Ninth Circuit vacated the preliminary injunction because it found the CIT had exclusive jurisdiction over actions against the United States and its officers arising out of embargo laws. Id. at 76. This was based on express language in the statute that CIT's jurisdiction was "exclusive."

In Christopher Village, although the original claim brought under Administrative Procedure Act (APA), 5 U.S.C. § 706, to a enjoin foreclosure sale was properly within district court jurisdiction, once the sale actually occurred the requested injunction became moot and the claim became one merely for declaratory relief. Christopher Village, 360 F.3d at 1328. Because the APA waiver of sovereign immunity requires "no other adequate remedy", and money damages would have been an adequate remedy after the foreclosure was executed, the district court lost jurisdiction and a claim for damages should have been filed in the CFC under the Tucker Act. Id. at 1327.

Here, Plaintiff seeks money damages for government violations of the DMCA. The DMCA permits both injunctive relief and damages, but in this case any injunctive relief would be moot because the unlawful conduct is in the past. Plaintiff is seeking damages in excess of $10,000 as well, based on multiple egregious violations.

Therefore, the *only* relief available is money damages, as mandated by the statute, and because the DMCA provides for damages against the United States (as discussed below) the CFC is the only court which may exercise jurisdiction over these claims.

CFC jurisdiction over DMCA claims for money damages is also consistent with other provisions in the Copyright Act which carve out specific jurisdiction and venue rules for special tribunals over specified classes of disputes. Aside from the specific grant of exclusive jurisdiction for infringement claims against the government, 28 U.S.C. § 1498(b) permits administrative settlement of copyright infringement claims. In 17 USC § 1010, Congress provides specific authorization and procedures to enter binding arbitration, including authorizing a stay of proceedings in district court, to settle disputes under § 1009. In 17 USC § 802, Congress established detailed procedures for setting and adjudicating royalty disputes and limited jurisdiction for appeal to the District of Columbia Circuit. Additionally, 17 USC § 513 provides for special procedures to adjudicate disputes between small individual proprietors and performing rights societies subject to consent decrees relating to reasonable royalties. This provision provides for a "proceeding" to determine reasonable royalties to commence "in the judicial district of the district court with jurisdiction over the applicable consent decree or in that place of holding court of a district court that is the seat of the Federal circuit (other than the Court of Appeals for the Federal Circuit) in which the proprietor's establishment is located."

## II. THE DMCA IS A MONEY-MANDATING STATUTE

An Act of Congress is a "money-mandating statute," if it "can be fairly interpreted as mandating compensation by the Federal Government for damages sustained." U.S. v. Mitchell, 463 U.S. 206, 216-17 (1983) (internal quotations and citations omitted); U.S.

v. Testan, 424 U.S. 392, 398 (1976). This must be evinced by a clear expression of Congressional intent mandating compensation for damages caused by the government's breach of duties imposed by the statute. Mitchell, 463 U.S. at 219.

In Mitchell the Court found that the trustee relationship established between the Government and the Indian tribes through various statutes implied a substantive right to compensation for breaches of those duties by the government. Mitchell, 463 U.S. at 226. The Court found this right of compensation despite the fact that no explicit statutory provision declared the United States was liable for money damages in compensation for past breaches of fiduciary duties – the rights flowed naturally from the breach of duties in light of the statutory scheme. Id.

Lane v. Pena, 518 U.S. 187 (1996), relied upon by Defendant, is not to the contrary. Lane was a claim filed in district court, not under the Tucker Act, and so any waiver of sovereign immunity had to be expressed unequivocally on the face of the statute itself. In Lane the Court looked to the explicit differences in the language Congress used in addressing the availability of money damages against different classes of violators under §§ 504(a) and 505(a)(2) of the Rehabilitation Act of 1973 to find that Congress had excluded Federal agencies and therefore had limited the express waiver of sovereign immunity found in § 504(a). Lane, 518 U.S. 192-3. Here, by contrast, the express waiver of sovereign immunity is found in the Tucker Act, 28 U.S.C. § 1491, and the DMCA "can fairly be interpreted" as mandating money damages against the government so as to satisfy that jurisdictional prerequisite.

A. The language of the DMCA demonstrates that it is money mandating.

The language of the DMCA demonstrates it is money mandating by delineating specific exceptions to liability for the government. Sections 1201(e) and 1202(d) each state in part:

> "This section does not prohibit any lawfully authorized investigative, protective, information security, or intelligence activity of an officer, agent, or employee of the United States... or a person acting pursuant to a contract with the United States."

The incongruity of arguing that the United States is immune from damages suits under the DMCA, but that special exemption is required for specific government activities which are "lawfully authorized" is especially apparent in the context of § 1202. Violating § 1202(a) requires "intent to induce, enable, facilitate, or conceal infringement..." 17 U.S.C. § 1202(a). Similarly, § 1202(b) requires "knowing, or with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b). Several things become clear from this language.

First, the § 1202 prohibitions are directly linked to acts of infringement, not merely gaining access to works protected by copyright (i.e. not merely "digital trespass" as argued by Defendant). Although successful completion of the acts of infringement are not required, violation of § 1202 is part and parcel with infringement itself. The reason for this is obvious: once the copyright management information of a digital work has been altered or removed it becomes very difficult, or nearly impossible, for the copyright owner to protect her work.

Second, it seems implausible that a government employee, acting pursuant to a "lawfully authorized" activity, would ever meet the "intent" requirement of the statute.

Therefore, the specific exemption would again seem redundant – unless the government was liable for violations by government employees and agents not acting pursuant to lawfully authorized activities. *See* 3 DAVID NIMMER, NIMMER ON COPYRIGHT § 12A.11 (2005). "It is particularly difficult to imagine how that clandestine [investigative] activity would meet the mental elements necessary for a violation of the statute, such that a special exemption is warranted. The legislative history, although purporting to explicate this provision, is singularly unhelpful in all these regards." Id. Governmental immunity to suit under § 1203 would render the specific exemptions for lawfully authorized government activities superfluous.

The reason for state agencies and officers to be specifically exempted is clear. 17 U.S.C. § 501(a) and 17 U.S.C. § 511(a) abrogates States' immunity under Eleventh Amendment for infringement, violation of importation bans under § 602, "or for any other violation under this title." Thus, the DMCA prohibitions of §§ 1201 & 1202, which is under Title 17, would apply to State actors with full force and they would be liable for damages under § 1203. The DMCA exceptions use the same language in exempting Federal employees and agents as it does for State employees and agents, which clearly implies that Federal employees and agents were subject to suit for violations of the DMCA committed within the scope of their employment.

Section 1203(4) reinforces this interpretation. Specifically exempting the "United States or an officer thereof" from recovery of costs is superfluous if the United States is not subject to damages for violations of the DMCA under any circumstances, as argued by Defendant. Basic cannons of statutory construction require a court to give meaning to all terms in a statute and a construction that renders language superfluous is to be

scrupulously avoided. Marathon Oil, 374 F.3d at 1141 (Prost, Circuit Judge, dissenting) (citing Freytag v. C.I.R., 501 U.S. 868, 877 (1991) and Great-West Annuity and Ins. Co. v. Knudson, 534 U.S. 204, 217-18 (2002)). Lane supports this interpretation. The provisions relating to costs and attorneys fees in Lane were pointed to by the Court to demonstrate that Congress had made the United States liable for money damages under certain sections, but not for costs or attorneys fees. Lane, 518 U.S. at 194.

B. DMCA damages can also be interpreted as a Fifth Amendment Taking

The DMCA § 1202 prohibits deletion or alteration of copyright management information (CMI) with intent to infringe. See 17 U.S.C. § 1202. Defendant has argued that copyright infringement is a property taking, whereas DMCA violations are mere "digital trespass." *Def. Mot. for Partial Summary Judgment at 6*. Altering CMI on existing digital works effects a taking of property just as much, if not more so, than infringement of a copyright, but provides for statutory damages as a simplified measure of damages where such damages are difficult to determine. Altering CMI to show Defendant's ownership does not simply create new copies in violation of the Copyright Act's exclusive rights, but actually asserts ownership over existing copies as well. Therefore, Defendant's argument that DMCA violations are mere trespass is unsupportable. Based on Defendant's own arguments, the CFC may exercise jurisdiction over Plaintiff's DMCA claims as claims for money damages against the United States "founded... upon the Constitution," specifically the Takings Clause.[2]

[2] "[N]or shall private property be taken for public use without just compensation." U.S. CONST. AMEND. V.

## III. CONCLUSION

The district court does not have exclusive jurisdiction over DMCA claims for money damages against the United States. The DMCA is a money mandating statute falling under the Tucker Act's waiver of sovereign immunity for damages claims based upon the Constitution or any Act of Congress. This interpretation is consistent with Tucker Act precedent as well as other grants of specific jurisdiction in the Copyright Act. Defendant's motion for partial summary judgment should be denied.

DATED THIS March 6, 2006,

Respectfully submitted,

RYLANDER & ASSOCIATES PC

/s/ Kurt M. Rylander

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY under penalty of perjury of the laws of the Federal Court that on the date signed below I served a copy of the document to which this certificate is attached by electronic filing with the US Court of Federal Claims which filing serves this document upon attorneys of record for Defendant, Scott Bolden, U.S. Department of Justice, Civil Division-Commercial Litigation Branch, Washington, D.C. 20530, scott.bolden@usdoj.gov.

DATED THIS March 6, 2006

/s/ Kurt M. Rylander
KURT M. RYLANDER,
(360) 750-9931
Of Attorneys for Plaintiff

RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com