IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF**
**WITH RESPECT TO SOVEREIGN IMMUNITY**

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

March 6, 2006

## TABLE OF CONTENTS

I. The District Courts Hold Exclusive Jurisdiction for DMCA Claims . . . . . . . . . . . . . . . . 2

II. The Tucker Act Does Not Waive Sovereign Immunity for the DMCA . . . . . . . . . . . . . . 4

A. The DMCA is not "Money-Mandating" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. The DMCA Does Not Support a Claim for Damages Against the Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. Under the DMCA, the Award of Damages Is Discretionary and Not Money-Mandating . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. The Tucker Act Cannot Apply Because the DMCA Sounds in Tort . . . . . . . . . . 11

C. Application of the Tucker Act Is Incompatible with Section 1498 . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

### CASES

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997) . . . . . . . . . . 2, 6, 11

Chamberlain Group, Inc. v. Skylink Technologies, Inc.,
381 F.3d 1178 (Fed. Cir. 2004) . . . . . . . . . . 12

Collins v. United States,
67 F.3d 284 (Fed. Cir. 1995) . . . . . . . . . . 7

Confidential Informant v. United States,
46 Fed. Cl. 1 (2000) . . . . . . . . . . 11

Consumers Ice Co. v. United States,
475 F.2d 1161 (Ct. Cl. 1973) . . . . . . . . . . 12

Contreras v. United States,
64 Fed. Cl. 583 (2005) . . . . . . . . . . 4, 7, 8, 11

Crocker v. United States,
37 Fed. Cl. 191 (1997) . . . . . . . . . . 5

Curtis v. United States,
168 F. Supp. 213 (Ct. Cl. 1958) . . . . . . . . . . 12, 15

Doe v. United States,
100 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . . 7, 9

Eastport S.S. Corp. v. United States,
372 F.2d 1002 (Ct. Cl. 1967) . . . . . . . . . . 6

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir. 1999) . . . . . . . . . . 3

Fisher v. United States,
402 F.3d 1167 (2005) . . . . . . . . . . 4

Hamlet v. United States,
63 F.3d 1097 (Fed. Cir. 1995) . . . . . . . . . . 5

**CASES (continued)**

Hansen v. United States,
65 Fed. Cl. 76 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hoch v. United States,
33 Fed. Cl. 39 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Huston v. United States,
956 F.2d 259 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Lanman v. United States,
27 Ct. Cl. 260 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-7

Lockridge v. United States,
218 Ct. Cl. 687 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Massie v. United States,
226 F.3d 1318 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

McBryde v. United States,
299 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sawyer v. United States,
930 F.2d 1577 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Schillinger v. United States,
155 U.S. 163 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Turton v. United States,
212 F.2d 354 (6th Cir. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

United States v. James,
478 U.S. 597 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## CASES (continued)

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . 4, 5, 7

United States v. Rodgers,
461 U.S. 677 (1983) . . . . . . . . . . 7, 8

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 4, 5

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) . . . . . . . . . . 4, 5

Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
515 U.S. 528 (1995) . . . . . . . . . . 16

## STATUTES

17 U.S.C. § 1 . . . . . . . . . . 15

17 U.S.C. § 501 . . . . . . . . . . 15

17 U.S.C. § 504 . . . . . . . . . . 15

17 U.S.C. § 1201 . . . . . . . . . . *passim*

17 U.S.C. § 1202 . . . . . . . . . . *passim*

17 U.S.C. § 1203 . . . . . . . . . . *passim*

28 U.S.C. § 1333 . . . . . . . . . . 14

28 U.S.C. § 1346 . . . . . . . . . . 14

28 U.S.C. § 1491 . . . . . . . . . . *passim*

28 U.S.C. § 1498 . . . . . . . . . . 4, 12-15

28 U.S.C. § 2680 . . . . . . . . . . 14

31 U.S.C. § 3730 . . . . . . . . . . 2, 6

**STATUTES (continued)**

35 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

35 U.S.C. § 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

35 U.S.C. § 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

41 U.S.C. § 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**OTHER AUTHORITIES**

S. Rep. No. 1877 (86th Cong., 2nd Sess. 1960, reprinted in 1960 U.S.C.C.A.N. 3444) . . . . 14, 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF**
**WITH RESPECT TO SOVEREIGN IMMUNITY**

Defendant, the United States ("the government"), hereby submits its Supplemental Brief with Respect to Sovereign Immunity, pursuant to the February 14, 2006 Court Order ("Order"). The Court issued its Order after reviewing the Defendant's Motion for Partial Summary Judgment ("Motion"), Blueport's Response to the Defendant's Motion for Summary Judgment ("Response"), and the Defendant's Reply in Support of Motion ("Reply"). The Court ordered the parties to file supplemental briefs addressing two questions: (1) whether the language of Section 1203 of the Digital Millennium Copyright Act ("DMCA") allows the Court of Federal Claims to hear DMCA claims; and (2) "whether the DMCA comes under the express waiver of sovereign immunity in the Tucker Act." Order at 2; 17 U.S.C. § 1203. The government contends that both questions must be answered in the negative, and that the Court should grant partial summary judgment in the government's favor.

## I. The District Courts Hold Exclusive Jurisdiction for DMCA Claims

The plain language of Section 1203(a) of the DMCA cannot support a waiver of sovereign immunity in the Court of Federal Claims.[1] According to Section 1203(a):

> Any person injured by a violation of section 1201 or 1202 may bring a civil action *in an appropriate United States district court* for such violation.

17 U.S.C. 1203(a) (emphasis added). The phrase "an appropriate United States district court" does not include the Court of Federal Claims. The Federal Circuit directly addressed this issue in its LeBlanc decision. See LeBlanc v. United States, 50 F.3d 1025 (Fed. Cir. 1995). In LeBlanc, the plaintiff argued that a False Claims Act provision came under the Tucker Act's express waiver of sovereign immunity. Id. at 1027-28. The Federal Claims Act provision used a nearly identical phrase to the one used in Section 1203(a). See 31 U.S.C. § 3730(h) ("An employee may bring an action *in the appropriate district court of the United States* for the relief provided in this subsection.") (emphasis added). The Federal Circuit rejected the plaintiff's argument, holding that "[a] provision of jurisdiction in the district courts hardly supports a waiver of sovereign immunity in the Court of Federal Claims." LeBlanc, 50 F.3d at 1030.

In addition, the Tucker Act itself distinguishes between the Court of Federal Claims and the district courts. In Section 1491(b)(1), the Tucker Act states that "[b]oth the Unites [*sic*] States Court of Federal Claims and the district courts of the United States shall have jurisdiction" over bid protests. 28 U.S.C. § 1491(b)(1). This language indicates that Congress treats the Court of Federal Claims as a separate and distinct entity from the district courts.

---

[1] "The Court of Federal Claims is a court of limited jurisdiction." Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997); see also Keene Corp. v. United States, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction must be neither disregarded nor evaded.").

Finally, Subsection (b) of Section 1203 of the DMCA firmly indicates that Congress could not have intended that the Court of Federal Claims be included in subsection (a) of Section 1203. Subsection (b) reads, in part:

> (b) Powers of the court.–In an action brought under subsection (a), the court –
>
> (1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation . . .;
>
> (2) at any time while an action is pending, may order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation;
>
> . . .
>
> (6) may, as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded under paragraph (2).

17 U.S.C. § 1203(b). Although the Court of Federal Claims has the power to grant equitable relief in certain circumstances, its powers do not extend to the remedies cited above. See Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief."); First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999) (stating that the Court "cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance"). Accordingly, the exclusive jurisdiction for a DMCA claim is in the District Courts.

## II. The Tucker Act Does Not Waive Sovereign Immunity for the DMCA

The Tucker Act cannot serve to waive the government's sovereign immunity for the DMCA. See 28 U.S.C. § 1491(a)(1). First, the DMCA is not a "money-mandating" statute, because it does not support a claim for damages against the government, and because the award of damages is discretionary. Second, the DMCA sounds in tort. Finally, application of the Tucker Act in this case is inconsistent with the limited waiver of sovereign immunity in Section 1498 of Title 28.

### *A. The DMCA is not "Money-Mandating"*

Although the Tucker Act constitutes a waiver of sovereign immunity, it "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). "A substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" United States v. Mitchell, 463 U.S. 206, 216 (1983) (quoting 28 U.S.C. § 1491). Not every claim invoking a source of law is cognizable under the Tucker Act. Id. "[A] statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). "The test for whether a statute is money-mandating . . . [is] whether the statute, correctly interpreted, would require a money damages remedy." Contreras v. United States, 64 Fed. Cl. 583, 592 (2005). This is known as the "money-mandating" requirement. Fisher v. United States, 402 F.3d 1167, 1172 (2005).

*1. The DMCA Does Not Support a Claim for Damages Against the Government*

The DMCA does not mandate compensation by the government. The Supreme Court's use of the phrase "by the Federal Government" is a critical component of the "money-mandating" test. See, e.g., Testan, 424 U.S. at 400 (describing the test as whether the source of substantive law "can fairly be interpreted as mandating compensation *by the Federal Government* for the damage sustained") (emphasis added). The Court used the same phrase in its other Tucker Act cases. See Mitchell, 463 U.S. at 216-17 (citing Testan); White Mountain, 537 U.S. at 472 (citing Mitchell). The Court's repetition of this requirement demonstrates that the source of substantive law must fairly be interpreted as involving the government, as opposed to non-governmental entities.[2] The Federal Circuit has also cited the same requirement. See Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995) ("in order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States"); James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) ("What this means is that a Tucker Act plaintiff must assert a claim under a separate money-mandating . . . statute . . . the violation of which supports a claim for damages against the United States."). The mere existence of a damages remedy against private parties does not meet the requirements of the Tucker Act. The Tucker Act "merely confers jurisdiction in the event that *a substantive right to sue the Government* already exists." Crocker v. United States, 37 Fed. Cl. 191, 194 (1997) (emphasis added).

The Federal Circuit held that a plaintiff failed to meet this requirement in the LeBlanc case. See LeBlanc, 50 F.3d at 1025. As noted in Section I of this Supplemental Brief, the plaintiff in

---

[2] In addition, the Tucker Act waiver of sovereign immunity must be narrowly construed in favor of the government. See Mitchell, 463 U.S. at 218 ("[I]n determining the general scope of the Tucker Act, this Court has not lightly inferred the United States' consent to suit.").

LeBlanc argued that a False Claims Act provision came under the Tucker Act's express waiver of sovereign immunity. The source of substantive law cited by the plaintiff created a remedy for employees who suffered retaliation from their employers as a result of activities in furtherance of a *qui tam* suit. Id. at 1028-29. The False Claims Act provision at issue did not specifically refer to the government:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . by his or her employer because of lawful acts . . . shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). The plaintiff claimed that the provision came within the Tucker Act waiver, because "'any employee' includes government employees, so that [the provision] expressly creates a remedy enforceable against the United States in the Court of Federal Claims." LeBlanc, 50 F.3d at 1029. The Federal Circuit flatly rejected plaintiff's argument, holding that plaintiff

> has not directed us to any statutory language that even hints that Congress intended to subject the federal government to suit under section 3730(h). To be sure, the statute gives "any employee" a substantive right to relief from his employer, but the mere existence of a right is not enough. There is a waiver of sovereign immunity, and therefore subject matter jurisdiction in the Court of Federal Claims, only if the authority creating that right "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."

Id. at 1030 (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967)). As shown in LeBlanc, the source of substantive law must directly involve the government. See also Brown, 105 F.3d at 624 (holding that the Tucker Act does not apply to Bivens claims against government officials acting in their individual capacity).

In contrast, other "money-mandating" statutes have always directly involved the government. For example, the government's inherent involvement is clear in cases involving military disability retirement pay, a federal moiety statute, and statutes establishing the government's management of

Indian resources and land. See Sawyer v. United States, 930 F.2d 1577, 1580 (Fed. Cir. 1991); Doe v. United States, 100 F.3d 1576, 1583 (Fed. Cir. 1996); Mitchell, 463 U.S. at 226-28.

The DMCA simply cannot support a claim for damages against the government. The Federal Circuit's logic in LeBlanc applies equally to the current case.[3] Accordingly, the DMCA cannot be "money-mandating" for the purposes of the Tucker Act.

*2. Under the DMCA, the Award of Damages Is Discretionary and Not Money-Mandating*

A source of substantive law is not "money-mandating" if damages are discretionary. See Collins v. United States, 67 F.3d 284, 286 (Fed. Cir. 1995) ("discretionary authority to pay a claim does not give rise to a claim of money damages against the United States"). To determine whether a damages provision is discretionary, this Court first looks to the plain language of the statute. See Contreras, 64 Fed. Cl. at 592. In this regard, the DMCA is unambiguously discretionary with respect to the award of damages:

> (b) Powers of the court. – In an action brought under [Sections 1201 or 1202 of the DMCA], the court –
>
> . . .
>
> (3) *may award damages* under subsection (c)

17 U.S.C. § 1203 (emphasis added). The use of the word "may" implies discretion. See United States v. Rodgers, 461 U.S. 677, 706 (1983). Congress's use of the word "may" creates a "very

[3] The government previously argued that the DMCA neither explicitly or implicitly mandates compensation from the government. See Motion at 4, 6-7; Reply at 1-6. Furthermore, holding the government liable under the DMCA is contrary to the policy of Section 1498 of Title 28. See Motion at 4-6.

strong, but rebuttable, presumption" that the DMCA is not money-mandating. See Contreras, 64 Fed. Cl. at 593 (quoting Rodgers, 461 U.S. at 706).

Congress's intent is unambiguously expressed by the use of the word "may," and the plain language of the DMCA is conclusive, without resorting to inferences from the statute or the legislative history. See United States v. James, 478 U.S. 597, 606 (1986). If the Court does examine the statute or the legislative history for any obvious inferences, however, the discretionary nature of the DMCA is supported by such inferences. For example, Congress clearly differentiated between the courts' discretionary powers under the DMCA with the word "may," and the courts' mandatory obligations with the use of the word "shall." See, e.g., Huston v. United States, 956 F.2d 259, 262 (Fed. Cir. 1992) (holding that the use of both "may" and "shall" within the same statute shows that Congress is distinguishing between mandatory and discretionary tasks). Section 1203 of the DMCA uses the mandatory word "shall" in three situations: (1) a court may grant an injunction, but "in no event shall" the court impose a restriction prohibited by the First Amendment; (2) if a court decides to award damages and the plaintiff elects actual damages, the quantum of damages "shall" be the actual damages suffered; and (3) a court "shall remit damages in any case" in which a group of public institutions, such as a library, prove that the DMCA was violated without knowledge and intent. See 17 U.S.C. §§ 1203(b)(1); 1203(c)(2); 1203(c)(5)(B)(ii). Congress frequently used both "may" and "shall" in Sections 1201 and 1202 of the DMCA to distinguish between mandatory and discretionary requirements. See 17 U.S.C. §§ 1201, 1202. Thus, the obvious inference is that Congress intended that the award of damages under the DMCA was discretionary with the use of the word "may," as opposed to "shall."

The presumption of discretion arising from the use of the word "may" is so strong that plaintiffs have successfully rebutted the presumption only twice in the Federal Circuit. See Doe, 100 F.3d at 1576 at 1580-82; McBryde v. United States, 299 F.3d 1357, 1362 (Fed. Cir. 2002). The statutes at issue in these cases are distinguishable from the DMCA. In Doe, the Federal Circuit held that congressional amendments to the federal moiety law did not transform the law from money-mandating to discretionary. See Doe, 100 F.3d at 1581-82. Even though the amendments increased the discretion regarding the amount of the award, the overall impact of the statute remained money-mandating. Id. In holding that moiety awards were mandatory, the Federal Circuit cited the extensive case law interpreting the moiety statute and acknowledged that it did not approach this issue with "a clean slate, or come to this provision in the law in the abstract." Id. at 1581. In addition, the legislative history supported the assertion that the moiety award was mandatory. Id. at 1582. Unlike the situation in Doe, there is no legislative history or case law that supports interpreting Congress's use of the word "may" in the DMCA as "shall." The McBryde case is also distinguishable. In McBryde, the Federal Circuit held that a judicial pay statute was money-mandating because interpreting the statute as discretionary would have raised serious Article III constitutional issues. McBryde, 299 F.3d at 1364. The court reasoned that unless "may" was interpreted as "shall," the statute vested too much authority with the Administrative Office of the United States Courts, representing "precisely the type of threat to the independence of the Judiciary which the Supreme Court has consistently invalidated." Id. Constitutional issues are completely absent with the DMCA.

The Court considers two factors in determining whether to rebut the strong presumption of discretion. First, the Court examines whether the statute "enumerate[s] specific requirements that

must be fulfilled before [a claimant] acquires an absolute right to compensation." Hoch v. United States, 33 Fed. Cl. 39, 42 (1995). Second, a court examines whether the statute states a sum certain. See Hoch, 33 Fed. Cl. at 44.

The DMCA fails the first Hoch factor. Although both Sections 1201 and 1202 enumerate specific elements that a plaintiff must prove to demonstrate a defendant's liability, liability alone does not result in an absolute right to compensation. As noted previously, the DMCA grants a court discretion whether to award damages at all. See 17 U.S.C. § 1203(b)(3). In fact, the DMCA grants a court discretion whether to award any of the other remedies. See 17 U.S.C. § 1203(b)(1-6). Even in situations where a court decides to award damages, Section 1203 allows the court to completely remit the damages:

> The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.

17 U.S.C. § 1203(c)(5). According to the plain language of the statute, a plaintiff does not acquire an absolute right to compensation even if the plaintiff could prove each of the elements of a DMCA violation.

Arguably, the DMCA also fails the second Hoch factor. Since the award of any damages is within the court's discretion, and any damages that are rewarded could be remitted, the least amount of money a plaintiff could receive is $0. See 17 U.S.C. § 1203(b)(3). Besides setting the damages floor at $0, the DMCA caps the upper limit of awardable damages. If a plaintiff opts for actual damages, the award is capped at the amount of actual damages suffered. See 17 U.S.C. § 1203(c)(2). If a plaintiff opts for statutory damages, the award is capped at $2500 for violations of Section 1201 and at $25,000 for violations of Section 1202. See 17 U.S.C. § 1203(c)(3). The

amount awarded for statutory damages, within those limits, is left to the discretion of the courts, measured only by the phrase "as the court considers just." Id. Theoretically, the damages (and the upper limits for damages) can be trebled for repeated violations. See 17 U.S.C. § 1203(c)(4). Capped damages, however, do not meet the Hoch sum certain requirement. See, e.g., Contreras, 64 Fed. Cl. at 597-98 (finding no sum certain where an award was capped at five percent of basic pay); Hoch, 33 Fed. Cl. at 45 (holding no sum certain where there was discretion to award the lesser of an amount between $0 and $250,000, or between zero and 25 percent of the property forfeited); Confidential Informant v. United States, 46 Fed. Cl. 1, 6 (2000) (holding that a reward "normally not to exceed 10 percent" of the recovery was not a sum certain). Without considering remittence or trebling, damages under the DMCA can range from $0 to actual damages, $0 to $2500, or $0 to $25,000. The DMCA does not provide a sum certain. Accordingly, the DMCA cannot be considered a money-mandating statute.

### *B. The Tucker Act Cannot Apply Because the DMCA Sounds in Tort*

The primary reason that the government did not address the Tucker Act in its initial Motion is that, we submit, the DMCA sounds solely in tort. The Court of Federal Claims has no jurisdiction over suits sounding solely in tort. The waiver of sovereign immunity in Section 1491(a)(1) is expressly limited to non-tortious claims:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any act of Congress . . . *in cases not sounding in tort.*

28 U.S.C. § 1491(a)(1) (emphasis added). Tort cases are broadly excluded from this Court's jurisdiction. See Hansen v. United States, 65 Fed. Cl. 76, 96 (2005) (citing Brown, 105 F.3d at 623).

Despite its relatively brief history, the relevant case law supports the government's contention that the DMCA sounds in tort. As noted in the government's Motion, the Federal Circuit analogized violations of the DMCA with the tort of trespass. See Chamberlain Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1196, 1198 (Fed. Cir. 2004); compare with Consumers Ice Co. v. United States, 475 F.2d 1161, 1168 (Ct. Cl. 1973) (holding that trespass sounds in tort and "therefore would be outside our jurisdiction"). The Federal Circuit's trespass analogy is logical. The intent of the DMCA, as expressed in the statutory language, appears to be to provide a remedy for the civil wrong of interfering with the protection system of a copyrighted work. See 17 U.S.C. §§ 1201, 1202. This is akin to trespass.

In addition, treating the DMCA as a tort is consistent with the treatment of the remainder of the Copyright Act.[4] The Court of Claims held that copyright infringement sounds in tort in the Curtis decision in 1958. See Curtis v. United States, 168 F. Supp. 213, 216 (Ct. Cl. 1958); see generally Lanman v. United States, 27 Ct. Cl. 260 (1892) (holding that prior to 28 U.S.C. § 1498, patent and copyright infringement sounded in tort and thus, no jurisdiction was conveyed by the Tucker Act). In 1954, the Sixth Circuit held that, prior to Section 1498 of Title 28, neither the Court of Claims nor the district courts had jurisdiction over copyright infringement claims against the government through the Tucker Act. See Turton v. United States, 212 F.2d 354, 355 (6th Cir. 1954). The Sixth Circuit held that the Tucker Act was inapplicable because "an action for damages by reason of infringement of a copyright . . . sound[s] in tort." Id.

---

[4] Blueport agrees that the DMCA sounds solely in tort. See Response at 7 ("violations of the DMCA . . . lie in tort").

Finally, the Court of Claims dealt with a similar issue in its Lockridge decision. See Lockridge v. United States, 218 Ct. Cl. 687 (1978). In Lockridge, the plaintiff sued the government in the Court of Claims for, *inter alia*, trademark infringement. The Court of Claims held that trademark infringement sounded in tort, despite "little direct authority on the point." Id. The court reached its decision based upon a review of cases that found that patent and copyright infringement sounded in tort. Id. The court held that the Tucker Act was inapplicable, stating that "the inference is compelling that Congress did not intend us to entertain claims based upon trademark infringement." Id. Similarly, the Tucker Act is inapplicable to the DMCA, which sounds in tort.

### *C. Application of the Tucker Act Is Incompatible with Section 1498*

Congress incorporated the exclusive waiver of sovereign immunity for patent and copyright infringement in Section 1498 of Title 28. The existence of Section 1498 suggests that Congress intended the sole waiver of sovereign immunity for any patent- and copyright-related action to reside within Section 1498. Section 1498 exists because there was no remedy for patent and copyright infringement claims against the government prior to its existence. The legislative history of Section 1498(b) explains this situation in detail:

> It has long been an established principle that the federal government should not appropriate private property without making just compensation to the owner thereof. For most types of property, the principle has been implemented by legislation permitting a property owner to bring suit against the federal government when he believes that just compensation has not been made, for example, in the field of patents (28 U.S.C. § 1498). Other fields include admiralty, contracts, and torts.
>
> There is, however, one form of property – property in copyrights – for which existing law does not provide a definite workable and equitable procedure for the property owner. There has been no specific legislation provision authorizing suits against the government for infringement of copyrights as there has been for patents.

S. Rep. No. 1877 (86th Cong., 2nd Sess. 1960, reprinted in 1960 U.S.C.C.A.N. 3444, 3445). The legislative history notes that sovereign immunity had previously been waived for patents, admiralty, contracts, and torts. See 28 U.S.C. § 1498(a) (patents); 28 U.S.C. § 1333 (admiralty); 28 U.S.C. § 1491(a) (Tucker Act) and 41 U.S.C. § 601 *et seq*. (Contract Disputes Act); 28 U.S.C. §§ 1346; 2680 (Federal Tort Claims Act). Congress specifically contemplated that copyright infringement did not come within the waiver of the Tucker Act. Congress's rationale for Section 1498(b) continues:

> When the government deliberately publishes a copyrighted article without obtaining the prior consent of the copyright proprietor, the general assumption would be that the holder, pursuant to the principles of 'just compensation' under the Fifth Amendment of our Constitution, should be entitled to an action against the government for infringement. Yet no such infringement cases have been reported, so far as this committee can determine. The reason appears to be that the government, under still another established concept, i.e., 'sovereign immunity,' must consent to be sued for this particular type of wrong, and as yet has not so consented. Recently there has been some discussion to the effect that the Federal Tort Claims Act may have removed this prohibition against suing the government, but a consideration of the legislative history of that act indicates that the prohibition has not been affected.

S. Rep. No. 1877 (reprinted in 1960 U.S.C.C.A.N. at 3445). In this passage, it appears that Congress recognized that copyright infringement sounds in tort, but that the doctrine of sovereign immunity prohibited the assertion of copyright infringement claims against the government through the waiver of the Federal Tort Claims Act. Congress concluded that a separate waiver was necessary, and concluded that copyright infringements by the government should be treated in the same way as patent infringements by the government:

> It appears proper to this committee that the government should assume responsibility for such acts. Furthermore, it seems illogical to treat copyright infringements by the United States differently from patent infringements, in view of the established principle that the federal government should not be appropriating private property

> without just compensation, which principle was long ago adopted with regard to infringement of patents.
>
> The instant bill is designed to correct this situation both with respect to the copyright owner and to federal officers and employees, and to the public generally.

Id. (reprinted in 1960 U.S.C.C.A.N. at 3445-46). Thus, Congress clearly believed that the Tucker Act did not waive sovereign immunity with respect to copyright infringement.

The federal patent, copyright, and DMCA federal statutes share several substantial similarities. A claim for each is "founded" on an "Act of Congress." 28 U.S.C. § 1491(a)(1); see 35 U.S.C. §§ 1 *et seq.*; 17 U.S.C. §§ 1 *et seq*. Like the DMCA, patent and copyright infringement provide for money damages as a remedy. See 35 U.S.C. § 284 (patent damages); 17 U.S.C. § 504 (copyright damages). If these are the sole criteria[5] used to determine whether a statute is "money-mandating," then sovereign immunity could be said to be waived for the Patent and Copyright Acts under the Tucker Act. Yet this would contravene the wealth of authority holding that no waiver existed prior to enactment of the predecessor of Section 1498. See, e.g., Schillinger v. United States, 155 U.S. 163, 172 (1894) (finding no waiver for patent infringement); Curtis, 168 F. Supp. at 216 (finding no waiver for copyright infringement).

Not only would finding the Tucker Act to be a waiver of sovereign immunity for DCMA claims, when it has been held not to be a waiver for patent and copyright infringement claims, be illogical, but it would cast doubt on the need for Section 1498 altogether. Yet, this would thwart Congress's clear recognition that Section 1498 was necessary in order to provide a waiver of

---

[5] Each of these statutes also share similarities that demonstrate that the Tucker Act is inapplicable. For example, each of the statutes do not inherently involve the government. See 35 U.S.C. § 271 (patent infringement); 17 U.S.C. § 501 (copyright infringement); compare 17 U.S.C. §§ 1201, 1202. Furthermore, patent, copyright, and the DMCA all sound in tort law. See Lanman, 27 Ct. Cl at 260; Turton, 212 F.2d at 355.

sovereign immunity for patent and copyright infringement. See, e.g., Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533 (1995) ("[W]hen two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.") (citation omitted). Therefore, the only plausible interpretation is that the Tucker Act does not serve to waive sovereign immunity for the DMCA. Since Blueport cannot identify a waiver of sovereign immunity for the DMCA in any other statute, the government's Motion should be granted.

## CONCLUSION

In view of the foregoing, it is respectfully requested that the Court grant the government partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

March 6, 2006

Attorneys for the United States

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on March 6, 2006 I electronically filed the foregoing DEFENDANT'S SUPPLEMENTAL BRIEF WITH RESPECT TO SOVEREIGN IMMUNITY with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail address:

rylander@pacifier.com

Upon information and belief, this email address corresponds to the following individual:

Kurt M. Rylander
KURT M. RYLANDER TRIAL AND
PATENT ATTORNEY AT LAW PC
406 West 12th Street
Vancouver, Washington 98660
(360) 750-9931

Attorney for Plaintiff

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345