**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY LLC,<br>Plaintiff,<br>-v-<br>THE UNITED STATES,<br>Defendant. | Case No. 02-1622C<br>Judge Lawrence J. Block |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COMES NOW Plaintiff and submits these, its Proposed Findings of Fact, Conclusions of Law, and Suggested Rulings:

## I. PROPOSED FINDINGS OF FACT

1. Blueport, LLC, is a limited liability corporation organized in the State of Idaho. Blueport is the true, sole, and only owner of its copyrighted work, a computer program, entitled AUMD and AUMD Admin (collectively, the "manpower data program").

2. Blueport's copyrighted work is registered with the Library of Congress, Registration No. TX 5-159-682, effective date March 9, 2000, entitled "UMD Admin Program V.2.0A and Master Program V.2.1D", and Supplemental Registration No. TX 6-064-419, entitltled "UMD Admin Program V.2.0A and Master Program V 2.1D".

3. Mark Davenport is the sole author of two computer programs titled UMD Admin V.2.0A and UMD Master V.2.1D (collectively "AUMD").

4. Davenport assigned all proprietary rights in AUMD to Blueport, LLC, on March 6, 2000, which assignment was recorded with the Copyright Office. Blueport LLC is therefore the true party in interest in this suit.

5. The interface program which allowed Air Force personnel to access MDS information prior the current MARS system, derived from AUMD, was called ADHOC. ADHOC was an Oracle™-based program which was difficult to use and not PC compatable, so its use was limited to a small number of specialists at each command, who then disseminated the information to other members needing it for their job duties. This process was slow and cumbersome.

6. On or about May 28, 1998, Mr. Davenport, then a Technical Sergeant in the USAF, completed the development of the AUMD program. The AUMD program addressed the inadequacies associated with the USAF's ADHOC program by providing a more powerful, efficient, and user-friendly software system to support the USAF's Manpower Data Systems operations.

7. AUMD is an application specific program which is tailored for use with the United States Air Force Manpower Data System (MDS). MDS is an database, written in an Oracle™-based programming language, which contains all information on Air Force manpower profiles for each unit in the Air Force based on specified readiness levels, including skill profiles for each personnel slot. Air Force personnel use MDS information to manage current and future manpower needs. Oracle™ is not compatible with commonly available Microsoft Office™ programs such as Access™, Excel™, and Word™ on PC-based desk top computers. AUMD allows users to draw information from MDS to use on these PC computers. The data is drawn from the Oracle™ database and converted into a table format usable by Microsoft Access™, a commonly available database software for PC computers. AUMD populates a local database in the converted format, and provides users a friendly point-and-click interface for

manipulating and analyzing the data for standard reports, customized reports, or other purposes. The user interfaces are more intuitive and require less expertise in computer skills than what existed before.

8. Although AUMD as written is application specific for the MDS system, AUMD may be adapted to operate with other Oracle™ databases as well. Therefore, with modification AUMD could have more widespread commercial application outside the Air Force.

9. Davenport used Access97™ to develop the programs. Both programs use “point and click” screens so the user is not required to have knowledge of Access™. The AUMD Admin program accesses an Oracle™ database containing all the data for the Air Force personnel. The AUMD Admin program converts the data in the Oracle™ database into a local database comprising several tables that are used by the AUMD Master program. The AUMD Master program uses this local database to generate the reports.

10. The AUMD Admin program has approximately 250 pages of source code. The compiled object code is approximately 1.1 megabytes. The AUMD Master program has approximately 500 pages of source code and the compiled object code is approximately 1.8 megabytes. Both programs can be compiled in either Access97™ or Access2000™, with slight differences in the syntax.

11. Around July of 1996, Mr. Davenport purchased, with his own funds, a copy of the Microsoft Access2™, programming manuals, and programming books, and started learning to use that program on his own computer at his personal residence. Shortly after the release of Access97™, Mr. Davenport purchased an upgrade copy, again with

his own funds, for personal use and continued to develop his skills with this program. The software and books were purchased on Davenport's personal initiative, without direction from anyone in the Air Force. The software and books were purchased with Davenport's own money, without any contribution from the Air Force. The personal computer was Davenport's own computer, also purchased with his own money at his own initiative. Davenport's personal computer was located in his personal residence.

12. Mr. Davenport taught himself how to program in Microsoft Access™ and Visual Basic. Davenport had requested training in computer programming through the Air Force, after transfering to the Manpower Specialist community, but his superiors refused his requests because his job duties did not require programming skills. At no time did the Air Force provide training in software program writing or development to Davenport.

13. Davenport conceived the idea of using Access97™ to write the AUMD programs around May 15, 1998. Within two weeks Mr. Davenport had both the AUMD Admin and the AUMD Master programs developed to a point that he started using them at work on his own. From that time he continued to make changes and modifications to the programs. All modifications and revisions of the manpower data program were accomplished by Mr. Davenport at his personal residence, on his own time, on his own computer, using his own software.

14. For security to protect his, now Blueport's property, Mr. Davenport incorporated an automatic expiration date in the programs. He also included a statement of authorship and ownership. After the programs were registered with the Copyright Office

Mr. Davenport included a copyright notice. The AUMD programs were registered in March, 2000, well within five years of creation.

15. AUMD program was not produced as a part of Mr. Davenport's recognized employment duties. Rather, at the time of the AUMD program's development, Mr. Davenport worked as a Manpower Data Systems Manager, pay grade E-5 (Technical Seargant) Manpower Career Field (3U), with a specialty code of AFSC V3U071. AFMAN 36-2108, which describes the qualifications required for each AFSC, does not include computer programming either for 3U071 AFSC, nor for the "V" pre-fix. As a Manpower Data Systems Manager, Mr. Davenport oversaw and maintained the Manpower Data Systems by ensuring the accuracy of both the input and output data operations associated therewith. Davenport's duties ultimately resulted in the distribution of interface data which reflected personnel requirements for assignment purposes and combat readiness throughout the Pacific Air Force (PACAF) theater, where he was assigned during 1998-2000. Mr. Davenport was neither assigned to nor expected to develop any computer program in relations to his responsibilities. Because the AUMD program was in no way associated with Mr. Davenport's responsibilities, its development cannot be construed to have been within the scope of Mr. Davenport's employment.

16. In June 1998, Mr. Davenport sent a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force base. Mr. Luckie was not within Mr. Davenport's chain-of-command; rather, M. Sgt. Luckie only offered constructive feedback as to the AUMD program's anticipated application and did not assist Mr. Davenport in the actual development of the AUMD program. Apparently impressed with the capabilities of the

AUMD program, M.Sgt. Luckie's superior directed him to disseminate the AUMD program to other Manpower Data Systems offices. Given its capacity to efficiently and accurately compile personnel information, Mr. Davenport's AUMD program was soon well received within Manpower Data Systems circles. In September 1998, Mr. Davenport was directed by his superiors to demonstrate his AUMD program to the managers of the Manpower Data Systems Community at Randolph Air Force Base, San Antonio, Texas. The response was overwhelmingly positive. Use of the AUMD program increased substantially following the presentation as Mr. Davenport was directed to forward the AUMD program to Air Force personnel nationwide. Importantly, at both the Manpower Conference in September, as well as with each subsequent distribution of the software, Mr. Davenport was recognized as the author and owner of the AUMD program.

17. In October, 1999, Air Force Manpower and Innovation Agency (AFMIA) personnel approached Mr. Davenport and inquired into the possibility of submitting an AF Form 1000 IDEA Application on the AUMD program's source code. Mr. Davenport declined, despite a potential offer of $25,000 in exchange for the submission. Mr. Davenport likewise rejected the suggestions of Mr. Glendon Hendricks, Chief of AFMIA's Information Systems Division. Mr. Hendricks related the USAF's continued need for the AUMD program following Mr. Davenport's anticipated retirement and suggested that Mr. Davenport disclose the software's source code accordingly. Mr. Davenport, however, expressed his interest in maintaining control over the AUMD program and indicated that he would not release its source code to the government.

18. Early in 2000, AFMIA let a contract to duplicate the AUMD programs. The

Request for Proposal states:

> "The service provider shall recreate the existing system so that the Air Force manpower community can seamlessly substitute MARS for the existing system. MARS shall have exactly the same user interface and function as the existing system and shall provide responses to user inputs within the same time constraints as the existing system."

The contract was let. The contract number was 'GSA CONTRACT GS-35F-4461G', issued to Science Applications International Corporation ("SAIC"). SAIC then submitted to AFMIA the Software Requirements Specifications for the two programs. All the "Screens" shown in Software Requirements Specifications were taken directly from Plaintiff's AUMD programs. The Software Requirements Specification for MARS is fundamentally a copy of the organization, struction, sequence, look and feel of the AUMD software, with some added functionality and documentation requirements imposed on top of that. Toward this end, each of the responding contractors were given Mr. Davenport's name, phone number, e-mail address, and a copy of the AUMD program, Version 2.1.f. At no time did Mr. Davenport consent to the USAF's efforts to duplicate the AUMD program. Further, Mr. Davenport was never contacted by any contractor.

19. On March 6, 2000, Blueport acquired the copyrights and all other common law intellectual property rights to the AUMD program. By registration on March 9, 2000, Mr. Davenport/Blueport made a public record of its copyright claim in the AUMD program, Version 2.1d. Prior to this time, each version of the AUMD program reflected ownership in Mr. Davenport's name only. With the acquisition, Blueport became the owner of the AUMD program and the holder of the intellectual property rights accompanying the software. Version 2.1g of the AUMD program recognizes this change in ownership with

the statement, "[A]uthored by Mark Davenport and is owned by Blueport Company, LLC. Copyright 1999/2000 All Rights Reserved." As the owner of the AUMD program, Blueport initiated correspondence with the USAF regarding the potential licensing of the AUMD program. Blueport's efforts toward seeking a licensing agreement with the USAF were never reciprocated.

20. Within each version of the AUMD program, Mr. Davenport included an automatic expiration function such that the AUMD program would stop operating after a particular, programmed date.[1] The version supplied to the prospective government contractors in the RFP, Version 2.1f, was no exception. Version 2.1f of the AUMD program contained an expiration date of May 15, 2000. With this in mind, in March of 2000, Charles Stubblefield, attorney for the USAF, informed Blueport that the USAF believed it owned the programs and that it was going to prefer criminal complaint to the FBI for having the automatic expiration function. Similarly, on April 17, 2000, Colonel Richard Zeimet, the Chief of Manpower and Organization at PACAF, directed Mr. Davenport to extend the May 15, 2000 expiration date function encrypted into Version 2.1f of the AUMD program and reveal the AUMD program's source code. Mr. Davenport was told that if he refused to follow Col. Zeimet's request, he would be given a direct order to extend the AUMD program's expiration date, and refusal would result in court-martial. Mr. Davenport understood that Col. Zeimet requested the extension in the AUMD program's expiration date so that the contractors responding to the AFMIA's RFP would have adequate time to develop a replacement AUMD program-equivalent software. Under this duress, Blueport allowed an extension of the automatic expiration from May 15, 2000 to June

[1] Changes between AUMD versions D, F, and G are insubstantial and the versions virtually identical for purposes of this case.

30, 2000 to avoid a potential court martial action against Mr. Davenport, and to provide time to negotiate a license with the USAF.

21. AFMIA hacked into Blueport's AUMD programs to bypass the expiration date on at least 5 different occasions. SAIC was not able to finish the contract within expected timelines, so the USAF engaged, without the permission of Blueport, in a series of improper acts to garner additional time for SAIC while continuing to use Blueport's program, including hacking into Blueport's program to change the automatic expiration functions and posting Blueport's program on the military website. On May 15, 2000, AFMIA posted on their web site a hacked version of Blueport's AUMD v 2.1e (Access97™). On May 18, 2000, AFMIA removed the hacked version of AUMD v 2.1e and replaced it with a hacked version of AUMD v 2.1g (Access97™). Also on May 18, 2000, AFMIA posted a hacked version of AUMD v 2.1g (Access2000™). AFMIA's web page was available to the public and any program posted could be, and were, downloaded. Sometime before February of 2001, AFMIA moved these programs to their non-public military web site.

22. On February 05, 2001, AFMIA again hacked into the AUMD v 2.1g (Access97™ & Access2000™) and extended the expiration date to August 15, 2001. At that time AFMIA posted on their website, http://www.afmia.randolph.af.mil/ the AUMD program with the new, hacker created, expiration date of August 15, 2001. These hacked versions of AUMD were downloaded up to 150,000 times based on the length of time and the number of users with the ability to download the program at each time.

23. The AUMD Master program changed the way the Air Force operates with regards to its manpower resource requirement reports. In the past, any request for

manpower resource data was sent to the Manpower Management group. The 1,000 to 1,200 people in the Manpower Career Field (AFSC 3U0xx) generated the required manpower resource reports, and then sent the reports to the requesting user. The AUMD Master program, with its "point and click" screens, is very easy to use. Anyone with PC experience can learn to operate the program in a short amount of time. As a result, the manpower resource reports function is now distributed throughout the Air Force with the end user generating the reports themselves.

24. The number of people that use the AUMD Admin program is small. One user can supply the tables required for an entire base. The number of people that use the AUMD Master program might be in the tens of thousands. Blueport is informed and believes and on that basis alleges that several MAJCOMs have posted the AUMD Master program on their local WEB page and have instructed their personnel to download the AUMD program and generate their own manpower resource reports. Some MAJCOMs have over 100,000 personnel.

25. In order to use the AUMD Master program, the user must download a copy of the program onto their local PC computer. The software is not web-based, and so does not operate online. A local copy is run, which retrieves data from the MDS database over the Internet or an intranet. Therefore, each user of AUMD Master program necessarily had to download a copy from the AFMIA website or otherwise obtain a copy. The MARS program derived from AUMD operates in the same manner.

26. On May 23, 2001, Blueport submitted a "copyright infringement claim" for infringement of the copyright to the USAF by submission to the Air Force Legal Service Agency (AFLSA), Commercial Litigation Division. On January 22, 2002, the Air Force

Legal Service Agency (AFLSA) denied the administrative claim for copyright infringement that had been filed by Blueport.

27. The Air Force denial of Blueport's administrative claim was based largely on the fact that AFLA mistakenly believed Mr. Davenport was a Communications-Computer Systems Career Field, AFSC 3Cxxx-series, rather than V3U071. Mr. Davenport attached to his affidavit in the administrative claim a description of the Communications-Computer Systems specialty code as an example where programming would be expected as part of job functions, as a counterpoint to his own Career Field, V3U071, which did not cover that job scope. AFLA misread or misunderstood Davenport's affidavit and evaluated his claim as though he were in the Communications-Computer Systems Career Field.

28. Writing computer programs was not within the assigned or expected job duties of Davenport. Davenport's job functions consisted of managing data input, output, and distribution by using the computer programs provided by the Air Force and installed on Air Force provided computers, but Davenport's job functions excluded generating software. In fact, Mr. Davenport had requested programmer training but was denied because it was not within his job scope.

29. Despite the fact that Blueport owned the rights to the AUMD programs and had offered a license to the Air Force, the Air Force did not invite Blueport to participate in the development of the MARS replacement software. If Blueport were permitted to participate, then they could have provided the formal documentation and support included in the GSA contract awarded to SAIC as part of the contract price. Nothing in

the record demonstrates that Blueport would have been unable to fulfill the terms of that contract as let, if given the opportunity.

30. Following adoption of the MARS software the Air Force discarded AUMD/MARS and adopted the software used by the United States Army. The Air Force recently returned to using AUMD/MARS prior to trial, long after Davenport left the Air Force.

31. Writing computer programs was not part of Davenport's official job duties in the Air Force. Davenport's AFSC job definition does not include programming skills. Davenport was denied Air Force training in computer programming courses. Davenport was never ordered nor expected to produce computer programs as part of his job duties. Neither SAIC nor the Air Force consulted with Davenport during the course of devloping the MARS derivative. The development of MARS, a duplication of AUMD, was controlled and managed by the Information Systems division of AFMIA, not by Manpower specialists such as Davenport. At no point did any other Air Force personnel with the same AFSC as Davenport (V3U071) participate in writing or evaluating the MARS software source code or programming, but only participated as end user evaluators.

32. The evidence of hacking and the nature of the Access™ programming language indicate that SAIC, under direction of the Air Force, was able to access the source code of the AUMD programs.

33. The source code, structure and sequence of the MARS programs are so similar to the AUMD programs that they can only be explained by copying AUMD source code.

## II. PROPOSED CONCLUSIONS OF LAW

JURISDICTION IS VALID

1. This court has jurisdiction over these claims under Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. and 28 U.S.C. § 1498(b), as well as the Tucker Act 28 U.S.C. § 1491 et seq. This action also arises under the Digital Millennium Copyright Act of 1998.

2. Although not required, Blueport's administrative claim filed with the Air Force exhausted available administrative remedies under 28 U.S.C. § 1498(b) and so Blueport has standing for this suit.

COPYRIGHT REGISTRATION IS VALID

3. The AUMD copyright registration is valid and enforceable against infringers. The registration requirements of the Copyright Act are for the purpose of notice. Formalities must be fulfilled to confer jurisdiction on a court for infringement claims. However, non-compliance with technicalities does not bar a suit, and may be corrected by Supplemental Registration Certificate without undermining the jurisdiction of the court or the rights of a plaintiff. Davenport's and Blueport's Supplemental Registration satisfy the requirements of the Copyright Act. Any errors were inadvertant, made in good faith effort to comply, without fraudulent intent of any kind. Defendant was not prejudiced by the errors, and has not demonstrated prejudicial reliance upon the inaccurate initial registration.

4. The AUMD program startup screens provided proper notice to authorized users and potential infringers that the program was subject to copyright protections and unauthorized use constitute infringement.

NO IMPLIED LICENSE

5. The Air Force may have had a fully revocable implied license to use the compiled version of the AUMD software prior to May 15, 2000, the original expiration date of the AUMD programs, but not to publish or make derivative works, nor to copy, access, or alter the source code.

6. The Air Force did not have either an express or an implied license to possess, perform, make copies, publish, distribute, or make derivative works from the AUMD software, for any purposes, after May 15, 2000.

7. The Air Force at no time had a license, implied or express, to make, use, publish, or copy any derivative work of the AUMD software.

8. Any license after May 15, 2000, express or implied, was void and unenforceable as a direct result of duress and threats by the Air Force against Davenport.

INFRINGEMENT – PROTECTABLE ELEMENTS

9. The AUMD Admin and Master programs possess creative elements which are protectable under the Copyright Act. These creative elements exist in the source code itself, as well as in the organization, structure, sequence, look, and feel of the AUMD programs.

10. Although the screens themselves are not separately registered for copyright, they are a byproduct of the executable code in the program and so constitute part of the overall "look and feel" of the AUMD programs, which are protected under the copyright of the AUMD software itself.

11. “User friendly” aspects of a computer program and interface are not inherently functional where other means are available to provide “user friendly” computer program interfaces.

INFRINGEMENT THROUGH MAKING AND DISTRIBUTING COPIES OF AUMD

12. The Air Force infringed the AUMD copyrights by making copies of the compiled, executable, AUMD Admin and Master programs after May 15, 2000 without permission of the owner, Blueport, LLC.

13. The Air Force’s infringement was willful and for commercial purpose.

14. The Air Force’s unlawful conduct is likely to continue in the future if not enjoined.

INFRINGEMENT THROUGH CREATION, PUBLICATION, AND DISTRIBUTION OF DERIVATIVE WORKS

15. The Air Force infringed the AUMD copyrights by directly copying the structure, sequencing, look, and feel of the AUMD programs in developing the MARS software.

16. The Air Force infringed the AUMD copyright by distributing copies of the MARS software through their AFMIA website, which is an unauthorized derivative of the AUMD programs’ structure, sequence, look, and feel.

17. The organization, structure, sequence, look and feel of the AUMD programs are protectable elements under the AUMD copyrights. The MARS software (GET and QUERY), developed by SAIC under contract to the Air Force, are copies of the organization, structure, sequence, look and feel of the AUMD programs, and are therefore infringing derivative works under any of the infringement tests currently being debated by the Court of Appeals for the Federal Circuit.

18. The fact that the Air Force has officially utilized at least two other programs, which were developed indpendently from AUMD/MARS and operated differently than AUMD/MARS, demonstrates that AUMD's organization, sequence, structure, look, and feel do not constitute scenes a faire which are merely functional and necessarily part of such a program.

19. The Air Force infringed the AUMD copyright by copying AUMD source code and using this source code to create a derivative work, the MARS software, without permission of the copyright owner, Blueport, LLC.

NO AFFIRMATIVE DEFENSES APPLY

20. The affirmative defense under 17 U.S.C. § 117 is not available to the Air Force because the copies of AUMD were not made from lawfully obtained copies, not made for archival purposes, and not "made solely by virtue of the activation of a machine that lawfully contains an authorized copy... for purposes of maintenance or repair of that machine..."

21. The Air Force's illegal copying does not fall under any exception for reverse engineering because the copying was not for the purpose of ensuring compatability with other programs or equipment, but rather for the purpose of making unauthorized copies, derivatives, or other unauthorized use of protectable elements of the AUMD programs, and solely for commercial purpose.

22. Davenport, the author of the AUMD programs, was not in a position to order, influence, or induce use of the AUMD programs or derivative works by the Government. Uncontrolled distribution of the AUMD programs was either ordered by superiors against Davenport's wishes, or simply occurred by word of mouth due to the

superior performance of the software. Further support is provided by the fact that (1) the Air Force never officially adopted AUMD; (2) Davenport and Blueport were excluded from participation in development of the MARS duplicate programs; (3) the Air Force abandoned MARS after implementation for a different program altogether; and (4) the Air Force later returned to the MARS programs long after Davenport left the Air Force and during the course of this lawsuit.

23. The AUMD programs were not prepared as part of the official functions of Davenport.

24. The AUMD programs were not prepared utilizing Government time, material, or facilities.

25. The Air Force's infringement was willful, for commercial purpose, and with malicious intent.

DMCA VIOLATIONS

26. The United States has waived immunity from suits for damages and injunctive relief under the DMCA.

27. The Court of Federal Claims my exercise concurrent jurisdiction with the District Courts over calims under the DMCA[2].

28. The DMCA is a money-mandating statute within the express waiver of sovereign immunity of the Tucker Act, 28 U.S.C. § 1491(a)(1). Plaintiff seeks money damages for government violations of the DMCA. The DMCA permits both injunctive relief and damages. Plaintiff seeks damages in excess of $10,000 as well, based on multiple egregious violations. Therefore, the only relief available is money damages,

[2] Digital Millennium Copyright Act of 1998, Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998) ("DMCA").

as mandated by the statute, and because the DMCA provides for damages against the United States (as discussed below) the CFC is the only court which may exercise jurisdiction over these claims.

29. The expiration function designed in to the AUMD software was an effective measure to control access to a work protected under the Copyright Act under normal circumstances. Compiled source code is essentially encrypted, and bypassing the expiration date required special software not generally available to users. The expiration date function was used by the copyright owner to prevent unauthorized access to and use of the AUMD programs.

30. The Air Force violated section 1201 of the DMCA by bypassing the expiration function without authorization from the copyright owner, in order to continue using, making copies, distributing copies, publishing, and making derivative works, without authorization.

31. The Air Force violated section 1202(a) of the DMCA by knowingly, and with intent to induce, enable, facilitate, or conceal infringement of Blueport's copyrights in the AUMD, providing false copyright management information on the startup screen of hacked versions of AUMD, and thereafter distributing this false copyright management information with hacked versions of AUMD.

32. The Air Force violated section 1202(b) of the DMCA by altering the copyright management information included with the AUMD programs by changing the "author" and "owner" information, without permission of the copyright owner, Blueport, LLC, knowing that this would induce, enable, facilitate, or conceal infringement of Blueport's copyrights in the AUMD.

33. The Air Force's unauthorized changes to the AUMD program copyright management information and distribution thereafter were knowing and willful.

## III. REMEDIES AND DAMAGES

1. Blueport is entitled to "recovery of reasonable and entire compensation as damages for such infringement, including the minimum statutory damages." Damages are based in this case on separate and distinguishable violations of the Copyright Act pertaining to separate works, which are individually assessable for damages, to-wit:

a. Making and distributing copies of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually, after May 15, 2000.

b. Making and distributing copies of MARS Get and MARS Query programs, which were unauthorized derivative works of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually.

c. Hacking and bypassing the expiration date built into the AUMD Admin and AUMD Master programs, on at least five separate occasions, by the Air Force and SAIC individually.

d. Distributing altered, and false, copyright management information included with the AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually.

e. Distributing false copyright management information included with the MARS Get and MARS Query programs, which were unauthorized derivative works of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually.

2. Making and distributing copies of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually, after May 15, 2000:

a. Blueport LLC is entitled to actual damages of up to $1,150,000, based upon the contract cost of the MARS software designed to duplicate exactly the organization, sequence, structure, look and feel of the AUMD program, as well as the cost savings accrued by copying the AUMD programs rather than starting from scratch; but at least not less than $426,000 based on reasonable license for the number of MARS users. Blueport is entitled to further damages consisting of any contract payments accrued but not disclosed by the Air Force during normal course of discovery.

b. Blueport LLC is entitled in the alternative, at its election, to statutory damages of up to $300,000 for illegal copying of hacked versions of AUMD Admin and Master programs on the AFMIA website and distribution of those illegal copies, by SAIC and the Air Force individually, based on statutory damages of up to $150,000 for each work infringed; but at least $60,000 for illegal copying in the event the copying is found not willful, based on $30,00 for each work infringed.

3. Making and distributing copies of MARS Get and MARS Query programs, which were unauthorized derivative works of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually:

a. Blueport LLC is entitled to actual damages of up to $1,150,000, based upon the contract cost of the MARS software designed to duplicate

exactly the organization, sequence, structure, look and feel of the AUMD program, as well as the cost savings accrued by copying the AUMD programs rather than starting from scratch; but at least not less than $426,000 based on reasonable license for the number of MARS users. Blueport is entitled to further damages consisting of any contract payments accrued but not disclosed by the Air Force during normal course of discovery.

b. Blueport LLC is entitled in the alternative, at its election, to statutory damages of up to $300,000 for making and distributing infringing copies of MARS Admin and Query derivative works, by SAIC and the Air Force individually, based on statutory damages of up to $150,000 for each work infringed; but at least $60,000 for illegal copying in the event the copying is found not willful, based on $30,00 for each work infringed.

4. Hacking and bypassing the expiration date built into the AUMD Admin and AUMD Master programs, on at least five separate occasions, by the Air Force and SAIC individually:

a. Blueport LLC is entitled to actual damages of at least $426,400 for violations of DMCA §§ 1201 based on the loss of licensing fees of $100 per copy caused by the circumventions that would have been owed on the 4,264 MARS users disclosed to this date. Blueport is entitled to further licensing fees based on further disclosures of users at trial.

b. Blueport LLC is entitled in the alternative, at its election, to statutory damages of up to $12,500 for violations of DMCA § 1201, based on the

statutory damages of $2500 per act of circumvention on five separate occasions.

5. Distributing altered, and false, copyright management information included with the hacked AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually:

a. Blueport LLC is entitled to actual damages of at least $426,400 for violations of DMCA §§ 1202 based on the loss of licensing fees of $100 per copy caused by the circumventions that would have been owed on the 4,264 MARS users disclosed to this date.

b. Blueport LLC is entitled in the alternative, at its election, to statutory damages of up to $200,000 for violations of DMCA § 1202, based on statutory damages of up to $25,000 per violation of § 1202 and that exact copies of AUMD and derivative works of MARS were distributed with false and altered copyright management information, by SAIC and the Air Force individually.

6. Distributing false copyright management information included with the MARS Get and MARS Query programs, which were unauthorized derivative works of AUMD Admin and AUMD Master programs, by the Air Force and SAIC individually:

a. Blueport LLC is entitled in the alternative, at its election, to statutory damages of $200,000 for violations of DMCA § 1202, based on statutory damages of $25,000 per violation of § 1202 and that exact copies of AUMD and derivative works of MARS were distributed with false and

altered copyright management information, by SAIC and the Air Force individually.

7. Blueport LLC is entitled to actual damages of up to $1,150,000, based upon the contract cost of the MARS software designed to duplicate exactly the organization, sequence, structure, look and feel of the AUMD program, as well as the cost savings accrued by copying the AUMD programs rather than starting from scratch; but at least not less than $426,000 based on reasonable license for the number of MARS users. Blueport is entitled to further damages consisting of any contract payments accrued but not disclosed by the Air Force during normal course of discovery.

8. Blueport LLC is entitled to recovery of its reasonable attorneys fees, costs, and expert fees under the Copyright Act, 28 U.S.C. 1498(b), and the Equal Access to Justice Act.

9. DMCA damages can also be interpreted as a Fifth Amendment Taking. The DMCA § 1202 prohibits deletion or alteration of copyright management information (CMI) with intent to infringe. Altering CMI on existing digital works effects a taking of property just as much, if not more so, than infringement of a copyright. The CFC may exercise jurisdiction over Plaintiff's DMCA claims as claims for money damages against the United States "founded... upon the Constitution," specifically the Takings Clause.[3]

10. Blueport LLC is entitled to prejudgment interest on all damages awarded.

[3] "[N]or shall private property be taken for public use without just compensation." U.S. CONST. AMEND. V.

DATED THIS May 4, 2006,

Respectfully submitted,

RYLANDER & ASSOCIATES PC

/s/ Kurt M. Rylander

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY under penalty of perjury of the laws of the Federal Court that on the date signed below I served a copy of the document to which this certificate is attached by electronic filing with the US Court of Federal Claims which filing serves this document upon attorneys of record for Defendant, Scott Bolden, U.S. Department of Justice, Civil Division-Commercial Litigation Branch, Washington, D.C. 20530, scott.bolden@usdoj.gov.

DATED THIS May 4, 2006

/s/ Kurt M. Rylander
KURT M. RYLANDER,
(360) 750-9931
Of Attorneys for Plaintiff

RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com