IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE***
**TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR**

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

OF COUNSEL:

CHUN-I CHIANG
Air Force Legal Operations Agency
Department of the Air Force

June 8, 2006

**REDACTED VERSION**

# TABLE OF CONTENTS


I. LEGAL STANDARDS . . . . . 2

A. Admissibility of Expert Opinion . . . . . 2

B. Substantial Similarity . . . . . 4

II. ARGUMENT . . . . . 5

A. Dr. Orr Relied upon Insufficient Facts and Data . . . . . 5

B. Dr. Orr Relied upon Unsound Principles and Methods . . . . . 9

1. Dr. Orr Incorrectly Applied Only Patent Law Principles to His Analysis . . . . . 9

2. Dr. Orr Improperly Filtered Copyrightable Elements from His Analysis, and Failed to Filter Uncopyrightable Elements . . . . . 11

C. Dr. Orr Improperly Applied Unsound Principles to the Facts of the Case . . . . . 14

1. Dr. Orr's "Functional Similarity" Analysis Is Completely Unhelpful with Respect to Substantial Similarity under Copyright Law . . . . . 14

2. Dr. Orr Testified that AUMD and MARS are Dissimilar . . . . . 15

3. Dr. Orr's Visual Similarity Analysis is Unsupported and Completely Subjective . . . . . 16

CONCLUSION . . . . . 19


**CONTENTS TO APPENDIX:**


Expert Report of David Orr, PhD (**REDACTED**) . . . . . A1 - A25

Excerpts of Deposition Transcript of David Orr (**REDACTED**) . . . . . A26 - A73

# TABLE OF AUTHORITIES

## CASES

Amini Innovation Corp. v. Anthony California, Inc.,
439 F.3d 1365 (Fed. Cir. 2006) . . . . . . . . . . 4

Atari Games Corp. v. Nintendo of America,
975 F.2d 832 (Fed. Cir. 1992) . . . . . . . . . . 4, 5, 9

Autoskill, Inc. v. Nat'l Educ. Support Systems,
994 F.2d 1476 (10th Cir. 1993) . . . . . . . . . . 5

Baker v. Selden,
101 U.S. 99 (1879) . . . . . . . . . . 12

Claar v. Burlington N.R.R.,
29 F.3d 499 (9th Cir. 1994) . . . . . . . . . . 14

Computer Assocs. Int'l, Inc. v. Altai, Inc.,
982 F.2d 693 (2d Cir. 1992) . . . . . . . . . . 5

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) . . . . . . . . . . 2, 3

Engineering Dynamics, Inc. v. Structural Software, Inc.,
26 F.3d 1335 (5th Cir 1994) . . . . . . . . . . 5

Feist Publ'ns, Inc. v. Rural Telephone Services Co.,
499 U.S. 340 (1991) . . . . . . . . . . 4, 12

Gates Rubber Co. v. Bando Chemical Indus.,
9 F.3d 823 (10th Cir. 1993) . . . . . . . . . . 5, 11

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . 3, 16

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999) . . . . . . . . . . 2-4

Mazur v. Stein,
347 U.S. 201 (1954) . . . . . . . . . . 11

MiTek Holdings, Inc. v. Arce Engineering Co., Inc.,
89 F.3d 1548 (11th Cir. 1996) . . . . . . . . . . 5

O'Conner v. Commonwealth Edison Co.,
13 F.3d 1090 (7th Cir. 1994) . . . . . . . . . . 16

Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.,
326 F.3d 1333 (11th Cir. 2003) . . . . . . . . . . 3

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . 2

Trek Leasing, Inc. v. United States,
66 Fed. Cl. 8 (2005) . . . . . . . . . . 5, 12

Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,
797 F.2d 1222 (3rd Cir. 1986) . . . . . . . . . . 9

**STATUTES**

17 U.S.C. § 102 . . . . . . . . . . 4, 12

**OTHER AUTHORITIES**

Federal Rules of Evidence Rule 402 . . . . . . . . . . 1, 18

Federal Rules of Evidence Rule 403 . . . . . . . . . . 18

Federal Rules of Evidence Rule 702 . . . . . . . . . . *passim*

The American Heritage Dictionary of the English Language (4th ed. 2000) . . . . . . . . . . 12

United States Copyright Office Copyright Circular 61 . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |
| | ) | **REDACTED VERSION**[1] |

**DEFENDANT'S MOTION *IN LIMINE***
**TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR**

The United States ("government") moves *in limine* to exclude the portion of Dr.David Orr's expert report, dated August 13, 2004, with respect to his opinion that the MARS programs are substantially similar to the AUMD program, as well as any testimony that Dr. Orr has provided concerning this opinion in his deposition, and any that he may provide at trial. Dr. Orr's testimony concerning substantial similarity is not based upon sufficient facts or data, is not the product of reliable principles and methods, and what methodology Dr. Orr does use is not applied reliably to the facts of this case as required by Rule 702 of the Federal Rules of Evidence ("FRE"). Because Dr. Orr's opinion concerning substantial similarity does not meet the test for allowing expert testimony at trial as set forth in Rule 702, his testimony on this opinion should be excluded from trial as unreliable and irrelevant. See FRE 402.

[1] Both parties assert that the source codes of the MARS and AUMD programs are protected under the Protective Order in this case. Since Dr. Orr analyzed the source code, Blueport asserts that Dr. Orr's expert report and his deposition testimony are protected. In a phone conversation on June 5, 2006, Blueport's counsel maintained that all aspects of Dr. Orr's report and testimony are protected.

# I. LEGAL STANDARDS

## A. Admissibility of Expert Opinion

The gatekeeping rule, Rule 702, sets the parameters for admissibility of expert testimony.[2] Rule 702 states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702.

The Supreme Court elaborated on these requirements in its Daubert and Kumho Tire decisions. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Rule 702 requires that the expert have sufficient knowledge or expertise to be qualified to provide an opinion and that the opinion be reliable and relevant to the inquiry at hand. See Kumho Tire, 526 U.S. at 149 (holding that Rule 702 establishes a standard of evidentiary reliability and requires a valid connection to the pertinent inquiry and reliable basis in the knowledge and experience of the relevant discipline as a precondition of admissibility); Daubert, 509 U.S. at 594-95 (Rule 702's "overarching subject is the scientific validity and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission."). Whether an expert has sufficient skill, personal knowledge, or expertise to provide an opinion on an issue at trial involves a reliability analysis of the testimony. See Kumho, 526 U.S. at 150. In addition, "Rule 702

---

[2] While the gatekeeping function of the trial court for a bench trial is of lessor import because the factfinder cannot be screened, the Daubert standards or relevance and reliability still must be met. See Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002).

. . . requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Daubert, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Id. (citations omitted); see also Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 647 n.16 (2004) (citing same). In other words, even "a reliable opinion expressed by a genuinely qualified expert may not help the jury if it does not pertain to a fact at issue in the case." Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).

Some factors set forth by the Supreme Court in Daubert for determining reliability and relevancy of expert testimony involve an analysis of the following:

(1) Can the theory or technique applied by the expert be (or has it been) tested;

(2) Has the theory or technique been subjected to peer review and publication;

(3) Does the technique have a high "known or potential rate of error" or standards controlling the technique's operation; and

(4) Is the theory or technique generally accepted within the relevant scientific community?

Kumho, 526 U.S. at 149-50 (citing Daubert, 509 U.S. at 592-94). Rule 702 was amended in 2000 to specifically incorporate the principles described in Daubert and Kuhmo. At the very least, Rule 702 requires that: "(1) the expert be qualified; (2) the testimony address a subject matter on which the fact-finder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." FRE 702, 2000 Amendments Commentary.

The Rule 702 inquiry is flexible. See Daubert, 509 U.S. at 594. This inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152.

**B. Substantial Similarity**

The legal standards and evidentiary burden for proving substantial similarity are discussed at length in Section IV.D.5 of the government's pretrial Memorandum.[3] The essential concept is that copyright protection does not extend "to any idea procedure, process, system, method of operation, concept, principle, or discovery." 17 U.S.C. § 102(b). "[T]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." Feist Publ'ns, Inc. v. Rural Telephone Services Co., 499 U.S. 340, 348 (1991). Accordingly, when assessing substantial similarity for the purpose of copyright infringement, courts must first distinguish "protectable expression from unprotectable design elements." Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1369 (Fed. Cir. 2006) (citations omitted).

Computer programs almost always contain a mix of copyrightable and uncopyrightable elements. See generally Atari Games Corp. v. Nintendo of America, 975 F.2d 832, 839 (Fed. Cir. 1992). In light of these principles, courts apply the "abstraction-filtration-comparison" test to cases involving computer program copyright infringement. This test involves three steps: (1) dissecting the computer program "according to its varying levels of generality" (abstraction); (2) examining each level of abstraction to filter out the unprotectable aspects (filtration); and (3) "compar[ing] the remaining protectable elements with the allegedly infringing program to determine whether the

[3] Citations to "Blueport Fact" and "Blueport Law" refer to the corresponding paragraph in Blueport's Proposed Findings of Fact and Conclusions of Law ("Blueport's Memorandum"), filed on May 4, 2006. Similarly, citations to "Gov't Fact" refer to the incorporated Statement of the Issues of Fact in the government's Memorandum of Contentions of Fact and Law, filed on May 25, 2006.

defendants have misappropriated substantial elements of the plaintiff's program." Gates Rubber Co. v. Bando Chemical Indus., 9 F.3d 823, 834 (10th Cir. 1993); see also Autoskill, Inc. v. Nat'l Educ. Support Systems, 994 F.2d 1476, 1491-97 (10th Cir. 1993); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 707 (2d Cir. 1992); MiTek Holdings, Inc. v. Arce Engineering Co., Inc., 89 F.3d 1548, 1555 (11th Cir. 1996); Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1343 (5th Cir 1994); Atari, 975 F.2d at 839-40 (applying Ninth Circuit law); Trek Leasing, Inc. v. United States, 66 Fed. Cl. 8, 12 (2005).

## II. ARGUMENT

### A. Dr. Orr Relied upon Insufficient Facts and Data

Dr. Orr failed to analyze the source code at issue in this case, and thus, his opinion with respect to substantial similarity carries no weight. As noted in the government's Pretrial Memorandum, Mr. Davenport created several different versions of the AUMD program. Two versions are particularly relevant to this case: (1) AUMD version 2.1d is the subject of Blueport's copyright registration, and ultimately, Blueport must prove that the government infringed this registered work; and (2) AUMD version 2.1f, which is unregistered, and was created subsequently to version 2.1d. See generally Blueport Fact ¶ 20.

First, Dr. Orr **did not analyze the copyrighted work** when he was asked to compare the copyrighted work and the MARS programs to determine similarity. Instead, Dr. Orr used the source code for AUMD version 2.1f, rather than 2.1d, as the data for his opinion. Dr. Orr admitted that differences between the source codes of the different versions could have a potentially large effect on his conclusions:

[redacted]

[redacted]

A52 (Orr Dep. at 84). When asked why he analyzed AUMD 2.1f, rather than AUMD 2.1d, Dr. Orr offered a vague explanation. See A52 (Orr Dep. at 84). [redacted]

Initially, Dr. Orr incorrectly testified that he had reviewed the source code for AUMD version 2.1d. Dr. Orr claimed that he had reviewed the entire source code of AUMD 2.1d, at least in a cursory manner:

[redacted]

A37-38 (Orr Dep. at 57-58); see also A52-53 (Orr Dep. at 84-85) (testifying the same). The Copyright Office, however, only requires that the first and last 25 pages of source code be attached as a deposit with a copyright registration. See Copyright Circular 61, 100606-09; also at <http://www.copyright.gov/circs/circ61.html>. In view of this requirement, Blueport did not attach

the complete source code as the deposit – it simply attached the first and last 25 pages of source code for each of the subprograms. Thus, the deposit copy represents only a small fraction – 13% – of the entire source code.[4] After being confronted with this fact, Dr. Orr admitted that the document he had reviewed was no more than 100 pages of the source code to AUMD 2.1d. See A55 (Orr Dep. at 87)[redacted]. As a result, Dr. Orr's conclusions are irrelevant with respect to the copyrighted work in this case, and his testimony should be excluded for failure to consider the copyrighted work.

Second, even if the source code for AUMD version 2.1f were relevant, Dr. Orr's limited review is insufficient to meet the standards of Rule 702. Dr. Orr stated that he had not looked at every line of source code in AUMD 2.1f:

[redacted]

A41-42 (Orr Dep. at 68-69). In addition to not examining each line of source code, Dr. Orr testified that he had not analyzed any source code relating to "report" modules. The report modules constitute nearly [redacted] percent of the entire source code for AUMD 2.1f:

[4] 13% is derived by dividing the number of deposit copy pages (100) by the apparent total number of pages from which the deposit copy was derived (762).

[redacted]

A70-71 (Orr Dep. at 164-65). Thus, Dr. Orr's testimony should be barred for failure to examine significant portions of any AUMD source code.

Finally, even though there were at least 23 different versions of the MARS program, Dr. Orr limited his analysis to only comparison to only two versions. As indicated in paragraph 7 of his report, Dr. Orr analyzed the "Get Data" subprogram from MARS 1l and the "Query and Report" subprogram from MARS 1h. See A5 (Orr Report ¶ 7). Dr. Orr admitted that he had no opinion with respect to any other version of MARS:

[redacted]

A56 (Orr Dep. at 88). Blueport's Pretrial Memorandum appears to argue that every MARS version infringes Blueport's copyright. See, e.g., Blueport Law ¶¶ 15-19 (failing to distinguish between the different versions of MARS). Therefore, to the extent that Blueport seeks to introduce testimony that unreviewed MARS versions infringe the copyright, that testimony should be excluded from trial as unreliable and irrelevant.

**B. Dr. Orr Relied upon Unsound Principles and Methods**

Rule 702 of the Federal Rules of Evidence requires that any expert testimony must be based upon reliable principles and methods. See FRE 702. Dr. Orr's principles and methods are fundamentally unsound because he applied patent law principles to this case, rather than copyright law principles.

***1. Dr. Orr Incorrectly Applied Only Patent Law Principles to His Analysis***

Dr. Orr simply did not have the background or experience to apply copyright principles to this case. Dr. Orr admitted that he had no experience with copyrights. See A39 (Orr Dep. at 60). When he was asked to describe the difference between a copyright and a patent, he could not. See A40 (Orr Dep. at 61).

Dr. Orr's inability to distinguish between a copyright and a patent during his deposition may be excusable because he is not a lawyer. The methods that Dr. Orr applies to the data, however, are simply inexcusable. In support of his opinion of substantial similarity for copyright infringement, Dr. Orr applied principles of patent law, and disregarded principles of copyright law.

Dr. Orr's concentration on patent law is evident in his expert report. In paragraph 10 of his report, Dr. Orr states that source code is composed of only two different elements: graphical user interface elements and functional elements. See A6 (Orr Report ¶ 10). He then assesses similarity for each of these two elements. See generally A6-9 (Orr Report ¶¶ 10-14). Dr. Orr's analysis, however, ignores the fact that the functional elements of a computer program are completely uncopyrightable. See Atari, 975 F.2d at 839 ("[T]he actual processes or methods embodied in the [computer] program are not within the scope of the copyright law."); see also Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1236 (3rd Cir. 1986) ("[T]he purpose or

function of a utilitarian work would be the work's idea, and everything that is not necessary to that purpose or function would be part of the expression of the idea.").

Dr. Orr's improper focus on patent principles is more than occasional; he uses these principles throughout every step of his analysis. Instead of identifying similarity of any copyrightable elements, Dr. Orr identifies the "functional similarity" between AUMD and MARS. See A8-10 (Report ¶¶ 12(c), 12(d), 13-15, 17). As a result, Dr. Orr's conclusion is based on his analysis of the "functional similarity":

[redacted]

A14 (Report ¶ 20).

During his deposition, Dr. Orr verified that his methods were derived from patent law, rather than from copyright law:

[redacted]

A46-47 (Orr Dep. at 74-75) (emphasis added). When asked if his method had any support in the literature, Dr. Orr responded:

[redacted]

A49 (Orr Dep. at 77) (emphasis added). Dr. Orr's clearest expression of his methods was by an analogy to comparing car transmissions:

[redacted]

A50-51 (Orr Dep. at 81-82); see also A57-58 (Orr Dep. at 108-09) (repeating the analogy in a different context).

In this particular case, patent principles are totally irrelevant and unhelpful. Blueport claims that the MARS program infringes the copyright in the AUMD program. There are no allegations that Blueport owns a patent or that the government has infringed a patent. In this context, the use of patent principles is diametrically opposed to the issue of substantial similarity under copyright law. See generally Mazur v. Stein, 347 U.S. 201, 217 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea-not the idea itself."). Dr. Orr's unambiguous statements in his expert report and his deposition testimony clearly demonstrate that he applied the wrong area of law to the incorrect data.

***2. Dr. Orr Improperly Filtered Copyrightable Elements from His Analysis, and Failed to Filter Uncopyrightable Elements***

The test that Dr. Orr should have applied in this case is the "abstraction-filtration-comparison" test. See Gates Rubber Co., 9 F.3d at 834. This test has been applied in at least the

Second, Fifth, Ninth, Tenth, Eleventh, and Federal Circuits, and was cited with approval by the Court of Federal Claims in the Trek Leasing case. See Section I.B., *supra*. Blueport, on the other hand, appears to contend that the test for copyright infringement for computer programs is unclear in this situation. See Blueport Law ¶ 17 (arguing infringement "under any of the infringement tests currently being debated by the Court of Appeals for the Federal Circuit"). Notably, Blueport does not cite any authority in support of its implied argument that the "abstraction-filtration-comparison" test may not be applicable. Nevertheless, both the Copyright Act and the Supreme Court have made it clear that copyright protects expression, rather than ideas. See 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . ."); Feist, 499 U.S. at 348. This dichotomy between patentable ideas and copyrightable expression has been a bedrock principle of United States law since at least 1879, when the Supreme Court held that ideas were uncopyrightable in the Baker decision. See Baker v. Selden, 101 U.S. 99, 101 (1879) (holding that blank forms were part of the idea of a book, and thus uncopyrightable, even though potentially patentable).

Contrary to this precedent, Dr. Orr did the opposite. His report and his deposition testimony indicate that he excluded potential copyrightable elements from his analysis, and included ideas and functional elements into his analysis.

For example, the programmer's comments in the source code[5] can potentially be original, copyrightable expression. Dr. Orr testified that he did not include the source code comments in his analysis, and that the comments were dissimilar:

---

[5] In the context of computer programs, comments are defined as "A string of text in a program that does not function in the program itself but is used by the programmer to explain instructions." The American Heritage Dictionary of the English Language (4th ed. 2000).



REDACTED VERSION

[redacted]

A42-43 (Orr Dep. at 69-70). In addition, Dr. Orr admitted that he had excluded other nonfunctional elements from his consideration because he deemed them to be irrelevant. See A68-69 (Orr. Dep. at 149-50). In his report, Dr. Orr acknowledges that there were differences between MARS and AUMD, but dismissed those differences by claiming that they [redacted] A13 (Orr Report ¶ 19).

Furthermore, Dr. Orr stated that one of the benefits of programming in Visual Basic and VBA was that many of the source code functions were standardized by Microsoft or by other entities. Standardized functions include: visual widgets (such as drop down boxes, buttons, images, windows, and clip art); controls for interfacing with a database; and data manipulation functions. See A30-32 (Orr Dep. at 23-25); see also A33-34 (Orr Dep. at 28-29) [redacted]. There are certain standardized naming conventions that are used by programmers to name variables, as well. See A35-36 (Orr Dep. at 41-42). Despite the fact that these functions and naming conventions are all commonly used, and thus not original to the AUMD computer program, Dr. Orr did not attempt to filter any of these features from his "similarity" analysis.

There are other reasons why MARS and AUMD may be found to have certain functional similarities. As noted above, they were both programmed in Visual Basic in Microsoft Access. They both obtained data from an Air Force database, and incorporated that data into standard reports. See Blueport Fact ¶¶ 5-8, 18, 25; Gov't Fact ¶¶ 6, 9. MARS was created to replace AUMD.

See Gov't Fact ¶ 62. Yet any resulting similarities between the two programs have nothing to do with any original expression in the AUMD program. Dr. Orr failed to consider and failed to filter these issues from his analysis:

[redacted]

A44 (Orr Dep. at 72). According to the Advisory Committee Notes accompanying Rule 702, courts should consider whether the expert has adequately accounted for obvious alternative explanations. See FRE 702, 2000 Amendments Commentary; see also Claar v. Burlington N.R.R., 29 F.3d 499, 502-03 (9th Cir. 1994) (excluding testimony, in part, for failure to consider alternative explanations).

Thus, Dr. Orr's methods and principles are flawed. Dr. Orr employed patent law principles to a copyright case, and neglected to filter uncopyrightable elements from his analysis. His methods have no support, and should not be considered by this Court.

## C. Dr. Orr Improperly Applied Unsound Principles to the Facts of the Case

### *1. Dr. Orr's "Functional Similarity" Analysis Is Completely Unhelpful with Respect to Substantial Similarity under Copyright Law*

By applying patent law principles to an analysis of the wrong source code, Dr. Orr's opinion is useless with respect to the question of whether any MARS program is substantially similar with respect to any original, expressive elements of the AUMD program. If his flawed method were used in other contexts, courts would quickly find that Microsoft Word infringes the Corel Wordperfect copyright, and that Internet Explorer infringes the Netscape copyright. Each set of programs, including MARS and AUMD, works in generally the same way, performs the same function, with the same result. Copyright infringement can only be established, however, if the functional similarities are stripped away, and the trier of fact becomes convinced that the accused has copied

original expression from the copyrighted work. Dr. Orr testified that even in situations where he found 100% functional similarity between the two programs, the source code of the corresponding sections was different. <u>See</u> A60 (Orr Dep. at 123); <u>see also</u> A61 (Orr Dep. at 124) [redacted]

Since he analyzed only the functional similarities, Dr. Orr's opinion is completely unhelpful to the Court.

***2. Dr. Orr Testified that AUMD and MARS are Dissimilar***

To the extent that Blueport seeks to introduce Dr. Orr's testimony that the structure, organization, and sequence of the two programs is substantially similar, the Court should exclude that evidence. <u>See</u> Blueport Law ¶ 17 (claiming that the MARS software copies "the organization, structure, sequence, look and feel of the AUMD programs"). Dr. Orr testified that his method of analysis did not focus on structure:

> [redacted]

A48 (Orr Dep. at 76) (emphasis added). In fact, Dr. Orr clearly disavowed that the structure was similar:

> [redacted]

[redacted]

A45-46 (Orr Dep. at 73-74). Dr. Orr's denial of structural similarity would seem to apply equally to Blueport's alleged organizational or sequential similarity. Nonetheless, Dr. Orr did not provide an opinion with respect to similar organization or sequence, so any testimony regarding these aspects should be excluded.

### *3. Dr. Orr's Visual Similarity Analysis is Unsupported and Completely Subjective*

One of the fundamental aspects of expert testimony under Rule 702 is that the opinion must be objective, rather than subjective. "The more subjective . . . the expert's inquiry, the more likely the testimony should be excluded as unreliable." FRE 702, 2000 Amendments Commentary (citing O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994)); see also Indiana Michigan Power Co., 60 Fed. Cl. at 647 (excluding an expert's testimony because it was based on a guess and because the expert did not present a "methodology" that could be used by other experts).

Dr. Orr's method for assessing visual similarity has no support in the literature, and is unhelpful for determining copyright infringement. First, it should be restated that Dr. Orr did not attempt to filter **any** unprotectable elements from his consideration of visual similarity. Any programmer in Visual Basic through Microsoft Access has certain standardized, common visual widgets at his or her command. See A30-32 (Orr Dep. at 23-25). Despite Blueport's inability to

claim copyright protection in common visual elements, Dr. Orr did not filter these elements from his consideration.[6]

Second, Dr. Orr's test of visual similarity is purely subjective. He simply broke down each screen into a number of visual elements, counted the visual elements in AUMD, and counted the visual elements in MARS. Dr. Orr solely determined which elements to consider and which elements to ignore:

[redacted]

A59-60 (Orr Dep. at 122-23). Dr. Orr later testified that he disregarded font selection in his analysis of visual similarity. <u>See</u> A66 (Orr Dep. at 142) [redacted]. When counsel for the government pointed out a visual element that Dr. Orr had not considered, he immediately adjusted his calculation of visual similarity from 100 percent down to 90 percent. <u>See</u> A66 (Orr Dep. at 142). With respect to the images displayed by each program, Dr. Orr disregarded that the images were Clip-Art and thus not original,

[6] As noted in the government's pretrial Memorandum, the "look and feel" of the two programs is nothing more than unprotectable *scenes a faire*. <u>See</u> Memo at 36-37.

and ignored differences in the magnification of the images between the two programs. See A63-64, 67 (Orr Dep. at 139-40, 143).

By his own testimony, Dr. Orr labeled this process as "subjective":

> [redacted]

A62 (Orr Dep. at 130); see also A65 (Orr Dep. at 141) [redacted] (emphasis added). As such, his analysis of visual similarity cannot be considered reliable.

In sum, Dr. Orr's testimony does not meet the requirements of Rule 702. His testimony was based on an analysis of the wrong source code. He compared the wrong source code to a limited subset of the accused programs. He used patent law methods of analysis where copyright law methods were required. His methods have no support in this context, and certain aspects of his analysis were purely subjective. Any testimony offered by Dr. Orr would be unreliable and irrelevant. See FRE 402; 403. Ultimately, Dr. Orr's flawed approach cannot assist the Court in determining whether the MARS programs are substantially similar to the copyrighted work.

**CONCLUSION**

In view of the foregoing, the government respectfully requests that this Motion be granted..

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

OF COUNSEL:

CHUN-I CHIANG
Air Force Legal Operations Agency
Department of the Air Force

June 8, 2006

Attorneys for the United States



REDACTED VERSION

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 8, 2006 I electronically filed the foregoing DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail address:

rylander@pacifier.com

Upon information and belief, this email address corresponds to the following individual:

Kurt M. Rylander
KURT M. RYLANDER TRIAL AND
PATENT ATTORNEY AT LAW PC
406 West 12th Street
Vancouver, Washington 98660
(360) 750-9931

Attorney for Plaintiff

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345