**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY LLC,<br><br>Plaintiff,<br>-v-<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 02-1622C<br><br>Judge Lawrence J. Block |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR, Ph.D**

Respectfully submitted,

RYLANDER & ASSOCIATES PC

/s/ Kurt M. Rylander

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff

DATED THIS June 27, 2006

**REDACTED VERSION**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BLUEPORT COMPANY LLC,<br><br>Plaintiff,<br>-v-<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 02-1622C<br><br>Judge Lawrence J. Block |

***REDACTED***

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR, Ph.D.**

The Court should deny Defendant's motion in limine to exclude the reports and testimony of Plaintiff's expert Dr. David Orr, Ph.D. Defendant's Motion In Limine is in reality a thinly veiled attempt to have this Court decide this case on the merits against Plaintiff. Dr. Orr is qualified by education and experience. His expert reports and testimony far exceed FRE 702's minimum standards for reliability and relevance, and they will aid this Court in determining the ultimate question of copyright infringement.

## I. ARGUMENT

### A. The Federal Rules of Evidence are interpreted to favor admissibility of all relevant evidence

Courts must liberally interpret the Federal Rules of Evidence (FRE) to admit all relevant evidence, unless there is a specific reason which prohibits it. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993) (Noting the "liberal thrust of the Federal Rules of Evidence and their general approach of relaxing the

traditional barriers to opinion testimony." Internal citations and quotations omitted); Kannankeril v. Terminix Int'l., Inc., 128 F.3d 802, 806 (3rd Cir. 1997), as amended ("The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact... [and] has a liberal policy of admissibility." Internal citations omitted.) "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one." Daubert, 509 U.S. at 594-5.

Defendant incorrectly asks this Court to determine the merits of the case in a Motion In Limine. The trial court's role as "gatekeeper" is not to weigh the evidence or decide the merits of the case. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596, citing Rock v. Arkansas, 483 U.S. 44, 61 (1987). "[T]he relevant reliabilty concerns may focus upon personal knowldege or experience... there are many different kinds of experts and may different kinds of expertise." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

Admissibility is heavily favored over exclusion in bench trials, where Daubert's and Kumho's concern for protecting a jury are not present. Seaboard Lumber Co. v. U.S., 308 F.3d 1283, 1302 (Fed. Cir. 2002) (Upholding trial court's admission of expert's opinion testimony as to potential future breach of contract, despite noted "weaknesses" of necessarily speculative testimony); Whelan Assoc., Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1232 (3rd Cir. 1986) (expert testimony on important similarities and differences was admissible even if applied under incorrect legal standard; the

"bifurcation" of protectable from unprotectable elements is within the court's purview); Indiana Michigan Power. Co. v. U.S., 60 Fed.Cl. 639, 647 (Fed. Cl. 2004) (Emphasizing the Daubert and Kumho's flexibility, allowed expert testimony on the likelihood of a future breach of contract admissible despite being somewhat speculative)[1]. *See also* Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury"); SmithKline Beecham Corp. v. Apotex Corp., 247 F.Supp.2d 1011, 1042 (N.D. Ill 2003) (Posner, Richard A., sitting by designation) *aff'd on other grounds*, 403 F.3d 1131 (Fed. Cir. 2005) ("Daubert requires a binary choice – admit or exclude – and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course not give it more weight than it deserves."); Loeffel Steel Products, Inc. v. Delta Brands, Inc., 372 F.Supp.2d 1104, 1122-3 (N.D. Ill 2005), citing Seaboard Lumber ("Where, as here, the case is tried to a court, the Daubert concerns are of lesser importance."); U.S. v. Brown, 279 F.Supp.2d 1238, 1243 (S.D. Ala. 2003)(citing Seaboard Lumber ("[D]istrict courts conducting bench trials have substanital flexibility in admitting proffered expert testimony at that front end, and then deciding for themselves during the course of the trial whether the evidence meets the requirements of Rule 702.")); Bristol-Myers Squibb Co. v. Andrix, 343 F.Supp.2d 1124, 1131-2 (S.D. Fla. 2004) (patent infringement bench trial, holding

[1]Contrary to Defendant's assertions, the Court in Indiana Michigan Power did not exclude the evidence, but rather considered it and accorded it little weight due to the speculative nature of the testimony.

court should properly admit expert testimony and address substantive objections when addressing the merits of the case):

> "The Court agrees that the question of reliability and relevance in this case is merely one of degree, and cannot agree with Andrx that the evidence is not useful or probative in deciding the issues in this case. This is especially true since this is a bench trial, where the Court must evaluate the evidence regardless of whether it ultimately decides to exclude it."

Bristol-Myers Squibb Co., 343 F.Supp.2d at 1131, citing Seaboard Lumber.

Dr. Orr's testimony is both relevant and reliable, and meets the reliability requirements required by FRE 702, even if this case were to be tried to a jury.

**B. Dr. Orr is eminently qualified as a software expert**

Dr. Orr is a software expert, qualified based on knowledge and experience to provide expert opinion as to whether the accused MARS software is substantially similar to the copyrighted AUMD software. In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) the Supreme Court recognized that not all cases involving experts will involve applications of precise scientific formulae which can be peer reviewed or otherwise disected prior to a case: "In other cases, the relevant reliability concerns may focus upon personal knowledge or experience... there are many different kinds of experts, and may different kinds of expertise." Kumho, 526 U.S. at 150. "The factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho, 526 U.S. at 150.

Here, Dr. Orr is qualified by over thirty years experience in software design and development, including designing, programming, and project management, in a variety

of computer languages and environments. *See Curriculum Vitae listed in Orr Expert Report at ¶1.* Dr. Orr has also taught software programming at the university level, including Visual BASIC [redacted]. *Orr Expert Report at ¶1.e.* Defendant has offered no evidence that Dr. Orr is not qualified by education and experience.

**C. <u>Defendant fails to point out what is lacking in Dr. Orr's credentials.</u>**

Defendant fails to point out precisely what is unreliable in Dr. Orr's techniques. Defendant simply makes a conclusory statement that it is not generally accepted – which is no longer the standard of reliability after the enactment of the Federal Rules of Evidence. <u>Daubert</u>, 509 U.S. at 588. Even so, there is no generally accepted scientific method for determining whether a software program was copied from another–the expert must compare them based on knowlege and experience. This situation is distinguishable from engineering testimony like <u>Kuhmo</u>, where there are specific formulas, algorithms, or failure test methods which are routinely applied in industry. Here, education, training, and experience establish Dr. Orr's expertise.

**D. <u>Dr. Orr applied reliable methodology accepted by other courts.</u>**

Here, Dr. Orr also applied a reasonable and verifiable method of analysis which has been accepted by other courts. Dr. Orr laid out his methodology in his expert report. *Orr Expert Report ¶¶ 9-14.* He referenced each conclusion to data tables showing the basis for reaching the conclusions. *Orr Expert Report ¶¶15-19, and*

*Exhibits A, B, and C thereto (listed in ¶18 of his Report)*.[2] However, any side-by-side comparison of computer programs necessarily entails some subjectivity, and at times may appear more like detective work than pure science – there is no recognized "standard" methodology for all software in all circumstances. This does not render his opinion unreliable or otherwise inadmissible under FRE 702. Other courts have approved methods similar to Dr. Orr's method. See e.g. Computer Associates Intern. v. Quest Software, 333 F.Supp.2d 688, 694-5 (N.D. Ill 2004):

> "In searching for non-literal copying of the source code, Hubel looked for the functional rules of the EDBA software. He then compared these to the rules used in Quest's products to see if they were the same. While it was not formal, this methodology is essentially that endorsed by the Second Circuit in Computer Associates, Intern., Inc. v. Altai, Inc., 982 F.2d 693, 706-12 (2d Cir.1992). See also Gates Rubber Co. v. Bando Chemical Industries, Ltd., 9 F.3d 823, 834-42 (10th Cir.1993). In Computer Associates, the court approved the use of the "abstraction-filtration-comparison" (AFC) test, whereby non-literal copyright infringement is proven by reducing a computer program to its basic abstract levels, filtering out the functional elements and non-proprietary information, and comparing the remaining elements. While defendants and their experts disagree with his conclusions, this is basically what Hubel did when he broke down EDBA to its basic rules and compared them to those used in the Quest software."

Other courts confronting the issue have also rejected a requirement for formalized, peer reviewed methodology where the challenged expert is clearly qualified by credentials and lays out his methodology of analysis for review by the court and opposing parties. See e.g. MGE UPS Systems, Inc. v. Fakouri Elec. Engineering, Inc., Slip Copy, N.D. Tex., March 14, 2006, available at 2006 WL 680513. The MGE court, confronted with a similar situation in a suit alleging infringement of software copyrights, correctly denied

[2] Please note, Exhibit C is a data disk and is not included in the Appendix.

the defendants' motion to exclude the plaintiffs' expert testimony as merely a tactical move involving a "battle of experts":

> "It appears that the Fakouri defendants' argument is, at its core, an argument that Marti's conclusion is unreliable because it contradicts Wiechman's conclusion, which is an insufficient basis for excluding expert-opinion testimony. *See Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588-89 (7th Cir.2000). The Fakouri defendants' arguments go merely to the weight to be given to Marti's conclusions and not to their bare admissibility. Although there is some evidence that some files were deleted or altered, it does not appear to affect the ultimate conclusion sufficiently to label his opinions unreliable. Based on Marti's qualifications and his explanations of his methodology, the Court is satisfied that his opinions are sufficiently reliable and that he applied the principles and methods reliably. *See Kumho Tire,* 526 U.S. at 147-48; *Daubert,* 509 U .S. at 589, 593."

MGE at 2. Courts have refused to admit expert testimony in cases where the purported expert has not analyzed any source code. See e.g. Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc., Slip Copy, November 23, 2005 (N.D. Ill), where the court excluded testimony by a software expert because he had never compared the actual source codes, but merely relied on representations by the plaintiffs and descriptions of the accused software posted on the company website. Thus, Dr. Orr's methodology may be considered as generally accepted and although not specifically peer reviewed, has been reviewed by other courts deciding similar issues, and satisfies Daubert and Kumho's concerns regarding reliability and fit.

The "known or potential error rate" in this case is really an unknowable variable – the overall error rate in software infringement cases must be assumed as approximately 50% since each suit implies a winner and a loser. The issue of copying, directly or indirectly, is not one that may be approached with scientific certainty (which is itself not

certainty, as noted by the Supreme Court in Daubert), so an error rate is not possible to calculate. The same can be said of Defendant's own expert, which has not prevented Defendant from offering Mr. Keohane's opinions into evidence. Dr. Orr has alleviated this problem however by clearly elucidating his methodology so that Defendant and their experts have clear notice and may rebut Dr. Orr's conclusions with their own evidence and methodology, and through thorough cross-examination. This Daubert factor therefore supports admissibility of Dr. Orr's testimony as well.

**E. The abstraction-filtration test is a legal standard applied by courts, not a scientific standard applied by experts.**

Proving copyright infringement requires Plaintiff establish ownership of copyrighted works and copying of protectable expression. Amini Innovation Corp. v. Anthony Cailifornia, Inc., 439 F.3d 1365, 1368 (Fed. Cir. 2006). Copying may be proved either by direct evidence of copying, or through circumstantial evidence by proving access to protected expression and substantial similarity between the accused software and the protected software. Atari Games Corp. v. Nintendo of America Inc., 975 F.2d 832, 844 (Fed. Cir. 1992); Whelan Assoc., Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1232 (3rd Cir. 1986); Gates Rubber Co. v. Bando Chemical Indus., 9 F.3d 823, 832-3 (10th Cir. 1993). One test applied by courts to aid in discerning protectable vs. non-protectable expression in copyrighted works is the "abstraction-filtration-comparison" test, originally applied to literary and other non-computer works. Gates Rubber Co., 9 F.3d at 832-3.

Contrary to Defendant's assertion that the "abstraction-filtration-comparison" test is legally mandated and any variation renders expert testimony inadmissible, cases cited by Defendant acknowledge **this method of analysis as only a tool which should be applied if it is useful** – but not the exclusive standard of copyright infringement analysis. See, e.g., Gates Rubber Co., 9 F.3d at 834, FN12, after approving use of the "abstraction-filtration-comparison" test in the particular case:

> "However, we note that the appropriate test to be applied and the order in which its various components are to be applied in any particular case may vary depending on the claims involved, the procedural posture of the suit, and the nature of the computer programs at issue."

The CAFC has discussed the test with approval, but has not adopted it as controlling law, and certainly has not mandated this test as a gatekeeping function to exclude expert testimony. Nor has Defendant cited any CAFC decision which renders expert testimony per se inadmissible which does not strictly apply the "abstraction-filtration-comparison" test word for word. Trek Leasing, Inc. v. U.S., 66 Fed. Cl. 8 (2005) is not to the contrary. In that case the Court applied an approach "very much like the abstraction-filtration-comparison test applied with regard to computers" (id at 12), but did not adopt the test as an exclusive tool of analysis. Circuit courts have disagreed on whether expert opinion is relevant or helpful as to what elements constitute creative expression and should therefore be filtered out, as some circuits view this as a matter of law for the court rather than an issue of fact for a jury or fact finder. Phelps, William, USE OF EXPERT EVIDENCE AND ANALYITIC DISSECTION IN DETERMINING SUBSTANTIAL SIMILARITY BETWEEN COMPUTER PROGRAMS IN COPYRIGHT INFRINGEMENT CASES, 119 A.L.R.

Fed. 489 (2005). Thus, while the "abstraction-filtration-comparison" test is valid, it is a test applied by courts and not a basis for finding expert opinion as to substantial similarity and independent creation inadmissible.

Reverse engineering used to discern the concepts and ideas of a computer program is permissible as Fair Use under 17 U.S.C. § 107. Atari, 975 F.2d at 844-5. However, "[a]ny copying beyond that necessary to understand the [copyrighted] program was infringement. Atari could not use reverse engineering as an excuse to exploit commercially or otherwise misappropriate protected expression." Atari, 975 F.2d at 845. Beyond this, copying of unprotected portions of a protected work may be probative of copying of protected portions. Gates Rubber Co., 9 F.3d at 843, FN7.

Plaintiff's essential theory is that MARS is a derivative work created by accessing the source code of the AUMD software – either through direct access to source code or through reverse engineering – and repackaging the copied source code along with added functionality. Defendant argues that there was no access to source code and therefore could be no copying. Dr. Orr's opinion indicates it is unlikely that there was no copying involved. The fact that Defendant may have accessed such source code by reverse engineering the executable files of Plaintiff's protected software is irrelevant – it is copying which is relevant. Dr. Orr's method of aligning modules according to "functional similarity" reflects the fact that Defendant's MARS software does have additional functionality not present in the AUMD software, as well as the fact that the AUMD modules have been repackaged within the MARS software. Thus, Dr. Orr was not applying a patent infringement standard to the question of copyright infringement, as

alleged by Defendant, but merely attempting to compare the corresponding modules and elements of the programs side by side. Dr. Orr will testify at trial that in his opinions the similarities in naming elements and other similarities cannot be accounted for simply by "Hungarian" naming conventions or the need to access the same MDS database. Defendant is free to offer evidence to rebut Dr. Orr's opinions and the Court must weigh all of this evidence in deciding the necessary questions of fact and law in this case, but this is not a basis for exclusion or limitation of Plaintiff's expert.

**F. <u>Dr. Orr addressed differences in the versions of AUMD in his report.</u>**

Dr. Orr analyzed several versions of the AUMD software, including Master Program versions 2.1D and 2.1F, and UMD Admin Programs versions 2.0A, 2.1D and 2.1F. *Expert Report of David Orr, Ph.D., June 2005,* ¶¶ *5-6 (Orr Report).* Dr. Orr has compared these program versions, along with information on what changes were made, and has concluded that any changes were de minimus and amounted merely to changes in the expiration date – which Mr. Davenport was forced to do by the Air Force in order to avoid court martial – and some other minor changes to email address calls. Thus, no protectable expression was altered and Dr. Orr's analysis would be unaltered.

**G. <u>Dr. Orr analyzed the correct versions of the MARS software.</u>**

Defenant's claim for exclusion based on different versions of the infringing MARS software is a red herring. Dr. Orr analyzed [redacted] *Orr Report* ¶¶*6-7.* Defendant alleges that because the Air Force released "at least 23 different versions of the MARS program" that Dr. Orr's analysis is therefore not relevant to the question of infringement.

*Defendant's Motion In Limine at p.8.* Plaintiff contends that the initial version of MARS was an infringing derivative work based on AUMD, and that all versions subsequent were infringing derivative works. The rules of evidence do not require Plaintiff to prove that every version of MARS infringes – a single infringing derivative work suffices to prove infringement and damages. The fact that each subsequent version of MARS is an infringing derivative as well is not relevant to Plaintiff's claims. Plaintiff bases its damages for infringement on illicit copying and distribution of the AUMD source code itself, as well as illicit creation, copying and distribution of the derivative MARS software. Attempting to require Plaintiff to pay experts to analyze all versions of MARS simply to prove infringement by a single version of MARS would effectively pin the outcome of this case on the relative disparity in economic resources between the parties rather than the merits of Plaintiff's claims.

**H. The fact that MARS includes additional functionality does not negate copying.**

Plaintiff does not have to prove that MARS source code is 100% identical to AUMD, or even that all of AUMD was incorporated into MARS bodily. Plaintiff contends that Defendant copied *a substantial portion of the AUMD programs* to create a derivative work – MARS. Arnstein v. Porter, 154 F.2d 464, 472-3 (2d Cir.1946); Gates Rubber Co., 9 F.3d at 832 ("[Infringement] involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's program; and 2) whether, as a mixed issue of fact and law, those elements of the program that have been copied are protected expression and *of such importance to the copied work* that

the appropriation is actionable..." Emphasis added, citations omitted.) Defendant's arguments imply that if an infringer adds substantial work beyond what is copied, or if they copy less than 100% of a program, then they are not liable for infringement.

Dr. Orr's expert report and testimony, combined with other evidence of intent to copy, access, and similarity, taken as a whole, prove Plaintiff's contention that the MARS programs were derived from the AUMD programs and misappropriated protectable expression. For example, the stated purpose of the MARS system was stated to be: [redacted] This is the ultimate issue of relevance. Defendant disagrees that they are liable, and present their own expert testimony to rebut Dr. Orr, but these arguments properly go to consideration on the merits of the case and are not grounds to either exclude or limit Dr. Orr's testimony.

**I. <u>Mr. Keohane's rebuttal expert report is based on flawed assumptions.</u>**

The relevance of Dr. Orr's opinions is reinforced when compared to Mr. Keohane's report, which is based on the flawed presumption that the MARS programs were written independently based on objective performance criteria. In fact, the Air Force directed SAIC to create an identical copy of Davenport's AUMD: [redacted] Thus, what Mr. Keohane terms [redacted] is actually more sinister evidence of direct copying. Deriving source code by reverse engineering to produce a derivative work of

software may constitute copyright infringement just a surely as direct copying of source code, where the reverse engineering is not intended merely to produce a separate compatible program. Atari, 975 F.2d at 842-3.

The bottom line is that the Court should address substantive arguments regarding the merits of the parties' respective cases based on all relevant evidence and reserve judgment until all evidence is submitted at trial. Dr. Orr's expert reports, and his anticipated testimony at trial, are relevant and helpful to the Court in determining if the Air Force, through its contractor SAIC, created a derivative work which infringes on Blueport's copyrighted software. The Court should not exclude such evidence, but rather weigh the evidence after opportunity for cross-examination of both Dr. Orr's and Mr. Keohane's opinions at trial.

## II. CONCLUSION

Defendant's Motion In Limine should be denied. Dr. Orr's Expert Reports and testimony far exceed the minimum standards of reliability and relevance required for expert opinion under FRE 702, Daubert, and Kumho. Dr. Orr is eminently qualified and has laid out his methodology for examination by the Court and Defendants. Dr. Orr's analysis, combined with other evidence of copying to be presented at trial, will be helpful to the Court in determining necessary issues of fact and ultimate conclusions of law in this suit. Defendant's Motion in reality addresses issues of weighing evidence, not admissibility, and undermines FRE 702's bias toward admitting all relevant evidence, especially in a bench trial. For these reasons, the Court should deny Defendant's Motion In Limine.

DATED THIS June 27, 2006,

Respectfully submitted,

RYLANDER & ASSOCIATES PC

/s/ Kurt M. Rylander

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY under penalty of perjury of the laws of the Federal Court that on the date signed below I served a copy of the document to which this certificate is attached, as well as the Appendix hereto, by electronic filing with the US Court of Federal Claims which filing serves this document upon attorneys of record for Defendant, Scott Bolden, U.S. Department of Justice, Civil Division-Commercial Litigation Branch, Washington, D.C. 20530, scott.bolden@usdoj.gov.

DATED THIS June 27, 2006 /s/ Kurt M. Rylander

KURT M. RYLANDER,
(360) 750-9931
Of Attorneys for Plaintiff

RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, Washington 98660
Tel: (360) 750-9931
Fax: (360) 750-9953
E-mail: rylander@pacifier.com