IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**CONSOLIDATED STATEMENT OF PROPOSED FINDINGS OF FACT**

Pursuant to the Court's Order of December 22, 2005, plaintiff, Blueport Company, LLC ("Blueport"), and defendant, the United States ("the government"), hereby respectfully submit their Consolidated Statement of Proposed Findings of Fact.

**AGREED UPON FACTS**

The parties have conferred, and have agreed that the following list identifies the facts that are not disputed:

1. Blueport, LLC, is a limited liability corporation organized in the State of Idaho.

2. Blueport brought this case against the United States pursuant to 28 U.S.C. § 1498(b), claiming that the government infringed Blueport's copyright.

3. Blueport's copyrighted work was registered as Registration No. TX 5-159-682 on March 9, 2000. Mark Davenport is identified as the author of the work. The registration is titled "UMD Admin Program V.2.0A and Master Program V.2.1D." The two programs comprise one registered work, and are known collectively as the AUMD program.

4. Blueport filed a Supplementary Registration with the Copyright Office on

October 21, 2004 to correct the creation date listed on the original registration. The Supplementary Registration was assigned the designation TX 6-064-419.

5. The validity of Blueport's copyright is not disputed.

6. The AUMD program was written by an Air Force Technical Sergeant named Mark Davenport, who worked as a Manpower Data Systems Manager for the Air Force when he wrote the program.

7. Blueport Company, LLC was formed by Robert Gunter on February 7, 2000. Robert Gunter is Mr. Davenport's uncle. Mr. Davenport and Mr. Gunter are the only members of Blueport.

8. Mr. Davenport assigned all rights in the AUMD program to Blueport on March 6, 2000, and recorded the assignment with the Copyright Office.

9. AUMD 2.1f included a start screen which included notice of copyright, and listed Mr. Davenport as the programmer.

10. Mr. Davenport designed the AUMD program as an application specific program tailored for use with the Air Force's Manpower database. The database is known as the Manpower Data System ("MDS"), and is housed at Gunter Air Force Base in Alabama. The database contains information on Air Force manpower profiles for each unit in the Air Force based on specified readiness levels, including skill profiles for each personnel slot. Air Force personnel use MDS information to manage current and future manpower needs.

11. The purpose of the AUMD program was to draw data from an Oracle-based database to create customizable reports. The AUMD program was tailored for use with MDS. First, the program downloaded data resident in MDS and incorporated the data into a local

database. The component of the program responsible for this task was known as AUMD Admin. Second, the program manipulated the data in the local database into standard reports, such as the Unit Manpower Document ("UMD"), and into user-customizable reports. This component of the program was known as AUMD Master.

12. In order to use the AUMD Master component program, the user must install a copy of the component program onto his or her local computer.

13. The AUMD program was created in Microsoft Access 97, and was programmed in the Visual Basic programming language. Microsoft Access can save the program into at least two different kinds of files: (1) Access can save a program in .MDB format, which is human-readable source code; and (2) Access can save a program in .MDE format, which is not human-readable, and is compiled binary (or object) code.

14. Mr. Davenport incorporated an automatic expiration date function in many versions of the AUMD program. If a user of a copy of the AUMD program attempted to use the program after the automatic expiration date, the program would stop running, and would display a message that directed the user to "contact your MAJCOM Data Manager," or to go to a website managed by Mr. Davenport "to download the most current version."

15. Mr. Davenport completed development of a beta version of the AUMD program on or about May 28, 1998. This version was known as Beta 0.9.

16. After completing development of the beta version of AUMD, Mr. Davenport sent a copy of the beta AUMD program to M. Sgt. William Luckie in June 1998.

17. In September 1998, Mr. Davenport traveled to an Air Force Manpower conference at Randolph Air Force Base in San Antonio, Texas, to demonstrate the AUMD

program to many of the Manpower managers from the various Air Force Air Commands.

18. During 1999, the Air Force began to request that Mr. Davenport release the source code to the AUMD program to the Air Force Manpower and Innovation Agency ("AFMIA"). Mr. Davenport, however, expressed his interest in maintaining control over the AUMD program and indicated that he would not release its source code to the government.

19. On January 11, 2000, the Air Force issued a solicitation for contractors to recreate the AUMD program. The solicitation was republished on March 14, 2000. The new program was to be known as the MARS program.

20. Science Applications International Corporation ("SAIC") was selected to recreate the program on April 10, 2000. The contract number was 'GSA CONTRACT GS-35F-4461G'.

21. The last version of the AUMD program that was distributed by Mr. Davenport and used by the Air Force was version 2.1f. Version 2.1f was created on January 5, 2000, and contained an expiration date of May 15, 2000.

22. SAIC, acting within the scope of its contract with the Air Force, and at the direction of the Air Force, extended the expiration date of version 2.1d of the AUMD program by modifying the compiled object code of the AUMD program with a hexadecimal editor. SAIC relabeled this version as 2.1e. This program was used by the Air Force until May 17, 2000.

23. SAIC, acting within the scope of its contract with the Air Force, and at the direction of the Air Force, extended the expiration date of version 2.1f of the AUMD program by modifying the compiled object code of the AUMD program with a hexadecimal editor. SAIC relabeled this version as 2.1g. The modified expiration date of this program was set to February 15, 2001.

24. Mr. Davenport and Blueport did not authorize any use or alteration of the AUMD program after May 15, 2000.

25. Mr. Davenport never brought the source code from his home to work, and never copied the source code to his work computer.

26. Initially, the Air Force paid SAIC $152,354.09. On December 19, 2000, the contract was modified and the payment was increased by $4528.62 to a total amount of $156,882.71. On February 9, 2001, the contract was modified for a second time and the payment was increased by $163,440.96 to a total amount of $320,323.67. On September 4, 2001, the contract was modified for a fourth time[1] and the payment was increased by $290,111.13 to a total amount of $610,434.80. On August 16, 2002, the contract was modified for a final time and the payment was increased by $67,980.58 to a final amount of $678,415.38.

27. The SAIC contract proposed the following timeline for MARS:

| | |
|---|---|
| Planning | 1 person month |
| Analysis | 2 person months |
| Design | 3 person months |
| Development | 3 person months |
| Testing | 1 person month |
| Documentation | 2 person months |

28. On May 23, 2001, Blueport sent a letter to the Air Force Legal Service Agency ("AFLSA") of the United States Air Force, claiming copyright infringement. On January 11, 2002, AFLSA responded by denying Blueport's claim.

[1] The third contract modification was never executed.

**BLUEPORT'S PROPOSED FINDINGS OF FACT**

1. Blueport is the true, sole, and only owner of its copyrighted work, a computer program, entitled AUMD and AUMD Admin (collectively, the “manpower data program”).

2. Mark Davenport is the sole author of two computer programs titled UMD Admin V.2.0A and UMD Master V.2.1D (collectively “AUMD”).

3. Davenport assigned all proprietary rights in AUMD to Blueport, LLC, on March 6, 2000, which assignment was recorded with the Copyright Office. Blueport LLC is therefore the true party in interest in this suit.

4. The interface program which allowed Air Force personnel to access MDS information prior the current MARS system, derived from AUMD, was called ADHOC. ADHOC was an Oracle™-based program which was difficult to use and not PC directly compatable with commonly available PC-based desktop software, so its use was limited to a small number of specialists at each command, who then disseminated the information to other members needing it for their job duties. This process was slow and cumbersome.

5. AUMD is an application specific program which is tailored for use with the United States Air Force Manpower Data System (MDS). AUMD allows users to draw information from MDS to use on these PC computers. The data is drawn from the Oracle™ database and converted into a table format usable by Microsoft Access™, a commonly available database software for PC computers. AUMD populates a local database in the converted format, and provides users a friendly point-and-click interface for manipulating and analyzing the data for standard reports, customized reports, or other purposes. The user interfaces are more intuitive and require less expertise in computer skills than what existed before.

6. Although AUMD as written is application specific for the MDS system, AUMD may be adapted to operate with other Oracle™ databases as well. Therefore, with modification AUMD could have more widespread commercial application outside the Air Force.

7. Davenport used Access97™ to develop the programs. Both programs use "point and click" screens so the user is not required to have knowledge of Access™. The AUMD Admin program accesses an Oracle™ database containing all the data for the Air Force personnel. The AUMD Admin program converts the data in the Oracle™ database into a local database comprising several tables that are used by the AUMD Master program. The AUMD Master program uses this local database to generate the reports.

8. The AUMD Admin program has approximately 250 pages of source code. The compiled object code is approximately 1.1 megabytes. The AUMD Master program has approximately 500 pages of source code and the compiled object code is approximately 1.8 megabytes. Both programs can be compiled in either Access97™ or Access2000™, with slight differences in the syntax.

9. Around July of 1996, Mr. Davenport purchased, with his own funds, a copy of the Microsoft Access2™, programming manuals, and programming books, and started learning to use that program on his own computer at his personal residence. Shortly after the release of Access97™, Mr. Davenport purchased an upgrade copy, again with his own funds, for personal use and continued to develop his skills with this program. The software and books were purchased on Davenport's personal initiative, without direction from anyone in the Air Force. The software and books were purchased with Davenport's own money, without any contribution from the Air Force. The personal computer was Davenport's own computer, also purchased with his own money at his own initiative.

Davenport's personal computer was located in his personal residence.

10. Mr. Davenport taught himself how to program in Microsoft Access™ and Visual Basic. Davenport had requested training in computer programming through the Air Force, after transfering to the Manpower Specialist community, but his superiors refused his requests because his job duties did not require programming skills. At no time did the Air Force provide training in software program writing or development to Davenport.

11. Davenport conceived the idea of using Access97™ to write the AUMD programs around May 15, 1998. Within two weeks Mr. Davenport had both the AUMD Admin and the AUMD Master programs developed to a point that he started using them at work on his own. From that time he continued to make changes and modifications to the programs. All modifications and revisions of the manpower data program were accomplished by Mr. Davenport at his personal residence, on his own time, on his own computer, using his own software.

12. For security to protect his, now Blueport's property, Mr. Davenport incorporated an automatic expiration date in the programs. He also included a statement of authorship and ownership. After the programs were registered with the Copyright Office Mr. Davenport included a copyright notice. The AUMD programs were registered in March, 2000, well within five years of creation.

13. AUMD program was not produced as a part of Mr. Davenport's recognized employment duties. Rather, at the time of the AUMD program's development, Mr. Davenport worked as a Manpower Data Systems Manager, pay grade E-5 (Technical Seargant) Manpower Career Field (3U), with a specialty code of AFSC V3U071. AFMAN 36-2108, which describes the qualifications required for each AFSC, does not include computer programming either for 3U071

AFSC, nor for the "V" pre-fix. As a Manpower Data Systems Manager, Mr. Davenport oversaw and maintained the Manpower Data Systems by ensuring the accuracy of both the input and output data operations associated therewith. Davenport's duties ultimately resulted in the distribution of interface data which reflected personnel requirements for assignment purposes and combat readiness throughout the Pacific Air Force (PACAF) theater, where he was assigned during 1998-2000. Mr. Davenport was neither assigned to nor expected to develop any computer program in relations to his responsibilities. Because the AUMD program was in no way associated with Mr. Davenport's responsibilities, its development cannot be construed to have been within the scope of Mr. Davenport's employment.

14. In June 1998, Mr. Davenport sent a copy of the AUMD program to M.Sgt. William Luckie at Scott Air Force base. Mr. Luckie was not within Mr. Davenport's chain-of-command; rather, M. Sgt. Luckie only offered constructive feedback as to the AUMD program's anticipated application and did not assist Mr. Davenport in the actual development of the AUMD program. Apparently impressed with the capabilities of the AUMD program, M.Sgt. Luckie's superior directed him to disseminate the AUMD program to other Manpower Data Systems offices. Given its capacity to efficiently and accurately compile personnel information, Mr. Davenport's AUMD program was soon well received within Manpower Data Systems circles. In September 1998, Mr. Davenport was directed by his superiors to demonstrate his AUMD program to the managers of the Manpower Data Systems Community at Randolph Air Force Base, San Antonio, Texas. The response was overwhelmingly positive. Use of the AUMD program increased substantially following the presentation as Mr. Davenport was directed to forward the AUMD program to Air Force personnel nationwide. Importantly, at both the Manpower Conference in September, as well

as with each subsequent distribution of the software, Mr. Davenport was recognized as the author and owner of the AUMD program.

15. In October, 1999, Air Force Manpower and Innovation Agency (AFMIA) personnel approached Mr. Davenport and inquired into the possibility of submitting an AF Form 1000 IDEA Application on the AUMD program's source code. Mr. Davenport declined, despite a potential offer of $25,000 in exchange for the submission. Mr. Davenport likewise rejected the suggestions of Mr. Glendon Hendricks, Chief of AFMIA's Information Systems Division. Mr. Hendricks related the USAF's continued need for the AUMD program following Mr. Davenport's anticipated retirement and suggested that Mr. Davenport disclose the software's source code accordingly. Mr. Davenport, however, expressed his interest in maintaining control over the AUMD program and indicated that he would not release its source code to the government.

16. Early in 2000, AFMIA let a contract to recreate the AUMD programs to Science Applications International Corporation ("SAIC"). SAIC then submitted to AFMIA the Software Requirements Specifications for the two programs. All the "Screens" shown in Software Requirements Specifications were taken directly from Plaintiff's AUMD programs. The Software Requirements Specification for MARS is fundamentally a copy of the organization, struction, sequence, look and feel of the AUMD software, with some added functionality and documentation requirements imposed on top of that. Toward this end, each of the responding contractors were given Mr. Davenport's name, phone number, e-mail address, and a copy of the AUMD program, Version 2.1.f. At no time did Mr. Davenport consent to the USAF's efforts to duplicate the AUMD program. Further, Mr. Davenport was never contacted by any contractor

17. On March 6, 2000, Blueport acquired the copyrights and all other common law

intellectual property rights to the AUMD program. By registration on March 9, 2000, Mr. Davenport/Blueport made a public record of its copyright claim in the AUMD program, Version 2.1d. Prior to this time, each version of the AUMD program reflected ownership in Mr. Davenport's name only. With the acquisition, Blueport became the owner of the AUMD program and the holder of the intellectual property rights accompanying the software. Version 2.1g of the AUMD program recognizes this change in ownership with the statement, "[A]uthored by Mark Davenport and is owned by Blueport Company, LLC. Copyright 1999/2000 All Rights Reserved." As the owner of the AUMD program, Blueport initiated correspondence with the USAF regarding the potential licensing of the AUMD program. Blueport's efforts toward seeking a licensing agreement with the USAF were never reciprocated.

18. Within each version of the AUMD program, Mr. Davenport included an automatic expiration function such that the AUMD program would stop operating after a particular, programmed date.[2] The version supplied to the prospective government contractors in the RFP, Version 2.1f, was no exception. Version 2.1f of the AUMD program contained an expiration date of May 15, 2000. With this in mind, in March of 2000, Charles Stubblefield, attorney for the USAF, informed Blueport that the USAF believed it owned the programs and that it was going to prefer criminal complaint to the FBI for having the automatic expiration function. Similarly, on April 17, 2000, Colonel Richard Zeimet, the Chief of Manpower and Organization at PACAF, directed Mr. Davenport to extend the May 15, 2000 expiration date function encrypted into Version 2.1f of the AUMD program and reveal the AUMD program's source code. Mr. Davenport was told that if he

---

[2] Changes between AUMD versions D, F, and G are insubstantial and the versions virtually identical for purposes of this case.

refused to follow Col. Zeimet's request, he would be given a direct order to extend the AUMD program's expiration date, and refusal would result in court-martial. Mr. Davenport understood that Col. Zeimet requested the extension in the AUMD program's expiration date so that the contractors responding to the AFMIA's RFP would have adequate time to develop a replacement AUMD program-equivalent software. Under this duress, Blueport allowed an extension of the automatic expiration from May 15, 2000 to June 30, 2000 to avoid a potential court martial action against Mr. Davenport, and to provide time to negotiate a license with the USAF.

19. AFMIA hacked into Blueport's AUMD programs to bypass the expiration date on at least 5 different occasions. SAIC was not able to finish the contract within expected timelines, so the USAF engaged, without the permission of Blueport, in a series of improper acts to garner additional time for SAIC while continuing to use Blueport's program, including hacking into Blueport's program to change the automatic expiration functions and posting Blueport's program on the military website. On May 15, 2000, AFMIA posted on their web site a hacked version of Blueport's AUMD v 2.1e (Access97™). On May 18, 2000, AFMIA removed the hacked version of AUMD v 2.1e and replaced it with a hacked version of AUMD v 2.1g (Access97™). Also on May 18, 2000, AFMIA posted a hacked version of AUMD v 2.1g (Access2000™). AFMIA's web page was available to the public and any program posted could be, and were, downloaded. Sometime before February of 2001, AFMIA moved these programs to their non-public military web site.

20. On February 05, 2001, AFMIA again hacked into the AUMD v 2.1g (Access97™ & Access2000™) and extended the expiration date to August 15, 2001. At that time AFMIA posted on their website, http://www.afmia.randolph.af.mil/ the AUMD program with the new, hacker created, expiration date of August 15, 2001. These hacked versions of AUMD were downloaded up

to 150,000 times based on the length of time and the number of users with the ability to download the program at each time.

21. The AUMD Master program changed the way the Air Force operates with regards to its manpower resource requirement reports. In the past, any request for manpower resource data was sent to the Manpower Management group. The 1,000 to 1,200 people in the Manpower Career Field (AFSC 3U0xx) generated the required manpower resource reports, and then sent the reports to the requesting user. The AUMD Master program, with its "point and click" screens, is very easy to use. Anyone with PC experience can learn to operate the program in a short amount of time. As a result, the manpower resource reports function is now distributed throughout the Air Force with the end user generating the reports themselves.

22. The number of people that use the AUMD Admin program is small. One user can supply the tables required for an entire base. The number of people that use the AUMD Master program might be in the tens of thousands. Blueport is informed and believes and on that basis alleges that several MAJCOMs have posted the AUMD Master program on their local WEB page and have instructed their personnel to download the AUMD program and generate their own manpower resource reports. Some MAJCOMs have over 100,000 personnel.

23. The AUMD software is not web-based, and so does not operate online. A local copy is run, which retrieves data from the MDS database over the Internet or an intranet. Therefore, each user of AUMD Master program necessarily had to download a copy from the AFMIA website or otherwise obtain a copy. The MARS program derived from AUMD operates in the same manner.

24. The Air Force denial of Blueport's administrative claim was based largely on the fact that AFLA mistakenly believed Mr. Davenport was a Communications-Computer Systems Career

Field, AFSC 3Cxxx-series, rather than V3U071. Mr. Davenport attached to his affidavit in the administrative claim a description of the Communications-Computer Systems specialty code as an example where programming would be expected as part of job functions, as a counterpoint to his own Career Field, V3U071, which did not cover that job scope. AFLA misread or misunderstood Davenport's affidavit and evaluated his claim as though he were in the Communications-Computer Systems Career Field.

25. Writing computer programs was not within the assigned or expected job duties of Davenport. Davenport's job functions consisted of managing data input, output, and distribution by using the computer programs provided by the Air Force and installed on Air Force provided computers, but Davenport's job functions excluded generating software. In fact, Mr. Davenport had requested programmer training but was denied because it was not within his job scope.

26. Despite the fact that Blueport owned the rights to the AUMD programs and had offered a license to the Air Force, the Air Force did not invite Blueport to participate in the development of the MARS replacement software. If Blueport were permitted to participate, then they could have provided the formal documentation and support included in the GSA contract awarded to SAIC as part of the contract price. Nothing in the record demonstrates that Blueport would have been unable to fulfill the terms of that contract as let, if given the opportunity.

27. Following adoption of the MARS software the Air Force discarded AUMD/MARS and adopted the software used by the United States Army. The Air Force recently returned to using AUMD/MARS prior to trial, long after Davenport left the Air Force.

28. Writing computer programs was not part of Davenport's official job duties in the Air Force. Davenport's AFSC job definition does not include programming skills. Davenport was denied

Air Force training in computer programming courses. Davenport was never ordered nor expected to produce computer programs as part of his job duties. Neither SAIC nor the Air Force consulted with Davenport during the course of devloping the MARS derivative. The development of MARS, a duplication of AUMD, was controlled and managed by the Information Systems division of AFMIA, not by Manpower specialists such as Davenport. At no point did any other Air Force personnel with the same AFSC as Davenport (V3U071) participate in writing or evaluating the MARS software source code or programming, but only participated as end user evaluators.

29. The evidence of hacking and the nature of the Access™ programming language indicate that SAIC, under direction of the Air Force, was able to access the source code of the AUMD programs.

30. The source code, structure and sequence of the MARS programs are so similar to the AUMD programs that they can only be explained by copying AUMD source code.

**THE GOVERNMENT'S PROPOSED FINDINGS OF FACT**

1. Mr. Davenport designed the AUMD program to be used exclusively with the Air Force's Manpower database. The database is known as the Manpower Data System ("MDS").

2. As a Manpower Data Systems Manager, Mr. Davenport oversaw and maintained MDS by ensuring the accuracy of both the input and output data.

3. As part of his employment, Mr. Davenport distributed data which reflected personnel requirements for assignment purposes and combat readiness throughout the Pacific Air Force ("PACAF") theater. Mr. Davenport frequently incorporated this data into the Unit Manpower Document ("UMD"), a standard report used by Air Force Manpower data managers.

4. The purpose of the AUMD program is to create reports from data in MDS. First, the program downloads data resident in MDS and incorporates the data into a local database. The component of the program responsible for this task is known as AUMD Admin. Second, the program manipulates the data in the local database into standard reports, such as the Unit Manpower Document ("UMD"), and into user-customizable reports. This component of the program is known as AUMD Master.

5. M. Sgt. William "Butch" Luckie, the Manpower Data Manager at Scott Air Force Base, first met Mr. Davenport when they worked together on MDS and was a friend of Mr. Davenport. Mr. Davenport sent a copy of the beta AUMD program to M. Sgt. Luckie in June 1998.

6. Mr. Davenport also distributed copies of the programs to others within the Air Force's Manpower community.

7. Mr. Davenport increased the availability of the program by posting the AUMD program on the PACAF web page.

8. In addition to directing other Manpower employees to the PACAF website, he also distributed the program by sending copies of the program on disks and by sending copies by email.

9. In September 1998, Mr. Davenport traveled to an Air Force Manpower conference at Randolph Air Force Base in San Antonio, Texas, to demonstrate the AUMD program to many of the Manpower managers from the various Air Force Air Commands. Mr. Davenport attended the conference and demonstrated the AUMD program willingly.

10. The response to Mr. Davenport's demonstration of AUMD was positive, and the Air Force's use of the program increased after Mr. Davenport's demonstration.

11. In the annual Enlisted Performance Report for Mr. Davenport, Mr. Davenport's superior, Col. Richard Zeimet, recognized that Mr. Davenport had influenced the use of the "Net Worth" program.

12. Prior to the San Antonio Manpower conference, Mr. Davenport had already demonstrated his program at Eielson and Elmendorf Air Force bases, as well as in Misawa, Japan. According to Mr. Davenport's testimony and Blueport's discovery responses, these demonstrations took place in July 1998 – two months after he had allegedly created the program, but two months before he demonstrated the program in San Antonio, Texas.

13. Mr. Davenport never acted to reduce or limit the distribution of the AUMD program. Mr. Davenport, however, did take action to limit the distribution and use of at least two other computer programs he created.

14. Mr. Davenport provided technical support for his program while on duty.

15. Mr. Davenport extensively supported the program.

16. He added features to the program at the request of other Air Force employees.

17. Mr. Davenport supported the government's use of the program for at least 18 months after he first developed the beta version of the AUMD program.

18. Mr. Davenport was a member of the Air Force MDS Users Group ("MUG").

19. Mr. Davenport's responsibilities as a Manpower Data Systems Manager included collecting data from the MDS database and incorporating that data into the Unit Manpower Document ("UMD"), as well as other reports. Mr. Davenport's Enlisted Performance Reports contain a description of some of his responsibilities.

20. Mr. Davenport's job responsibilities are also described in an Air Force Manual.

21. The AUMD program directly assisted Mr. Davenport in the performance of his responsibilities with respect to MDS and the creation of the UMD and other reports. The AUMD program created UMDs and other customizable reports from data in MDS.

22. Prior to his creation of the AUMD program, Mr. Davenport spent a significant portion of his work time manually interfacing with MDS to create the UMD and other reports. The AUMD program directly assisted him in his day-to-day tasks, and helped disperse his workload.

23. At least 50 to 60% of Mr. Davenport's job involved working on a computer.

24. As part of his duties, Mr. Davenport helped create PACAF's website. He was also responsible for the content on that website. He could add content to the website by updating a directory on his work computer.

25. Mr. Davenport admitted that he had learned at least some Visual Basic during duty hours.

26. Mr. Davenport taught a colleague how to program in Visual Basic in Microsoft Access during work hours.

27. Mr. Davenport's predecessor, the previous Manpower Data Manager for PACAF, had designed a database query in Microsoft Access as part of his job.

28. Mr. Davenport created at least four other Microsoft Access programs while employed by the government, including the NetWorth program.

29. Mr. Davenport provided technical support for the AUMD program while at work.

30. When he received questions at work about his program, he either referred the user to other data managers, or he answered the question personally.

31. His demonstrations of AUMD occurred while on duty, on trips paid for by the Air Force.

32. M. Sgt. Luckie was primarily responsible for creating the User Manual for the AUMD program. Mr. Davenport, however, assisted M. Sgt. Luckie by reviewing and editing the document.

33. Mr. Davenport helped review and edit the User Manual for the AUMD program while at work. M. Sgt. Luckie created the manual while at work.

34. Mr. Davenport may also have helped by contributing graphics to the manual.

35. Dr. Rudd, Blueport's expert on damages, testified that he included time and expenses for creating software documentation within the scope of the cost of developing of a program.

36. Mr. Davenport received excellent performance ratings for his creation of the AUMD program.

37. Mr. Davenport's work on the AUMD program was recognized in his Enlisted Performance Reports.

38. Mr. Davenport's Enlisted Performance Reports also acknowledge his efforts with

respect to the AUMD program specifically, and with respect to computer programming generally.

39. Mr. Davenport created the program with the desire to help the Air Force.

40. With respect to the actual AUMD program, M. Sgt. Luckie was instrumental in testing and debugging the program. M. Sgt. Luckie tested the program, made sure it worked with other data, debugged the program, and suggested features for the program.

41. M. Sgt. Luckie assisted Mr. Davenport in the development of at least one other program.

42. It is impossible to create the AUMD program without knowledge of and access to MDS, and Mr. Davenport had both.

43. Mr. Davenport tested his AUMD program with the MDS database, while at work, using government computers.

44. To access the data in MDS, the AUMD program must log into the database through the use of a user account, issued only to Manpower employees.

45. Initially, the AUMD program logged into MDS through the use of one server. After a dispute with personnel at Gunter Air Force Base, the AUMD program logged into MDS through a personal user account, going through two or three different servers.

46. Mr. Davenport could not access MDS from his home. He could only access MDS from his work computer.

47. Mr. Davenport used his work computer and his work email account to send information on the program to his personal email account and Robert Gunter.

48. Mr. Davenport refused to release the source code to the Air Force, but continued distributing binary, compiled versions of the program, and continued supporting the program.

49. Mr. Davenport authorized the Air Force to use the AUMD program up until May 15, 2000. In an Interrogatory Response, Blueport admits that the Air Force held an implied license to use the AUMD program on all dates prior to May 15, 2000.

50. The Air Force continued using SAIC modified version 2.1g until SAIC distributed version 1C of the MARS program on December 11, 2000.

51. The Air Force used the modified version of version 2.1d of the AUMD program (relabeled as 2.1e), without Mr. Davenport's authorization, for approximately two days – the time period between May 15, 2000 and May 17, 2000.

52. The Air Force used the modified version of version 2.1f of the AUMD program (relabeled as 2.1g), without Mr. Davenport's authorization, for approximately seven months – the time period between May 17, 2000 and December 11, 2000.

53. Mr. Davenport retained sole possession of the AUMD source code. He never brought the source code from his home, and never copied the source code to his work computer.

54. There is no evidence that the government or SAIC ever had access to the source code for the AUMD program during the development of the MARS program.

55. The MARS program(s) contains more features than AUMD, runs on more recent versions of Microsoft Access, and contains more lines of source code.

56. The MARS program(s) are not substantially similar to any protectable expression in the AUMD program.

57. In an Interrogatory Response, Blueport stated that the applicable accounting period for its claim of copyright infringement "began on May 15, 2000 and continues to this day." Blueport Response to Interrogatory No. 7.

58. There is no evidence that Blueport experienced any economic harm as a direct result of the government's activities.

59. Blueport admits that it never sold a single copy or license of the AUMD program. See Blueport Response to Req. for Adm. 19.

60. Furthermore, Blueport admits that it has never received *any* income from the AUMD program. See Blueport Response to Req. for Adm. 20.

61. Blueport admits that it did not submit a proposal in response to the Air Force's official solicitation for contractors. See Blueport Response to Req. for Adm. 21.

62. The SAIC contract proposed the following allocation of work for the development of the MARS program: 8.3% to Planning; 16.7% to Analysis; 25.0% to Design; 25.0% to Development; 8.3% to Testing; and 16.7% to Documentation. See G0072.

63. An Air Force document indicates that, as of August 1, 2003, there were 78 users of the MARS Get Data program, and 2510 users of the MARS Query and Report program.

For further discussion of these findings of fact, see Defendant's Memorandum of Contentions of Fact and Law, filed on May 25, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

Attorneys for the United States

OF COUNSEL:

CHUN-I CHIANG
Air Force Legal Operations Agency
Department of the Air Force

June 29, 2006

June 29, 2006

Respectfully submitted,
RYLANDER & ASSOCIATES PC

_______________________________

KURT M. RYLANDER
Attorney at Law
406 West 12th Street 206
Vancouver, Washington 98660
Tel: (360) 750-9931 Fax: (360) 750-9953
E-mail: rylander@pacifier.com
Of Attorneys for Plaintiff