**APPENDIX**

Excerpts from Plaintiff's Responses to Defendant's First Set of Interrogatories . . . . . . . . . . A1-5

Excerpts from Plaintiff's Responses to Defendant's First Set of Requests for Production . . A6-7

upon consideration, and consideration actually paid or exchanged. Identify all documents pertaining thereto and all persons with knowledge of the facts thereof.

OBJECTION: Plaintiff reasserts its general objections.

RESPONSE: On March 05, 2000, Blueport faxed a letter to Peggy Gast, Client Representative, with the Air Force Manpower Innovation Agency (AFMIA), requesting a meeting to discuss the AIR Force licensing the AUMD programs. Blueport did not receive a written response but did receive a telephone call from a Charles Stubblefield, an attorney, on March 09, 2000. He stated that since the Air Force has been using this program since 1998 they had an implied license under the "Shop-Right Doctrine". He also stated that the FBI was looking into this as a criminal action, because Mark Davenport had the termination date in the AUMD program. On March 31, 2000 Blueport faxed a letter to Charles Stubblefield indicating to him that Blueport understood the Air Force's position and informing him that any rights the Air Force had to the software would terminate on May 15, 2000. Blueport also stated that "The Blueport Company, LLC is interested in discussing entering into a license agreement with the Air Force for similar software once the current software terminates." Blueport did not receive any reply to this faxed letter.

Blueport has never received any compensation from the Air Force for the use of the AUMD programs. Mark Davenport has never received any compensation from the Air Force for the use of the AUMD programs.

Defendant is further directed to the document production.

INTERROGATORY NO. 7: With regard to the compensation Plaintiff seeks in this action: (a) Specify the beginning and ending dates of what Plaintiff contends is the

applicable accounting period. (b) Specify the manner in which the compensation sought is to be calculated, and include a description of each component of the calculation together with a corresponding dollar amount. (c) Describe and quantify the expenses that were incurred in the development of AUMD. (d) Describe and quantify all income that AUMD has generated since its creation. (e) Identify all documents pertaining to this Interrogatory and all persons with knowledge of the facts thereof.

OBJECTION: Plaintiff reasserts its general objections.

RESPONSE: With regard to the compensation that Plaintiff seeks in this action, Blueport specifies that the copyright infringement began on May 15, 2000 and continues to this day. The compensation is to be calculated by taking the number of copies that AFMIA allowed to be downloaded from the Internet by the world wide Internet users, adding to that number the number of copies that the Air Force made of the AUMD programs and adding to that number the number of copies that the Air Force made of the derivative work. Then multiply this number by the unit cost for a 50-user license.

Number of Copies. AFIMA had the AUMD program posted on their non-secure web site from May 15, 2000 until March 14, 2001. On March 14, 2001, AFMIA moved the AUMD program to their secure (.mil) web site. The .mil and .gov networks are the only networks that can access this web site. The non-secure web site was accessible to the entire world. The United Nations (UN) has published some statistics on the number of Internet users, Millennium Indicator: 'Internet users (ITU estimates)'. The UN's estimate of the number of Internet users worldwide (209 countries) was 271 million for the year 1999, 382 million for the year 2000, and 485 million for the year 2001. If only 0.01 % of the estimated Internet

users downloaded the program, that would be in excess of 38,000 copies. Blueport has downloaded the AUMD program from AFMIA's web site.

The AFMIA web sites that the AUMD programs were installed on should have had a counter that recorded the number of down loads. It is Blueport's understanding the program was also installed on the local web site of some of the Air Force Bases. The web master for the web sites that the AUMD programs were installed on might be able to supply this number. This number, if it exist, could be low because one person could down load the AUMD program from the web site then give copies of the program to several other people.

On May 15, 2000, AFMIA posted on their web site the first AUMD program that they had infringed, AUMD Version 2.1e. This was an Access97 program and was on their web site for 3 days. On May 18, 2000, AFMIA removed this program and posted another program that they had infringed, AUMD Version 2.1g, Access97 and AUMD Version 2.1g Access2000. Theses programs had an expiration date of February 15, 2001. These versions were on AFMIA's web site for about 266 days. On February 05, 2001, AFMIA again infringed Blueport's AUMD copyright and extended the expiration date to August 15, 2001. This version was on the web site at least until AFMIA replaced it with their derivative version of the AUMD program, Blueport estimates that this infringed copy of the AUMD program was on the web sit for at least 68 days.

Prior to the development of the AUMD program by Mark Davenport, the Air Force used the MDS system to produce the manpower requirement reports. The use of the MDS system was limited to the manpower management personal. This group had between 1,200 and 1,500 personal. Some of the Air Force Bases posted the AUMD program on their local

web site and instructed anyone requiring a manpower requirement report to download the program and develop there own report.

According to a DOD publication "Active Duty Military Personal By Rank/Grade" dated February 28, 2003, the Air Force had 71,267 Officers with Rank of 2nd Lieutenant through Colonel and 148,966 Enlisted Personal with Rank of E5 through E7.This total is 220,233. Every one of these people is a possible user of the AUMD program. From another DOD publication "Civilian Employment Statistics" dated April 2002, The Air Force has somewhere around 138,000 permanent civilian employees in the United States. Although Blueport does not have any data that indicates the number of personal using the AUMD program it seems reasonable to Blueport that at least 15% of the possible military users may have downloaded a copy of the AUMD program and 5 % of the civilian personal might have downloaded the program. This would indicate that the number of user might be around 39,034. The Air Force should have this information.

The number of copies of the AUMD program that was downloaded from AFMIA unsecured web site by worldwide users of the Internet, between May 15, 2000 and March 14, 2001, is estimated to be in excess of 38,000. The number of copies made by the Air Force of the infringed program, AUMD Version 2.1e, between May 15, 2000 and May 17, 2000 is estimated to be between 1,500 and 4,000. The number of copies made by the Air Force of the first infringement of the program, AUMD Version 2.1g between May 17, 2000 and February 05, 2001 is estimated to between 25,000 and 40,000. The number of copies made by the Air Force of the second infringement of the program, AUMD Version 2.1g between February 05, 2001 and April 2001 is estimated to be between 25,000 and 40,000.

The total number of copies that the Air Force made or caused to be made of the AUMD program, between May 15, 2000 and March 14, 2001 is estimated to be between 89,500 and 122,000.

The total number of copies that the Air Force has made of the derivative program will depend on how many revisions have been made to the program.

Mr. Davenport incurred the costs for purchasing 8 books about Access 97, at approximately $35 each. A copy of MS Office 97 with MS Access from COSTCO at $299, and a subscription to MS Access Magazine at $35 for a year.

For further response please see the document production.

<u>INTERROGATORY NO. 8</u>: Identify plaintiff's bases for stating that the value of "[a]ll copyrights to UMD Admin Program, Master Program, Net Worth Program, DMD Analyzer Program, and MDS Error Checking Program, including without limitation the source code, the compiled code and all documentation pertaining thereto . . . all trade secrets . . . any and all trademarks, trade names and trade dress . . . and the right to sue for any or all past infringements thereof" was $20,000 at the time the "Operating Agreement of Blueport Company, LLC" was entered into effect (March 6, 2000). <u>See</u> Plaintiff's Document marked 100113. Identify the value attributable to each program and each other component listed, including whether such value is attributable to the copyright, trademark, or other intellectual property. Identify all documents pertaining thereto and all persons with knowledge of the facts thereof.

<u>OBJECTION</u>: Plaintiff reasserts its general objections. Plaintiff further objects to inquiry into any assets other than the copyrighted programs at issue in this suit as unduly

D. Plaintiff objects to Defendant's Requests to the extent that they seek documents that is not in the Plaintiff's possession, custody, or control.

E. Plaintiff objects to Defendant's Requests to the extent that the information sought is obtainable from some other source that is more convenient, less burdensome, and/or expensive. Plaintiff objects to Defendant's Requests to the extent that they require documents that: Defendant has or should have; Is or will be equally available to Defendant, e.g., given Plaintiff's initial disclosures; Require the Plaintiff to perform an analysis that can easily be performed by Defendant.

F. Plaintiff objects to Defendant's Requests to the extent that they are unduly burdensome, overly broad, and seek information that is neither relevant not reasonably calculated to lead to the discovery of admissible evidence. The production of documents and things in response to a request that is objectionable for one or more of these grounds shall not waive Plaintiff's objection.

G. Plaintiff objects to those requests which are vague or ambiguous.

H. "Document production" as used in this includes: (1) Plaintiff's initial disclosures; (2) Defendant's response to Plaintiff's requests for production; (3) Defendant's response to requests for admission: (4) Defendant's response to interrogatories; (5) the pleadings filed in this case.

Without waiving the foregoing objections, Plaintiff responds to Defendant's Requests as follows:

<u>REQUEST FOR PRODUCTION NO. 1</u>: All documents or things identified by plaintiff in its responses to Defendant's First Set of Interrogatories.

OBJECTION: Plaintiff reasserts its general objections. Further, Plaintiff objects to the interrogatory seeking a listing of all of Plaintiff's assets as unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of evidence which would be admissible at trial. Further, Plaintiff incorporates its objections listed in Plaintiff's Response to Defendant's First Set of Interrogatories.

RESPONSE: Without waiving the foregoing objections, see Plaintiff's document production.

REQUEST FOR PRODUCTION NO. 2: All documents or things identified by plaintiff in its responses to Defendant's Second Set of Interrogatories.

OBJECTION: Plaintiff reasserts its general objections. Further, Plaintiff incorporates its objections listed in Plaintiff's Response to Defendant's First Second of Interrogatories.

RESPONSE: Without waiving the foregoing objections, see Plaintiff's document production.

REQUEST FOR PRODUCTION NO. 3: All correspondence relating to AUMD between plaintiff and the government.

OBJECTION: Plaintiff reasserts its general objections.

RESPONSE: Without waiving the foregoing objections, there has only been two items of correspondence between Blueport and Randolph AFB prior to the initial of formal claim proceedings. Please see Blueport's response to Defendant's Interrogatory No. 6. See Plaintiff's document production.