IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE***
**TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR**

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

OF COUNSEL:

CHUN-I CHIANG
Air Force Legal Operations Agency
Department of the Air Force

July 5, 2006

**REDACTED VERSION**

**TABLE OF CONTENTS**


I. ARGUMENT . . . . . . . . . . 1

A. Dr. Orr Relied upon Insufficient Facts and Data . . . . . . . . . . 4

B. Dr. Orr Relied upon Unsound Principles and Methods . . . . . . . . . . 7

1. Blueport's Arguments, and Dr. Orr's Methods, Ignore Fundamental Principles of Copyright Law . . . . . . . . . . 7

2. Blueport's Rejection of the Daubert Factors is Unjustified . . . . . . . . . . 8

3. Dr. Orr's Methods are Subjective . . . . . . . . . . 11

4. Dr. Orr Incorrectly Applied Only Patent Law Principles to His Analysis . . . . . . . . . . 11

C. Dr. Orr's Methods Are Irrelevant and Do Not 'Fit' the Facts of this Case . . . . . . 14

D. Dr. Orr's Testimony Regarding Alleged Similar Structure, Sequence, or Organization Must Be Excluded . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### CASES

Atari Games Corp. v. Nintendo of America,
975 F.2d 832 (Fed. Cir. 1992) . . . . . . . . . . 7, 11

Autoskill, Inc. v. Nat'l Educ. Support Systems,
994 F.2d 1476 (10th Cir. 1993) . . . . . . . . . . 7

Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.,
No. 05-C5488, 2005 WL 3180147 (N.D. Ill. Nov. 23, 2005) . . . . . . . . . . 6

Baker v. Selden,
101 U.S. 99 (1879) . . . . . . . . . . 7

Computer Assocs. Int'l, Inc. v. Quest Software,
333 F. Supp. 2d 688 (N.D. Ill. 2004) . . . . . . . . . . 8

Computer Assocs. Int'l, Inc. v. Altai, Inc.,
982 F.2d 693 (2d Cir. 1992) . . . . . . . . . . 7

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) . . . . . . . . . . *passim*

DSU Medical Corp. v. JMS Co.,
296 F. Supp. 2d 1140 (N.D.Cal. 2003) . . . . . . . . . . 12

Engineering Dynamics, Inc. v. Structural Software, Inc.,
26 F.3d 1335 (5th Cir 1994) . . . . . . . . . . 7

Feist Publ'ns, Inc. v. Rural Telephone Services Co.,
499 U.S. 340 (1991) . . . . . . . . . . 7

Gates Rubber Co. v. Bando Chemical Indus.,
9 F.3d 823 (10th Cir. 1993) . . . . . . . . . . *passim*

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999) . . . . . . . . . . 9, 10

MiTek Holdings, Inc. v. Arce Engineering Co., Inc.,
89 F.3d 1548 (11th Cir. 1996) . . . . . . . . . . 7

New Mexico v. General Elec. Co.,
335 F. Supp. 2d 1266 (D.N.M. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

O'Conner v. Commonwealth Edison Co.,
13 F.3d 1090 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Trek Leasing, Inc. v. United States,
66 Fed. Cl. 8 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,
797 F.2d 1222 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

17 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## OTHER AUTHORITIES

Federal Rules of Evidence Rule 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Evidence Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

Federal Rules of Evidence Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Federal Rules of Evidence Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

John W.L. Ogilvie, *Defining Computer Program Parts Under Learned Hand's Abstractions Test in Software Copyright Infringement Cases*,
91 Mich. L. Rev. 526 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

William Phelps, *Use of Expert Evidence and Analytic Dissection in Determining Substantial Similarity Between Computer Programs in Copyright Infringement Cases*, 119 A.L.R. Fed. 489 (2005) . . . . . . . . . . . . . . . . . . . . . 10

Andrew H. Rosen, *Virtual Reality: Copyrightable Subject Matter and the Scope of Judicial Protection*, 33 Jurimetrics J. 35 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 10

Peter G. Spivack, Comment, *Does Form Follow Function? The Idea/Expression Dichotomy In Copyright Protection of Computer Software*, 35 U.C.L.A. L. Rev. 723 (1988) . . . . . . . . . . 10

Rules of the Court of Federal Claims Rule 26 . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |
| | ) | **REDACTED VERSION** |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE***
**TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR**

The United States ("government") hereby replies to Plaintiff's Response to Defendant's Motion In Limine to Exclude the Testimony of Dr. David Orr ("Response"). In its Response, Blueport Company, LLC ("Blueport") largely failed to address the issues raised in the government's Motion. In addition, Blueport's arguments are unsupported. Therefore, the government's Motion *In Limine* ("Motion") should be granted, and Dr. Orr's testimony should be excluded from trial as unreliable and irrelevant. See FRE 402, 702.

## I. ARGUMENT

As argued in the government's Motion, Dr. Orr's testimony should be excluded by the Court because: (1) it is based on insufficient facts and data; (2) it relies on unsound principles and methods; and (3) Dr. Orr improperly applied the unsound principles to this case. In its Response, Blueport largely ignores these issues, and focuses on two different arguments: (1) Dr. Orr has the proper qualifications; and (2) the Federal Rules of Evidence favor admissibility. Blueport's approach is unsound. With respect to Blueport's first argument, the government has not challenged

Dr. Orr's qualifications, and a discussion of his qualifications is not relevant to the government's Motion.

With respect to Blueport's second argument, Blueport's citation of the general principle of admissibility cannot serve to obviate the Court's gatekeeping responsibilities. The question of admissibility is a preliminary question for the Court:

> (a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

FRE 104. According to the Supreme Court in Daubert, with respect to the admissibility of expert testimony:

> the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The discussion in Daubert parallels the introduction to Rule 702. See FRE 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . ."). Rule 702 continues by enumerating three requirements that must be met before a qualified witness can testify as an expert:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702. Rule 702's requirements are not optional, and coexist with the general principle of admissibility. See, generally, FRE 402 ("All relevant evidence is admissible, **except as otherwise**



REDACTED VERSION

**provided . . . by these rules . . . . Evidence which is not relevant is not admissible**.") (emphasis added); Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002) ("While [Rule 702] concerns are of lesser import in a bench trial . . . the Daubert standards of relevance and reliability for scientific evidence must nevertheless be met."). Blueport completely fails to show that Dr. Orr's testimony can meet the requirements of Rule 702, or to meet the standard of relevancy in Rule 401.

Despite its arguments, Blueport tacitly acknowledges that Dr. Orr's testimony cannot meet these standards. Blueport did not cite Dr. Orr's deposition testimony even once in its Response. Blueport cites Dr. Orr's reports only six times – twice with respect to his qualifications, twice with respect to the documents he reviewed, and twice by generally referencing his principles and methods. See Response at 4-5, 11. Blueport does not establish that Dr. Orr's methods are correct, or that they have ever been tested, or that they have been subjected to any peer review. Nor does Blueport establish that Dr. Orr's methods have been accepted in any professional community. Instead, the bulk of Blueport's Response is pure attorney argument, completely divorced from Dr. Orr's testimony in his expert reports and in his deposition.

The primary flaw of Dr. Orr's testimony is that he subjectively applied the wrong methods to the wrong facts. He subjectively applied a patent law analysis to the wrong source code. Patent law principles, such as similarity of function or behavior, have no relationship with "any fact that is of consequence to the determination" of this copyright infringement case. FRE 401 (discussing the standard for relevancy). Thus, his testimony should be barred.

### A. Dr. Orr Relied upon Insufficient Facts and Data

As stated in the Motion, Dr. Orr's analysis is based on insufficient facts and data. First, Dr. Orr failed to examine significant portions of the AUMD source code, including the copyrighted work. See Motion at 5-8. Second, Dr. Orr reviewed only a fraction of the MARS programs. See Motion at 8.

In response, Blueport incorrectly claims that "Dr. Orr analyzed several versions of the AUMD software . . . compared these program versions . . . [and] concluded that any changes were de minimus." Response at 11. In support of its claim, Blueport cites only Paragraph 5 and Paragraph 6 of Dr. Orr's Supplemental Report.[1] See Response at 11; BA4-5[2] (Orr Supp. Report ¶¶ 5-6). Dr. Orr was questioned regarding these paragraphs during his deposition, and, as discussed in the government's Motion, Dr. Orr ultimately admitted that [redacted] See Motion at 6-7; A55 (Orr Dep. at 87); see also A75, 52 (Orr Dep. at 83-84) (agreeing that [redacted]).

Contrary to Blueport's representation, Dr. Orr did not independently analyze the various versions of the AUMD program and form an opinion with respect to the differences. Instead, he simply parroted information obtained in a private conversation with Mr. Davenport and Mr. Gunter. This fact is apparent from the plain text of his expert reports, which state:

---

[1] Paragraphs 5 and 6 of Dr. Orr's Supplemental Report are nearly identical to Paragraphs 5 and 6 of Dr. Orr's first expert report. See A4-5 (Orr Report ¶¶ 5-6).

[2] "BA__" refers to the corresponding page in the Appendix attached to Blueport's Response.

> [redacted]

A4 (Orr Report ¶ 5); BA4 (Orr Supp. Report ¶ 5). Dr. Orr verified the origin of this information in his deposition:

> [redacted]

A72 (Orr Dep. at 169). Note that Dr. Orr's statements regarding AUMD 2.1E are completely unfounded because he never reviewed that version, and Blueport never produced that version during discovery. See BA3-4 (Orr Supp. Report ¶ 4) (citing sources). As discussed in the government's Motion, Dr. Orr also did not review the entire source code for AUMD 2.1f. See Motion at 7; see also A41-42 (Orr Dep. at 68-69); A70-71 (Orr Dep. at 164-65) (admitting that [redacted]).

Furthermore, the information regarding the differences between the various versions of AUMD was never provided to the government, even though the government had specifically requested the information in an interrogatory. In its Second Set of Interrogatories, the government asked Blueport to:

> Identify each version of AUMD, identify the date that each version was created, and identify the changes, features, or differences between each version.

A74 (Blueport's Response to Interrogatory No. 16). In response, Blueport identified the different versions of AUMD and the dates of creation. Blueport, however, refused to identify the changes, features, or differences between each version:

> Blueport cannot identify the changes, features, or differences between each version as such would be **unduly burdensome**. **Blueport submits this is more a matter for experts.**

A74 (Blueport's Response to Interrogatory No. 16) (emphasis added).

After withholding this information from the government during fact discovery, Blueport readily supplied the requested information to its own expert, in a private phone conversation. Blueport cannot withhold discoverable information from the government by claiming that the discussion of differences between AUMD versions "is more a matter for experts," and then attempt to establish the absence of those differences by submitting party witness testimony at trial, or by having its expert repeat details obtained in private phone conversations.

The Autotech case, cited by Blueport in its Response, generally lends support to the exclusion of Dr. Orr's testimony. See Response at 7; Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc., No. 05-C5488, 2005 WL 3180147 at *9 (N.D. Ill. Nov. 23, 2005). In Autotech, the court excluded a plaintiff expert's testimony because the expert testified that he had not reviewed the alleged infringing source code. Id. Instead, he based his opinion on information received from the plaintiff and from an online advertisement of the alleged infringing program. Id. While the facts in this case are slightly different, the result should be the same. Here, Dr. Orr never reviewed the alleged infringed source code, and based his opinion on an incomplete review of a later version and on withheld information received from Blueport.

Accordingly, Blueport's Response and the Supplemental Report simply highlight Dr. Orr's reliance on insufficient facts and data. He did not review more than a fraction of the source code for the copyrighted work, AUMD 2.1d. He did not thoroughly examine the source code for AUMD 2.1f. He did not review any portion of AUMD 2.1e, despite his statement in the Supplemental

Report. And, rather than independently analyze the differences between the versions of AUMD, he simply recited information from Blueport that was improperly withheld from the government during discovery. Thus, his testimony should be excluded for failure to meet the first requirement of Rule 702.

### B. Dr. Orr Relied upon Unsound Principles and Methods

#### *1. Blueport's Arguments, and Dr. Orr's Methods, Ignore Fundamental Principles of Copyright Law*

Whether or not this Court decides to apply the abstraction-filtration-comparison test, there are fundamental principles underlying copyright law that must be incorporated into any analysis. In 1879, the Supreme Court held that ideas were uncopyrightable. See Baker v. Selden, 101 U.S. 99, 101 (1879) (holding that blank forms were part of the idea of a book, and thus uncopyrightable, even though potentially patentable). This bedrock principle of copyright law finds its modern incarnation in Section 102 of Title 17. See 17 U.S.C. § 102 (prohibiting copyright protection of "any idea procedure, process, system, method of operation, concept, principle, or discovery"); see also Feist Publ'ns, Inc. v. Rural Telephone Services Co., 499 U.S. 340, 348 (1991) ("[T]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.")

The abstraction-filtration-comparison test is simply a manifestation of these fundamental principles of copyright law. See Gates Rubber Co. v. Bando Chemical Indus., 9 F.3d 823, 833-834 (10th Cir. 1993). The test is precedent in a significant number of Circuits; was applied by the Federal Circuit; and was cited with approval by the Court of Federal Claims. Id.; Autoskill, Inc. v. Nat'l Educ. Support Systems, 994 F.2d 1476, 1491-97 (10th Cir. 1993); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 707 (2d Cir. 1992); MiTek Holdings, Inc. v. Arce Engineering Co., Inc., 89 F.3d 1548, 1555 (11th Cir. 1996); Engineering Dynamics, Inc. v. Structural Software, Inc., 26

F.3d 1335, 1343 (5th Cir 1994); Atari Games Corp. v. Nintendo of America, 975 F.2d 832, 839-40 (Fed. Cir. 1992) (applying Ninth Circuit law); Trek Leasing, Inc. v. United States, 66 Fed. Cl. 8, 12 (2005). That said, there may be an alternative test that incorporates these principles in a reliable fashion. If so, Blueport has not cited an alternate test, and Dr. Orr has not applied such a test.[3] As argued in the government's Motion, however, Dr. Orr's methods actually exclude the protectable elements from any analysis.

Instead of responding to the government's Motion by alleging that Dr. Orr did analyze protected elements, Blueport simply tries to transform unprotectable elements into protectable elements. For example, Blueport claims that "the stated purpose of the MARS system . . . is the ultimate issue of relevance." Response at 12-13. Blueport's assessment of "ultimate issue of relevance" in this case is diametrically opposed to the established case law. See Gates, 9 F.3d at 836 ("[T]he main purpose or function of a program will always be an unprotectable idea.").

### *2. Blueport's Rejection of the Daubert Factors is Unjustified*

Blueport's other tactic is to suggest that Dr. Orr's approach was acceptable in light of the absence of a "standard" test. Response at 5-9. Blueport misses the point. The inquiry is not whether the expert used "standard" principles and methods, but whether the expert used **reliable** principles and methods. See FRE 702. The absence of a standard test does not give a party a license

---

[3] Blueport implies that Dr. Orr's approach was similar to the approach used by an expert in a case in the District Court for the Northern District of Illinois. See Computer Assocs. Int'l, Inc. v. Quest Software, 333 F. Supp. 2d 688 (N.D. Ill. 2004). This is the only case that Blueport cites in support of Dr. Orr's methods. Dr. Orr's approach was not similar. Unlike Dr. Orr, the expert in the Computer Associates case manually compared the source codes, examined the correct source codes, and generally applied the abstraction-filtration-comparison test. Id. at 694. Furthermore, the court applied a lenient standard because the expert was challenged at the preliminary injunction stage. Id. at 695.

to apply any method it wants. The method must relate to an issue in the case. See Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). The method must "address a subject matter on which the fact-finder can be assisted by an expert," and must "fit the facts of the case." FRE 702, 2000 Amendments Commentary. The method must be reliable. FRE 702. Reliability can be assessed with the help of the factors identified by the Supreme Court. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999) (citing Daubert for whether the technique: (1) can be tested; (2) subjected to peer review; (3) has a high rate of error; or (4) is accepted within the relevant community); Daubert, 509 U.S. at 592-94. Blueport all but admits that Dr. Orr's testimony meets none of the Daubert / Kumho factors for reliability. See Response at 7 (stating that Dr. Orr's methods are "not specifically peer reviewed"); Response at 7 (assuming a 50% error rate); Response at 5 (claiming that "there is no generally accepted scientific method"). Blueport's repudiation of the Daubert factors is unsurprising in light of Dr. Orr statements that his methods were derived from patent law, that he had no idea if there was support in the literature for his methods, that he analyzed the programs in the same way that he would compare functional aspects of car transmissions, and that his methods were subjective. See Motion at 10-11; see also A46-51 (Orr Dep. at 74-82); A57-58 (Orr Dep. at 108-109); A62, 65 (Orr Dep. at 130, 141).

Blueport cites Kumho for the proposition that the Daubert factors may not be relevant in each in every situation. See Response at 5-8. By way of hypotheticals, the Supreme Court cited several instances where the Daubert factors may not be helpful: where the subject matter "has never been the subject of peer review"; where the "particular application at issue may never previously have interested any scientist"; where "the discipline itself lacks reliability, as, for example [in] astrology

or necromancy." Kumho, 526 U.S. at 151. The comparison of two computer programs for the purpose of determining copyright infringement bears no similarity to the hypotheticals discussed in Kumho. The cases considering copyright infringement with respect to computer programs are legion, and the courts have been dealing with this issue for at least twenty years. See, e.g., Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222 (3rd Cir. 1986). There are innumerable articles discussing the subject. See, e.g., Peter G. Spivack, Comment, *Does Form Follow Function? The Idea/Expression Dichotomy In Copyright Protection of Computer Software*, 35 U.C.L.A. L. Rev. 723 (1988); Andrew H. Rosen, *Virtual Reality: Copyrightable Subject Matter and the Scope of Judicial Protection*, 33 Jurimetrics J. 35 (1992); John W.L. Ogilvie, *Defining Computer Program Parts Under Learned Hand's Abstractions Test in Software Copyright Infringement Cases*, 91 Mich. L. Rev. 526 (1992); William Phelps, *Use of Expert Evidence and Analytic Dissection in Determining Substantial Similarity Between Computer Programs in Copyright Infringement Cases*, 119 A.L.R. Fed. 489 (2005). Blueport's unsupported argument that the Daubert factors should not be considered or applied has no merit.

Finally, a witness "relying solely or primarily on experience" must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FRE 702, 2000 Amendments Commentary. To put it another way, Blueport must still establish that Dr. Orr's testimony "rests on a reliable foundation." Kumho, 526 U.S. at 141. Even if Dr. Orr's experience was the correct analysis for reliability in this case, Blueport has not attempted to provide the necessary foundation or explanation.

### *3. Dr. Orr's Methods are Subjective*

As noted in the Motion, "[t]he more subjective . . . the expert's inquiry, the more likely the testimony should be excluded as unreliable." FRE 702, 2000 Amendments Commentary (citing O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994)). Blueport, rather than countering the government's argument by claiming that Dr. Orr's approach was actually based on objective criteria, responds by claiming that software analysis is a completely subjective exercise:

> [A]ny side-by-side comparison of computer programs necessarily entails some subjectivity, and at times may appear more like detective work than pure science – there is no recognized "standard" methodology for all software in all circumstances.

Response at 5. Continuing further, Blueport seems to claim that the alleged potential error rate of this case justifies the inclusion of subjective testimony:

> The "known or potential error rate" in this case is really an unknowable variable – the overall error rate in software infringement cases must be assumed as approximately 50% since each suit implies a winner and a loser. The issue of copying, directly or indirectly is not one that may be approached with scientific certainty, so an error rate is not possible to calculate.

Response at 7 (parenthetical omitted). If the error rate in this case was truly as high as Blueport alleges, the Court should simply exclude all of the expert testimony as being too subjective and unhelpful to the Court.

### *4. Dr. Orr Incorrectly Applied Only Patent Law Principles to His Analysis*

Dr. Orr applied patent principles throughout every step of his analysis, throughout both of his expert reports, and throughout his deposition. He phrased his conclusions in terms of "functional similarity" between AUMD and MARS. See A8-10 (Orr Report ¶¶ 12(c), 12(d), 13-15, 17). Computer programs contain a mix of copyrightable and uncopyrightable elements. See generally Atari, 975 F.2d at 839. Rather than filter the uncopyrightable elements from his analysis to focus



REDACTED VERSION

on comparing the copyrightable elements, he filtered the copyrightable elements and focused on the uncopyrightable ones. In essence, he filtered out "any fact that is of consequence to the determination" of this copyright infringement case. FRE 401. Dr. Orr's use of patent law principles is irrelevant and inadmissible. See DSU Medical Corp. v. JMS Co., 296 F. Supp. 2d 1140, 1156 (N.D.Cal. 2003) ("[T]he proffered expert testimony . . . relies upon a legal "principle" that is not legally acceptable to this Court and the testimony is, to that extent, inadmissible.").

Blueport responds, not by denying the government's allegations, but by explaining them away with unsupported attorney argument. With respect to Dr. Orr's conclusions of "functional similarity," Blueport claims that:

> Dr. Orr's method of aligning modules according to "functional similarity" reflects the fact that Defendant's MARS software does have additional functionality not present in the AUMD software, as well as the fact that the AUMD modules have been repackaged within the MARS software.

Response at 10. Yet Blueport's claim finds no support in Dr. Orr's testimony. Dr. Orr's reports and his deposition testimony contain no reference to Blueport's statement, and Blueport does not include a citation. Although it is true that the MARS programs contain additional features and functions that are not found in AUMD, there is no indication that Dr. Orr considered this issue, because he never discussed it. Furthermore, this issue is completely irrelevant – under a proper analysis, all functionality should have been filtered out, allowing a comparison of protectable elements.

As noted previously, Blueport's focus on the main function of the AUMD program and the MARS programs is improper. See Gates, 9 F.3d at 836 ("[T]he main purpose or function of a program will always be an unprotectable idea."). Similarly, Dr. Orr's concentration on the function of individual modules is incorrect. Id. ("[T]he basic function or purpose of a module will nearly always be an unprotectable idea or process.").

By focusing on functionality, Dr. Orr allows unprotectable elements to form the basis for his conclusions. Courts must use a variety of tools to filter out unprotectable elements from their analysis. For example, the merger doctrine denies protection "to expression that is inseparable from or merged with the ideas, processes, or discoveries underlying the expression." Gates, 9 F.3d at 838; see also Trek Leasing, 66 Fed. Cl. at 13-14. The *scenes a faire* doctrine denies "protection to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting," and it "also excludes from protection those elements of a program that have been dictated by external factors." Gates, 9 F.3d at 838; see also Trek Leasing, 66 Fed. Cl. at 14. Instead of attempting to filter uncopyrightable elements from his analysis, Dr. Orr actually compounds the errors in his analysis by filtering the copyrightable elements from his consideration. See A42-43 (Orr Dep. at 69-70) (ignoring [redacted]); A68-69 (Orr. Dep. at 149-50) (deeming [redacted]); A44 (Orr Dep. at 72) (disregarding that [redacted]); A59-60 (Orr Dep. at 122-23) (claiming that [redacted]); A66 (Orr Dep. at 142) (ignoring [redacted]).

Blueport's justification for Dr. Orr's methods is lacking. Blueport attempts to explain Dr. Orr's failure to filter uncopyrightable elements by claiming that:

> Dr. Orr will testify at trial that in his opinions the similarities in naming elements and other similarities cannot be accounted for simply by "Hungarian" naming conventions or the need to access the same MDS database.

Response at 10. Again, Blueport's claim finds no support in Dr. Orr's previous testimony. None of Dr. Orr's reports references "Hungarian" naming conventions[4], and to the extent he was cross-examined about the issue during his deposition, he did not indicate that he had factored the naming conventions into his analysis. Dr. Orr also specifically stated that [redacted] as a result of "the need to access the same MDS database":

> [redacted]

A44 (Orr Dep. at 72). Dr. Orr's deposition testimony occurred after his first report and prior to his supplemental report. Both reports, however, are completely devoid of any analysis of naming conventions or the external MDS database. Blueport's unsupported representations as to Dr. Orr's testimony violate this Court's rules on the disclosure of expert testimony:

> Except as otherwise stipulated or directed by the court, [a party's disclosure of expert witness testimony] shall . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a **complete statement of all opinions** to be expressed and the basis and reasons therefor . . . .

RCFC 26(a)(2)(B) (emphasis added). Dr. Orr's proposed testimony must be excluded.

### C. Dr. Orr's Methods Are Irrelevant and Do Not 'Fit' the Facts of this Case

Dr. Orr's method of applying patent law principles to a case involving only a claim of copyright infringement has no relevance with respect to the facts or law of this case. According to

---

[4] Naming conventions, in the context of computer programs, are certain standardized methods or procedures that are used by programmers to name computer program elements. See A35-36 (Orr Dep. at 41-42).

the Supreme Court, Rule 702 requires that the proposed testimony must 'fit' the facts of the case. See Daubert, 509 U.S. at 591. To define 'fit', the Supreme Court used an analogy:

> The study of the phases of the moon, for example, may provide valid scientific "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

Id. at 591-92. The parties do not dispute that Blueport brought this case against the United States pursuant to 28 U.S.C. § 1498(b). See Consolidated Statement of Facts ¶ 2. Nor can there be a dispute that Section 1498(b) is directed towards claims of copyright infringement against the government. A patent infringement analysis, based on functionality, cannot be helpful with respect to a copyright infringement analysis, which excludes functionality.

Dr. Orr's analysis cannot be helpful or relevant to the Court for three reasons. First, Dr. Orr analyzed the wrong source code. Second, Dr. Orr used a patent infringement analysis when a copyright analysis was required. Third, Dr. Orr failed to filter external elements from his analysis. See Gates, 9 F.3d at 842 ("In failing to undergo the filtration process, the court skipped an essential step in the copyright infringement analysis and as a result extended copyright protection to an unprotectable element."). Finally, Dr. Orr specifically excluded copyrightable elements from his consideration. See New Mexico v. General Elec. Co., 335 F. Supp. 2d 1266, 1273 (D.N.M. 2004) ("An opinion on an ultimate issue that omits or ignores material facts bearing upon the ultimate issue cannot be helpful to the trier of fact.").

**D. Dr. Orr's Testimony Regarding Alleged Similar Structure, Sequence, or Organization Must Be Excluded**

As argued in the government's Motion, Dr. Orr stated that the AUMD program and the MARS programs did not share similar structure. See Motion at 15-16; see also A45-46 (Orr Dep. at 73-74). Blueport continues to allege that the MARS programs are substantially similar to the structure of the copyrighted program, but did not contest that Dr. Orr rejected structural similarity in its Response. See Blueport Proposed Conclusions of Law ¶ 15. In addition, the government correctly noted that Dr. Orr did not provide an opinion with respect to similarities of organization or sequence. See Motion at 16. Blueport did not contest these issues in its Response. Nor do any of Dr. Orr's reports discuss these topics. Accordingly, Dr. Orr's testimony regarding any alleged similarity of structure, organization, or sequence must be excluded. See RCFC 26(a)(2)(B) (requiring written disclosure of expert testimony).

**CONCLUSION**

In view of the foregoing, the government respectfully requests that the Motion *In Limine* be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/Scott Bolden
SCOTT BOLDEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0262
Facsimile: (202) 307-0345

Attorneys for the United States

OF COUNSEL:

CHUN-I CHIANG
Air Force Legal Operations Agency
Department of the Air Force

July 5, 2006



REDACTED VERSION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLUEPORT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-1622C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence J. Block |
| | ) | |
| Defendant. | ) | |

**APPENDIX TO**
**DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE***
**TO EXCLUDE THE TESTIMONY OF DR. DAVID ORR**

**CONTENTS TO APPENDIX:**

Note: For Appendix citations between A1 - A73, see Appendix to Defendant's Motion *In Limine* To Excluded the Testimony of Dr. David Orr

Excerpt from Blueport's Responses to Defendant's Second Set of Interrogatories . . . A74
Excerpt of Deposition Transcript of David Orr (Protected) . . . . . . . . . . . . . . . . . . . . A75

INTERROGATORY NO. 16: Identify each version of AUMD, identify the date that each version was created, and identify the changes, features, or differences between each version.

OBJECTION: Plaintiff reasserts its general objections. Plaintiff further objects that response to this question is unduly burdensome, and is information more available and easily able to be retrieved by Defendant than by Plaintiff.

RESPONSE: Without waiving the foregoing objections, below includes a revision history of the AUMD program. A question mark indicates uncertainty.

| Version | Date | Expiration date | Ownership Statement | Copyright Data |
|---|---|---|---|---|
| Beta 0.9 | May 1998 | Yes | ? | ? |
| 1.0 | Sep 15, 1998 | Yes | Yes ? | ? |
| 1.5 | Feb 01, 1999 | Yes | Yes | Yes |
| 1.8 | Apr 22, 1999 | Yes | Yes | Yes |
| 1.9 | Aug 13, 1999 | Yes | Yes | Yes |
| 2.0a | Sep 29, 1999 | Yes | Yes | Yes |
| 2.0b | Oct 02, 1999 | Yes | Yes | Yes |
| 2.0d | Nov 18, 1999 | Yes | Yes | Yes |
| 2.1e | Jan 02, 2000 | Yes | Yes | Yes |
| 2,1f | Jan 05, 2000 | Yes | Yes | Yes |

This is the only data that Blueport has on revisions. Blueport cannot identify the changes, features, or differences between each version as such would be unduly burdensome. Blueport submits this is more a matter for experts.

INTERROGATORY NO. 17: Identify all persons or organizations to whom Mark Davenport distributed AUMD during the period of his employment by the government. See, e.g., 100574 (email by Davenport: "I wish I had not sent this program out."); see also